PAUL HASTINGS
A Limited Liability Partnership

BRADLEY J. BONDI (*Pro Hac Vice Forthcoming*)
BENJAMIN W. SNYDER (*Pro Hac Vice Forthcoming*)
RONALD K. ANGUAS, JR. (*Pro Hac Vice Forthcoming*)
2050 M Street NW
Washington, DC 20036
Telephone:  (202) 551-1701
Email: bradbondi@paulhastings.com
        bensnyder@paulhastings.com
        ronaldanguas@paulhastings.com

CADES SCHUTTE
A Limited Liability Law Partnership

JEFFREY S. PORTNOY          1211
TREVER K. ASAM              8133
LINDSAY N. MCANEELEY        8810
1000 Bishop Street, Suite 1200
Honolulu, HI 96813
Telephone:  (808) 521-9200
Email: jportnoy@cades.com
        tasam@cades.com
        lmcaneeley@cades.com

Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| CRUISE LINES INTERNATIONAL ASSOCIATION, INC.; HONOLULU SHIP SUPPLY CO.; KAUA'I KILOHANA PARTNERS; and ALOHA ANUENUE TOURS LLC,<br><br>            Plaintiffs,<br><br>    v.<br><br>GARY S. SUGANUMA, in his capacity as Director of Taxation for the State of Hawai'i; | CIVIL NO.  _____<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

HAWAI'I DEPARTMENT OF
TAXATION;CHELSIE SAKAI, in her
capacity as County Finance Director of the
County of Kaua'i; COUNTY OF KAUA'I;
ANDREW T. KAWANO, in his capacity as
Director of the Department of Budget and
Fiscal Services for the City and County of
Honolulu; CITY AND COUNTY OF
HONOLULU; MARCY MARTIN, in her
capacity as Director of Finance for the
County of Maui; COUNTY OF MAUI;
DIANE NAKAGAWA, in her capacity as
Director of Finance for the County of
Hawai'i; and COUNTY OF HAWAI'I,

          Defendants.

## INTRODUCTION

1.  States have the power to raise revenue through charges and fees, provided they comply with the law.  This case involves Hawai'i's blatant violation of the highest law of the land—the Constitution of the United States—through a new "Green Fee" targeted at cruise-ship operators and the hundreds of thousands of visitors they draw to the State each year.

2.  Plaintiffs Cruise Lines International Association, Inc. (CLIA), Honolulu Ship Supply Co., Kaua'i Kilohana Partners, and Aloha Anuenue Tours LLC (together, "Plaintiffs") bring this lawsuit to enjoin a new Hawai'i law that threatens to impose massive, novel, and unconstitutional fees on cruise ships docking in Hawai'i ports on or after January 1, 2026.  The only law of its kind in the nation, Hawai'i's Act 96 (2025) would levy a new 11% surcharge on the gross fares

1

paid by a cruise ship's passengers, prorated by the portion of its voyage spent docked in Hawaiʻi ports.  The unconstitutional law also authorizes Hawaiʻi counties to collect additional 3% surcharges, bringing the total imposition to 14% of the prorated fares—adding up to hundreds of millions of dollars in new fees over the next decade on out-of-state cruise lines and, by extension, the out-of-state passengers they bring to the State.  Act 96 makes clear that those new fees are not intended to pay for services actually provided to incoming cruise ships (which already pay millions of dollars a year for such services), but instead will be used to supplement general state revenues and fund "green" projects prioritized by the State.

3.     In attempting to leverage Hawaiʻi's ports to raise general revenue from out-of-state businesses and visitors, Act 96 violates federal law three times over— conflicting with the Tonnage Clause of the U.S. Constitution, the First Amendment's restriction on government-compelled speech, and a provision of the federal Rivers and Harbors Appropriation Act of 1884 that exists to prohibit fees exactly like the ones imposed by Act 96.

4.     As the Supreme Court long has recognized, the Constitution's Tonnage Clause bars States from imposing any "charge for the privilege of entering, trading in, or lying in a port."  *Polar Tankers, Inc. v. City of Valdez*, 557 U.S. 1, 8 (2009) (quoting *Clyde Mallory Lines v. Alabama ex rel. State Docks Comm'n*, 296 U.S. 261, 265–66 (1935)); *see* U.S. Const. art. I, § 10, cl. 3.  Yet Act 96 imposes just such

an impermissible charge, requiring cruise ships to make enormous payments based on their "days docked at any port in the State." Act 96 § 5.1. That blatant violation of the Tonnage Clause provides sufficient reason by itself to enjoin enforcement of Act 96.

5.     In a similar vein, Act 96 also violates federal *statutory* limits on the fees that States may impose for the use of navigable waters. Under the Rivers and Harbors Appropriation Act of 1884 (Rivers and Harbors Act), 33 U.S.C. § 5, Congress has barred States from charging "taxes, tolls, . . . or any other impositions whatever" on vessels "operating on any navigable waters subject to the authority of the United States," subject to certain narrowly drawn exceptions. 33 U.S.C. § 5(b). Because Act 96 does not fit within any of those exceptions, the Rivers and Harbors Act preempts its application to cruise ships and renders such enforcement impermissible under the Constitution's Supremacy Clause.

6.     Finally, Act 96 also violates basic tenets of the First Amendment. Act 96 requires cruise-ship operators to engage in extensive speech about the State's new fee regime, posting notices about compliance with that regime on every cruise ship and including similar information in every advertisement they run for Hawai'i-bound cruises. If Act 96's underlying fees did not violate the Tonnage Clause and the Rivers and Harbors Act, those disclosure requirements might be permissible. Because the fee regime is invalid, however, the State has no constitutionally

cognizable interest in administering it. And because the government may compel speech by private businesses only when doing so is "'reasonably related' to a substantial governmental interest," *American Beverage Ass'n v. City & Cnty. of San Francisco*, 916 F.3d 749, 755 (9th Cir. 2019) (en banc) (citation omitted), Hawaiʻi's lack of any cognizable interest in enforcing its unconstitutional fee regime means that Act 96's disclosure requirements are unconstitutional as well.

7.    This Court should act swiftly to declare Act 96's new cruise-ship-related provisions unconstitutional and enjoin their enforcement. In recent years, the cruise industry has drawn nearly 300,000 annual visitors to Hawaiʻi, supporting thousands of jobs throughout the State and making a total economic contribution of more than $600 million a year. If Act 96's unconstitutional fees are permitted to take effect on January 1, 2026, however, they will increase the cost of Hawaiʻi-bound cruises substantially and cause many potential visitors to vacation elsewhere. Those effects would harm not just cruise-ship operators (represented here by Plaintiff CLIA), but also the many Hawaiʻi businesses (such as Plaintiffs Honolulu Ship Supply Co., Kauaʻi Kilohana Partners, and Aloha Anuenue Tours LLC ) and workers that depend on the cruise industry for their livelihoods. Only relief from this Court can prevent Act 96's blatantly unconstitutional provisions from having that devastating result.

## PARTIES

8.     Plaintiff Cruise Lines International Association, Inc., is a not-for-profit entity organized under the laws of the District of Columbia, with its principal place of business in Washington, D.C.  A global organization, CLIA advocates for the interests of the cruise community and works to protect its members' legal rights in the jurisdictions in which they operate, including Hawaiʻi.  CLIA's members collectively represent 95% of global cruise passenger capacity.  Many of those members sail and dock in Hawaiʻi, including AIDA Cruises, Azamara Cruises, Carnival Cruise Line, Celebrity Cruises, Cunard Cruise Line, Disney Cruise Line, Hapag-Lloyd Cruises, Holland America Line, MSC Cruises, Norwegian Cruise Line, Oceania Cruises, P&O Cruises, Princess Cruises, Royal Caribbean International, Seabourn Cruises, and Silversea Cruises.

9.     Plaintiff Honolulu Ship Supply Co. (Honship) is a Hawaiʻi corporation with its principal place of business in Honolulu, Hawaiʻi.  Honship is Hawaiʻi's premier provider of ship provisioning, technical supplies, waste management, and custom services for vessels of all kinds, including cruise ships.  Honship primarily services ships in Honolulu Harbor, which has two cruise-ship terminals and is the largest commercial and passenger port in the Hawaiian Islands.  Roughly half of Honship's revenue comes from providing services to cruise ships.

10.     Plaintiff Kaua'i Kilohana Partners (Kilohana Plantation) is a Hawai'i domestic partnership with its principal place of business in Lihue, Hawai'i. Kilohana Plantation provides visitors with scenic train rides, rum tasting, artisan shops, luaus, and opportunities to interact with local livestock.  Kilohana Plantation is located just a 10–15-minute drive from the cruise terminal on the island of Kaua'i, Hawai'i, and relies on visitors from cruise ships for a significant portion of its business.

11.     Plaintiff Aloha Anuenue Tours LLC (Aloha Anuenue Tours) is a Hawai'i domestic limited-liability company with its principal place of business in Hilo, Hawai'i.  Aloha Anuenue Tours offers guided motorcoach tours of the Big Island of Hawai'i, including one tour that visits Hawai'i Volcanoes National Park and Lili'uokalani Gardens and another tour that visits Mauna Kea and Rainbow Falls.  All of Aloha Anuenue Tours' revenue comes from working with cruise-ship passengers.

12.     Defendant Gary S. Suganuma is the Director of the Hawai'i Department of Taxation.  He is responsible for collecting registration fees required by Act 96 and for issuing a certificate that the registration fees have been paid.  Haw. Rev. Stat. (HRS) § 237D-4(a).  Defendant Suganuma also oversees the Department of Taxation's collection of "taxes imposed under Title 14" of Hawai'i law, including

6

surcharges imposed by Act 96. HRS § 231-3(2). Plaintiffs sue Defendant Suganuma in his official capacity.

13. Defendant Hawaiʻi Department of Taxation is responsible for collecting "all taxes imposed under Title 14" of Hawaiʻi law (including surcharges imposed by Act 96), with the exception of those "collected by county treasurers." HRS § 231-3(2).

14. Defendant County of Kauaʻi is a political subdivision of the State of Hawaiʻi. As a result of Act 96's amendments, Defendant County of Kauaʻi will impose 3% surcharges on a prorated portion of the gross cruise fares of cruise ships that dock in Kauaʻi.

15. Defendant Chelsie Sakai is the County Finance Director for the County of Kauaʻi. Defendant Sakai is empowered with "all the rights and powers of the director of taxation under Section 237D, Hawaiʻi Revised Statutes." Kauaʻi Cnty. Code § 5-4.17. Defendant Sakai is responsible for enforcing surcharges imposed by the County of Kauaʻi as a result of Act 96. Plaintiffs sue Defendant Sakai in her official capacity.

16. Defendant City and County of Honolulu is a political subdivision of the State of Hawaiʻi. As a result of Act 96's amendments, Defendant City and County of Honolulu will impose 3% surcharges on a prorated portion of the gross cruise fares of cruise ships that dock in Honolulu.

17.     Defendant Andrew T. Kawano is the Director of the Department of Budget and Fiscal Services for the City and County of Honolulu.  Defendant Kawano is responsible for enforcing surcharges imposed by the City and County of Honolulu as a result of Act 96.  Plaintiffs sue Defendant Kawano in his official capacity.

18.     Defendant County of Maui is a political subdivision of the State of Hawai‘i.  As a result of Act 96's amendments, Defendant County of Maui will impose 3% surcharges on a prorated portion of the gross cruise fares of cruise ships that dock in Maui.

19.     Defendant Marcy Martin is the Director of the Department of Finance for the County of Maui.  Defendant Martin is responsible for enforcing surcharges imposed by the County of Maui as a result of Act 96.  Plaintiffs sue Defendant Martin in her official capacity.

20.     Defendant County of Hawai‘i is a political subdivision of the State of Hawai‘i.  As a result of Act 96's amendments, Defendant County of Hawai‘i will impose 3% surcharges on a prorated portion of the gross cruise fares of cruise ships that dock in the County of Hawai‘i.

21.     Defendant Diane Nakagawa is the Director of the Department of Finance for the County of Hawai‘i.  Defendant Nakagawa is responsible for enforcing surcharges imposed by the County of Hawai‘i as a result of Act 96.  Plaintiffs sue Defendant Nakagawa in her official capacity.

8

## JURISDICTION AND VENUE

22.    Plaintiffs' claims arise under the Constitution and laws of the United States.  This Court therefore has jurisdiction under 28 U.S.C. § 1331.

23.    This Court has authority to grant injunctive relief under 42 U.S.C. § 1983 and the Court's equitable authority.  *See Ex parte Young*, 209 U.S. 123 (1908).  The Court also has authority to grant declaratory relief under 28 U.S.C. § 2201(a).

24.    Venue is proper in the United States District Court for the District of Hawai'i under 28 U.S.C. § 1391(b)(1) because Defendants reside in this District.  Venue is also proper under 28 U.S.C. § 1391(b)(2) because "a substantial part of the events or omissions giving rise to the claim occurred" in this District.  *Id.*

## BACKGROUND

### A. The Cruise-Line Industry's Substantial Contributions to Hawai'i

25.    "Cruise ships have played a vital role in Hawaii's tourism industry for nearly 150 years."[1]  That role traces back to 1882, when companies first offered commercial steamship services to Hawai'i.[2]  Cruise ships began visiting Hawai'i

---

[1] Haw. Tourism Auth., Cruise Fact Sheet 1 (Nov. 2024), https://perma.cc/4DPE-GBMG.

[2] *Id.* at 2.

more consistently in the mid-1980s, and the industry has experienced significant growth since that time.[3]

26.    Cruise-ship operators now sail dozens of cruises to Hawaiʻi each year, contributing significantly to tourism in Hawaiʻi.   The State's Department of Business, Economic Development and Tourism (DBEDT) estimated that in 2023 alone, nearly 300,000 unique visitors came to Hawaiʻi in connection with cruise travel (either arriving in the State aboard a cruise ship or flying to the State to board a ship in a Hawaiʻi port).[4]

27.    The cruise industry supported nearly 3,000 jobs in Hawaiʻi in 2023, had a total economic impact in the State of $639 million, and contributed approximately $116 million to state tax revenue.[5]

**B. Act 96**

28.    This litigation concerns a recently enacted law—Act 96—that, unless enjoined, will impose hundreds of millions of dollars in unconstitutional surcharges on cruise ships over the next decade, require cruise-ship operators to pay additional unconstitutional "registration fees," and compel those cruise-ship operators to engage in government-scripted speech in clear violation of the First Amendment.

---

[3] *Id.*

[4] DBEDT, 2023 Annual Visitor Research Report 16, https://perma.cc/CZP5-C2K4.

[5] Oxford Econ., Hawaiʻi Scenario Analysis: Economic Effects of Changes in Cruise Visitation for 2023 13 (Aug. 2025), https://perma.cc/6DPX-43YD.

### 1.  Act 96's Charges for the Privilege of Docking in Hawai'i Ports

29.  On May 27, 2025, Hawai'i Governor Joshua B. Green signed Act 96 into law.  Governor Green has touted Act 96 as "a groundbreaking move for climate action" that "establish[ed] the nation's first climate impact fee, known as the 'Green Fee.'"[6]  The law imposes that so-called "Green Fee" on businesses that cater to out-of-state visitors, and is "[e]xpected to generate around $100 million annually" to "fund diverse projects focusing on environmental stewardship, climate resilience and sustainable tourism."[7]

30.  As relevant here, Act 96 amends Chapter 237D of the Hawai'i Revised Statutes to provide that, beginning on January 1, 2026, Hawai'i will impose a surcharge of "eleven per cent . . . on all gross rental proceeds derived from cruise fares prorated by the percentage of days docked at any port in the State in comparison to the total number of days of the voyage."  Act 96 § 5.1.

31.  Under Act 96, the obligation to make payments rests on the "operator[s] of . . . cruise ship[s]," not individual passengers.  *Id.*  State officials have estimated,

---

[6] Off. of the Governor, *Historic Green Fee Launched to Combat Climate Change in Hawai'i* (June 2, 2025), https://perma.cc/4QJR-7LGR.

[7] *Id.*

however, that "99%" of the surcharges will be passed along to passengers in the form of higher prices.[8]

32.    Act 96 also authorizes individual Hawai'i counties to levy additional surcharges on cruise ships calling at Hawai'i ports.   Specifically, under HRS § 237D-2.5, Hawai'i counties may levy their own surcharges of up to 3% on the "gross rental proceeds" covered by Chapter 237D.  By subjecting cruise ships to the payment requirements of Chapter 237D, Act 96 thus permits Hawai'i counties to impose additional 3% surcharges on cruise ships, above and beyond the 11% collected by the State, for the privilege of docking at ports in those counties.

33.    The counties of Hawai'i, Kaua'i, and Maui each have imposed the maximum 3% surcharges permitted by HRS § 237D-2.5.[9]  If Act 96 is permitted to go into effect, those additional surcharges will be levied on cruise ships visiting ports in those counties beginning on January 1, 2026.

34.    The City and County of Honolulu has "established a 3 percent transient accommodations tax on all gross rental, gross rental proceeds, and fair market rental

---

[8] *See* Christine Hitt, *Why Hawaii Just Got More Expensive for Visitors*, S.F. Gate (July 2, 2025), https://www.sfgate.com/hawaii/article/hawaii-more-expensive-tax-increase-20374119.php.

[9] *See* Haw. Cnty. Code § 2-259 ("[A] three percent transient accommodations tax is established on all gross rental, gross rental proceeds, and fair market rental value considered taxable under the definitions of section 237D-1, Hawai'i Revised Statutes."); Kaua'i Cnty. Code § 5-4.1 (same); Maui Cnty. Code § 3.47.010 (same).

value that is taxable under HRS Chapter 237D on property in the city."[10]   On information and belief, the City and County of Honolulu intends to assess that surcharge against cruise ships that dock in Honolulu beginning on January 1, 2026.

35.     The counties of Kaua'i, Honolulu, Maui, and Hawai'i are home to all ports routinely visited by cruise ships in the State of Hawai'i.  Between the 11% surcharge levied by the State and the 3% state-authorized surcharges levied by the counties, cruise-ship operators will be required to pay an effective 14% prorated portion of each passenger's gross fare for the privilege of visiting ports in Hawai'i.

### 2. Act 96's Registration Requirement and Registration Fee

36.     Act 96 also imposes additional registration and registration-fee requirements on cruise-ship operators.  Specifically, HRS § 237D-4 requires that entities subject to surcharges under Chapter 237D of the Hawai'i Revised Statutes "register with the director the name and address of each place of business within the State subject to this chapter," and "make a one-time payment" of "$15 for each registration for transient accommodations consisting of six or more units."   HRS § 237D-4(a).

37.     Cruise ships operated by CLIA's members contain more than six units of accommodations.

---

[10] Rev. Ord. Hon. § 8A-1.1.

13

38.     To Plaintiffs' knowledge, the State of Hawaiʻi provides no administrative or judicial mechanism through which a cruise-ship operator can challenge or recover registration fees after the registration fees are paid.

39.     Beginning on January 1, 2026, a cruise-ship operator's cruise ships will not be permitted to dock in Hawaiʻi lawfully unless the cruise-ship operator pays the required registration fees.

### 3.  Act 96's Filing Requirements

40.     Act 96 will require cruise-ship operators to make payments to the Department of Taxation on a monthly basis.  *See* HRS § 237D-6.  Cruise-ship operators also will be required to make monthly payments directed to each of the four counties that have imposed additional 3% surcharges under Chapter 237D.[11] Act 96 thus will require up to five separate payments and associated filings for each month that a cruise-ship operator's vessels visit Hawaiʻi.

41.     Along with those monthly payments and filings, Act 96 also will require cruise-ship operators to make annual filings and payments.  Specifically, the Hawaiʻi Department of Taxation and the four relevant counties each require that entities subject to Chapter 237D file annual reconciliation returns summarizing

---

[11] *See* Haw. Cnty. Code §§ 2-261(b)–(c); Kauaʻi Cnty. Code § 5-4.6(a); Maui Cnty. Code § 3.47.060; Rev. Ord. Hon. § 8A-1.6.

periodic tax liabilities and payments for the prior taxable year and making any remaining payments due.[12]

42.    The proliferation of separate filing and payment requirements imposed by Act 96 is particularly inefficient in the case of CLIA's members with multiple subsidiaries that each operate cruise ships in Hawaiʻi.  At the federal level, the operator subsidiaries of a common corporate parent may be included in the parent corporation's consolidated federal tax filings.  Once Act 96 goes into effect, however, Chapter 237D will require each separate operator subsidiary to make separate filings and payments.  A CLIA member with three separate subsidiaries operating in Hawaiʻi, for example, could be required to make as many as 15 separate payments per month and 15 additional payments or filings at the end of the year, for a total of nearly 200 separate payments and filings for 2026 alone.

43.    To the extent that state law permits challenges to those payments at all, such challenges would be highly inefficient because of the large number of payments that cruise-ship operators would need to contest and recoup in separate proceedings.

### 4.  The Statute's Notice and Advertisement Requirements

44.    Act 96 also compels cruise-ship operators to engage in speech in violation of the First Amendment to the Constitution.

---

[12] *See* HRS § 237D-7; Haw. Cnty. Code § 2-262; Kauaʻi Cnty. Code § 5-4.7; Maui Cnty. Code § 3.47.070; Rev. Ord. Hon. § 8A-1.7.

45.    Once Act 96 takes effect, cruise-ship operators will be required to "conspicuously display[]" information regarding Chapter 237D on all of their cruise ships.    *See* HRS § 237D-4(b) (requiring that an operator's Chapter 237D "registration, or in lieu thereof a notice stating where the registration may be inspected and examined, shall at all times be conspicuously displayed at the place for which it is issued").

46.    In addition, cruise-ship operators also will be required to include "[t]he registration identification number or an electronic link to the registration identification number issued pursuant to" Chapter 237D in "[a]ny advertisement, including an online advertisement," for passage aboard a cruise ship that will dock in any Hawaiʻi port.  HRS § 237D-4(c).

47.    If cruise-ship operators comply with Act 96's compelled-speech requirements, many passengers and prospective passengers will understand the cruise-ship operators to be expressing agreement that they validly can be required to register under Chapter 237D and make the payments required by that Chapter.

### 5. The Statute's Penalty Scheme

48.    Once Act 96 takes effect, the Hawaiʻi Department of Taxation and each of the individual counties will be authorized to impose substantial penalties on any cruise-ship operator that does not comply with Act 96's requirements.[13]

49.    If a cruise-ship operator does not file the required monthly return, the Director of the Hawaiʻi Department of Taxation may assess a penalty of five percent "of the amount of the tax" per month, up to a total of 25%.  HRS § 231-39(b)(1).  If a cruise-ship operator fails to pay within 60 days after filing a timely return, the Director may assess a 20% penalty.  *Id.* § 231-39(b)(3).  If the Director determines that the failure to pay was due to negligence or intentional disregard, the Director may assess a higher 25% penalty.  *Id.* § 231-39(b)(2)(A).  In addition, a cruise-ship operator may be required to pay interest at a rate of 0.66% per month on any payment found to have been delinquent.  *Id.* § 231-39(b)(4)(A).

50.    The Hawaiʻi Department of Taxation also may assess penalties if cruise-ship operators fail to comply with the law's registration, notice, or advertising

---

[13]  HRS § 237D-6(a) ("Sections 237-30 and 237-32 shall apply to returns and penalties made under this chapter to the same extent as if the sections were set forth specifically in this section."); *id.* § 237-32 ("Penalties and interest shall be added to and become a part of the tax, when and as provided by section 231-39."); *id.* § 231-39 (imposing penalties for the failure to file a return or pay the tax and imposing an interest rate of "two-thirds of one per cent a month" for any amount of the tax not paid); Haw. Cnty. Code § 2-267; Kauaʻi Cnty. Code § 5-4.15; Maui Cnty. Code § 3.47.150; Rev. Ord. Hon. § 8A-1.20.

requirements.  A cruise-ship operator that fails to register as required by Chapter 237D is subject to penalties of up to $5,000 per day.  *See* HRS §§ 237D-4(d), (h). Similarly, a cruise-ship operator that "fails to conspicuously display the registration or notice" is subject to penalties of up to $5,000 per day, *id.* § 237D-4(b), as is a cruise-ship operator that fails to include the registration number in advertisements for voyages that will call in a Hawaiʻi port, *id.* § 237D-4(d).

## C. The Statute Disproportionately Burdens Cruise-Ship Operators

51.    The burdens that Act 96 imposes on cruise-ship operators and their passengers are not only large in absolute terms, but also disproportionate as compared to payments required of other entities related to tourism in the State.

52.    Those disproportionate impacts arise in part from Act 96's application of the 11% surcharge (14% including the additional county-level surcharges) to the *entire* cruise fare, rather than just that portion of the fare attributable to on-board accommodations.  *See* Act 96 § 5.1 (amending HRS § 237D-2(a)) (charges are applicable to "all gross rental proceeds derived from cruise fares," prorated by the number of days docked in a Hawaiʻi port); *id.* § 4.1 (amending HRS § 237D-1) ("'Cruise fare' means the total amount paid by a transient for a cruise ship cabin on a cruise ship, inclusive of any mandatory fees imposed . . . for the use of shipboard services, facilities, meals, and onboard entertainment . . . .").  That treatment contrasts sharply with the State's application of Chapter 237D to land-based

accommodations, which explicitly excludes "[c]harges for guest amenities, including meals, beverages, telephone calls, and laundry." Haw. Admin. R. (HAR) § 18-237D-1-03(c)(3). As a result, cruise-ship operators and (by extension) their passengers will be forced to make payments significantly higher than those required in connection with other types of tourism-related businesses.

53.    For example, if a family stays in a hotel in Honolulu for one night, then travels by air to Maui and stays in a hotel there for two nights, and finally travels to Kaua'i for an additional two-night stay in a hotel there, Section 237D would apply only to the family's lodgings, not to the cost of their transportation, meals, or entertainment. By contrast, if the same family followed the same itinerary on a cruise ship, Section 237D would apply not only to their lodgings but also the cost of their inter-island transportation and on-board meals and entertainment.

54.    Act 96's charges will impose significant burdens on CLIA's members and their passengers. For an average family, Act 96 will add hundreds of dollars to the cost of popular cruise itineraries that dock in Hawai'i ports. That substantial price increase will cause many families to forego trips to Hawai'i in favor of other destinations, reducing the number of passengers who otherwise would visit Hawai'i ports on vessels operated by CLIA's members.

### D. The Statute's Burdens on Additional Hawai'i Businesses, Including Kilohana Plantation, Honship, and Aloha Anuenue Tours

55.    Act 96 also will impose economic harm on Hawai'i businesses that depend on cruise ships and cruise-ship passengers as a substantial part of their customer base.

56.    Act 96 will cause fewer cruise ships and cruise-ship passengers to visit Hawai'i.  As a representative of the Hawai'i Tourism Authority explained in testimony to the Hawai'i House Committee on Finance, Act 96 "is likely to reduce the number of stops that cruise lines would want to visit between the islands, which could significantly reduce the amount of on-island spend through excursions, shopping, etc.," and may cause cruise-ship operators to "reduce the number of trips that they offer" in the State.[14]

57.    The surcharges imposed by Act 96 also will reduce the funds that passengers have available for other purposes, causing families that visit Hawai'i ports on cruise ships to spend less on elective purchases and activities.

58.    This burden will be felt by hundreds of Hawai'i-based businesses that depend on cruise ships and cruise-ship passengers for a significant portion of their annual revenue.

---

[14] *Hearing on S.B. 1396 Before the H. Comm. on Fin.*, 2025 Leg., 33d Sess. (Haw. 2025) (statement of Caroline Anderson, Interim President & CEO, Haw. Tourism Auth.), https://perma.cc/9TW8-KFJV.

59.    Plaintiff Kilohana Plantation is one such business that will be harmed as a result of Act 96's new surcharges.

60.    Kilohana Plantation earns hundreds of thousands of dollars each year serving cruise-ship passengers.

61.    One of Kilohana Plantation's most successful offerings is an excursion for passengers of cruise ships that dock in nearby Nawiliwili, Hawaiʻi.   The excursion includes a scenic train ride, dinner, and a luau featuring fire dances, singing, and storytelling.

62.    Act 96 will depress the cruise-ship passenger traffic on which Kilohana Plantation depends, thereby reducing Kilohana Plantation's revenues.

63.    Plaintiff Honship is another business that will be harmed as a result of Act 96's new surcharges.

64.    Honship derives a substantial proportion of its revenue—more than 50%—from servicing cruise ships that dock in Hawaiʻi ports.

65.    Act 96 will reduce the number of stops that cruise ships make in Hawaiʻi and will cause some cruise-ship operators to avoid the State altogether, thereby reducing Honship's revenues.

66.    By reducing passenger demand for cruises to Hawaiʻi, Act 96 will also reduce the need for fresh produce and other supplies on cruise ships that continue to visit the State, further harming Honship's business.

21

67.    Plaintiff Aloha Anuenue Tours also will be harmed as a result of Act 96's new surcharges.

68.    Aloha Anuenue Tours derives all of its revenue from providing tours of the Big Island to cruise-ship passengers.

69.    By reducing the number of stops that cruise ships make in Hawai'i and the number of passengers who visit the Big Island on cruise ships, Act 96 will reduce Aloha Anuenue Tours' revenue.

70.    In addition, by increasing the cost of cruises to Hawai'i, Act 96 will leave cruise-ship passengers with less disposable income to pay for the optional excursions offered by Aloha Anuenue Tours.

### E. Hawai'i Has Provided No Suitable Mechanism by Which Plaintiffs Could Raise Their Legal Objections to Act 96

71.    By imposing substantial fees on cruise-ship operators for the mere privilege of docking in Hawai'i ports and compelling cruise-ship operators to engage in speech in furtherance of that new regime, Act 96 violates multiple provisions of the United States Constitution as well as the Rivers and Harbors Act.  *See* ¶¶ 3–6, *supra*; ¶¶ 82–114, *infra*.

72.    However, Hawai'i has not provided Plaintiffs with any plain, speedy, and efficient state-law mechanisms by which they could challenge Act 96's unlawful requirements.

73.     Kilohana Plantation, Honship, and Aloha Anuenue Tours have no means at all of challenging Act 96 in Hawaiʻi state court.  Hawaiʻi expressly has stripped its courts of jurisdiction to hear requests for declaratory relief "in any controversy with respect to taxes." HRS § 632-1.  And because Kilohana Plantation, Honship, and Aloha Anuenue Tours will not pay any surcharges required by Act 96 directly, they cannot challenge those surcharges via assessment or refund procedures.  Kilohana Plantation, Honship, and Aloha Anuenue Tours thus lack any state-law remedy for the harms they will suffer from Act 96's reduction in business from cruise ships and cruise-ship passengers.

74.     CLIA's members likewise have no adequate means of challenging Act 96 in the Hawaiʻi courts.

75.     To Plaintiffs' knowledge, Hawaiʻi provides no mechanism by which CLIA's members even may attempt to recover Act 96's mandatory registration fees after those fees have been paid.

76.     Although CLIA's members could seek to challenge the surcharges through administrative proceedings and state-court refund suits, those mechanisms are neither speedy nor efficient.

77.     If a cruise-ship operator withholds payment of the unconstitutional surcharges, the Department of Taxation or an individual county eventually could make an "assessment" of the tax, which the cruise-ship operator then could challenge

23

in Hawai'i's Tax Appeal Court.  *See* HRS § 232-16.  That approach, however, would require that the cruise-ship operator voluntarily "fail[] to make a return" or make an "underpayment of tax," thereby subjecting the operator to substantial penalties of up to 25%.  HRS §§ 231-39(b), 237D-9(a).  Furthermore, because the first annual return for Act 96's charges is not due until April 2027, and because state and county taxing authorities have three years to make an assessment, *see* HRS § 237D-9, a cruise-ship operator might not be able to *begin* an appeal until 2030—over four years after Act 96 takes effect.

78.    Alternatively, a cruise-ship operator could pay the unconstitutional surcharges; seek refunds of those surcharges from the respective state and county officials on the ground that they are unconstitutional; and then attempt to challenge the denial of those refunds in Hawai'i's Tax Appeal Court.  *See* HRS § 232-14.5. Proceeding in that fashion would be inadequate, however, because there does not appear to be a mechanism of judicial review for Chapter 237D refund denials by county-level officials.[15]

79.    Furthermore, even if cruise-ship operators could seek judicial review of those refund denials, the process would be highly inefficient because of the monthly payments cruise-ship operators are required to make of the surcharges imposed

---

[15] Section 232-14.5 of the Hawai'i Revised Statutes permits administrative appeals from refunds denied "by the department of taxation" at the state level, HRS § 232-14.5, but the counties do not incorporate § 232-14.5 into their ordinances.

under Chapter 237D.  A cruise-ship operator would need to file as many as five distinct refund requests each month, plus five refund requests with respect to any additional end-of-year payments, for a total of up to 65 refund requests over the course of the year.  For CLIA's members that do business through multiple, separately incorporated cruise-ship operators, such as Royal Caribbean Group and Carnival Corporation, the total number of refund requests each year could number in the hundreds.  *See* ¶¶ 40–42, *supra*.

80.    Given Hawaiʻi's failure to provide Plaintiffs an adequate opportunity to obtain relief in the courts of the State, this Court should grant relief to Plaintiffs on the following claims.

## CLAIMS FOR RELIEF

**COUNT I:  VIOLATION OF THE TONNAGE CLAUSE (CLIA)**

81.    CLIA realleges and incorporates the preceding allegations as though fully set forth herein.

82.    The Constitution's Tonnage Clause provides that "[n]o State shall, without the Consent of Congress, lay any Duty of Tonnage."  U.S. Const. art. I, § 10, cl. 3.

83.    In adopting the Tonnage Clause, the Framers sought to "diminish a State's ability to obtain certain geographical vessel-related tax advantages."  *Polar Tankers, Inc. v. City of Valdez*, 557 U.S. 1, 7 (2009).  Specifically, the Tonnage

Clause was designed to prevent States from "tax[ing] the privilege of access by vessels to their harbors." *Clyde Mallory Lines v. Alabama ex rel. State Docks Comm'n*, 296 U.S. 261, 265 (1935).

84.    The Supreme Court has construed the Tonnage Clause broadly, explaining that "the prohibition against tonnage duties has been deemed to embrace all taxes and duties regardless of their name or form, and even though not measured by the tonnage of the vessel, which operate to impose a charge for the privilege of entering, trading in, or lying in a port." *Clyde Mallory*, 296 U.S. at 265–66; *see S.S. Co. v. Portwardens*, 73 U.S. (6 Wall.) 31, 35 (1867) (holding that the Tonnage Clause prohibits "not only a *pro rata* tax . . . , but any duty on the ship").

85.    Act 96 violates the Tonnage Clause in two separate ways.

86.    First, Act 96 requires cruise-ship operators to pay registration fees "as a condition precedent to engaging or continuing in the business of furnishing transient accommodations," which the law defines to include furnishing passage aboard a cruise ship that docks in a Hawaiʻi port.  HRS § 237D-4(a).  Without paying a registration fee, therefore, CLIA's members' ships cannot dock legally in any Hawaiʻi port.  The registration fees are thus impermissible duties of tonnage owed "for the privilege of entering, trading in, or lying in a port" in Hawaiʻi.  *Clyde Mallory Lines*, 296 U.S. at 265–66; *see S.S. Co.*, 73 U.S. (6 Wall.) at 34–35 (holding

that a $5 fee imposed on all ships arriving at the port of New Orleans was an impermissible duty of tonnage).

87.    Second, the authorized surcharges on cruise-ship fares imposed by the State and individual counties are calculated based on "the percentage of days" that a ship is "docked at any port in the State in comparison to the total number of days of the voyage."    HRS § 237D-2(a).    Those surcharges, too, thus constitute impermissible fees for "lying in a port." *Clyde Mallory Lines*, 296 U.S. at 66.

88.    Neither the registration fees nor the surcharges imposed under Act 96 bear any relationship to legitimate maritime services provided by the State of Hawai'i or Hawai'i ports.    CLIA's members already pay numerous other charges and fees (not challenged in this suit) for maritime services when their ships visit Hawai'i ports.    Under longstanding regulations promulgated by the Hawai'i Department of Transportation, for example, CLIA's members currently pay $5,019 per 24-hour period for dockage of a vessel of 900 feet in length. *See* HAR § 19-44-20.    CLIA's members also separately pay substantial fees—often in excess of $100,000 for a single voyage—for services such as the provision of clean water, stevedoring, tugboat services, and port security.

89.    In contrast to those preexisting payments for specific maritime services, the surcharges imposed on cruise-ship operators by Act 96 will be used to pay for "green" projects that otherwise would be funded out of general state and county tax

revenues. Specifically, under amendments passed as Section 2 of Act 96, the Governor's annual budget request is required to propose projects through which the additional revenue obtained from the "assessment of the transient accommodations tax on gross rental proceeds derived from cruise fares" can be used for purposes such as to "restore . . . native forests," perform "flood mitigation," and support "beach improvement, nourishment, and maintenance projects." Act 96 § 2.

90.    That Act 96 raises revenue for those unrelated purposes, rather than for providing maritime services to vessels, underscores that the law violates the Tonnage Clause and so is unconstitutional.

91.    Act 96's registration fees and surcharges will injure CLIA's members by requiring them to make unconstitutional payments.

92.    CLIA's members lack any adequate means for challenging the registration fees and surcharges in state proceedings.

## COUNT II:    VIOLATION OF THE TONNAGE CLAUSE (Kilohana Plantation, Honship, and Aloha Anuenue Tours)

93.    Kilohana Plantation, Honship, and Aloha Anuenue Tours reallege and incorporate the allegations in paragraphs 1–80 as though fully set forth herein.

94.    As described in paragraphs 82–90 of Count I, Act 96's surcharges on cruise-ship fares violate the Tonnage Clause of the U.S. Constitution.

95.    Those unconstitutional surcharges will injure Kilohana Plantation, Honship, and Aloha Anuenue Tours. Kilohana Plantation and Aloha Anuenue Tours

depend in significant part on patronage from cruise-ship passengers. Act 96's surcharges, however, will reduce both the number of cruise-ship passengers who travel to Hawai'i ports and the amount of disposable income that such passengers have available for spending at businesses like Kilohana Plantation and Aloha Anuenue Tours. Honship's business likewise depends in significant part on services that it provides to cruise ships. Act 96's surcharges, however, will reduce the number of cruise ships that stop in Hawai'i ports as well as the cruise ships' need for produce and other supplies sold by Honship.

96.     Kilohana Plantation, Honship, and Aloha Anuenue Tours lack any adequate means for challenging Act 96's surcharges in state proceedings.

## COUNT III:   PREEMPTION BY THE RIVERS AND HARBORS ACT (CLIA)

97.     CLIA realleges and incorporates the allegations in paragraphs 1–80 as though fully set forth herein.

98.     Act 96's registration fees and surcharges also conflict with, and therefore are preempted by, the Rivers and Harbors Act.

99.     As relevant here, the Rivers and Harbors Act provides:

No taxes, tolls, operating charges, fees, or any other impositions whatever shall be levied upon or collected from any vessel or other water craft, or from its passengers or crew, by any non-Federal interest, if the vessel or water craft is operating on any navigable waters subject to the authority of the United States, or under the right to freedom of navigation on those waters, except for—

29

(1) fees charged under section 2236 of this title [for port or harbor dues used to pay for harbor navigation construction projects];

(2) reasonable fees charged on a fair and equitable basis that—

> (A) are used solely to pay the cost of a service to the vessel or water craft;

> (B) enhance the safety and efficiency of interstate and foreign commerce; and

> (C) do not impose more than a small burden on interstate or foreign commerce; or

(3) property taxes on vessels or watercraft, other than vessels or watercraft that are primarily engaged in foreign commerce if those taxes are permissible under the United States Constitution.

33 U.S.C. § 5(b).

100.    The registration fees required for cruise ships to dock in Hawaiʻi's ports and the surcharges on cruise fares established under Act 96 are each "taxes, tolls, operating charges, fees, or . . . other impositions" that are "levied upon or collected from any vessel or other water craft."  33 U.S.C. § 5(b).

101.    Hawaiʻi's ports are part of the "navigable waters subject to the authority of the United States."  *Id.*; *see, e.g.*, *Cnty. of Maui v. Haw. Wildlife Fund*, 590 U.S. 165, 170 (2020); *Kaiser Aetna v. United States*, 444 U.S. 164, 172–73 (1979); *see also* 33 C.F.R. § 329.4 ("Navigable waters of the United States are those waters that are subject to the ebb and flow of the tide and/or are presently used, or have been

used in the past, or may be susceptible for use to transport interstate or foreign commerce.").

102.   No exception to the Rivers and Harbors Act applies.  The surcharges and registration fees established by Act 96 do not qualify as dues authorized under 33 U.S.C. § 2236 in order to fund a harbor navigation construction project; are not "used solely to pay the cost of a service to the vessel or water craft"; and do not constitute property taxes.  *See* 33 U.S.C. §§ 5(b)(1)–(3).

103.   Act 96's registration fees and surcharges will injure CLIA's members by requiring them to make unlawful payments.

104.   CLIA's members lack any adequate means for challenging the registration fees and surcharges in state proceedings.

**COUNT IV:    VIOLATION OF THE RIVERS AND HARBORS ACT**
**(Kilohana Plantation, Honship, and Aloha Anuenue Tours)**

105.   Kilohana Plantation, Honship, and Aloha Anuenue Tours reallege and incorporate paragraphs 1–80 as though fully set forth herein.

106.   As described in paragraphs 98–102 of Count III, the surcharges on cruise-ship fares established by Act 96 conflict with, and therefore are preempted by, the Rivers and Harbors Act.

107.   Act 96 will injure Kilohana Plantation, Honship, and Aloha Anuenue Tours.  Kilohana Plantation and Aloha Anuenue Tours depend in significant part on patronage from cruise-ship passengers.  Act 96's surcharges, however, will reduce

31

both the number of cruise-ship passengers who travel to Hawaiʻi ports and the amount of disposable income that such passengers have available for spending at businesses like Kilohana Plantation and Aloha Anuenue Tours. Honship's business likewise depends in significant part on services that it provides to cruise ships. Act 96's surcharges, however, will reduce the number of cruise ships that stop in Hawaiʻi ports as well as the cruise ships' need for produce and other supplies sold by Honship.

108.  Kilohana Plantation, Honship, and Aloha Anuenue Tours lack any adequate means for challenging Act 96's surcharges in state proceedings.

## COUNT V:  COMPELLED SPEECH IN VIOLATION OF THE FIRST AMENDMENT (CLIA)

109.  CLIA realleges and incorporates the allegations in paragraphs 1–80 as though fully set forth herein.

110.  The First Amendment, as incorporated against the States by the Fourteenth Amendment, prohibits States from adopting any law that "abridg[es] the freedom of speech." U.S. Const. amend. I.

111.  The Supreme Court has made clear that the "freedom of speech" generally encompasses "the decision of both what to say and what *not* to say." *Riley v. Natʼl Fedʼn of the Blind of N.C., Inc.*, 487 U.S. 781, 797 (1988); *see Janus v. American Fedʼn of State, Cnty., & Mun. Emps., Council 31*, 585 U.S. 878, 892 (2018) (similar). The First Amendment therefore limits States' ability to compel

32

private parties, including businesses, to engage in speech or other expressive activities.

112.  As relevant here, while "the government may compel truthful disclosure in commercial speech" in certain circumstances, it may do so only where "the compelled disclosure is 'reasonably related' to a substantial governmental interest." *American Beverage Ass'n v. City & Cnty. of San Francisco*, 916 F.3d 749, 755 (9th Cir. 2019) (en banc) (citation omitted).

113.  Act 96's requirement to "conspicuously display[]" information about a cruise-ship operator's registration under Chapter 237D, HRS § 237D-4(b), and its requirement to include references to the registration in all advertisements for cruises sailing to Hawai'i ports, HRS § 237D-4(c), both violate that bedrock First Amendment principle.  A State has "no legitimate interest" in enforcing an unconstitutional law. *Washington v. Trump*, 145 F.4th 1013, 1037 (9th Cir. 2025); *see KH Outdoor, LLC v. City of Trussville*, 458 F.3d 1261, 1272 (11th Cir. 2006) (similar); *Nat'l Ass'n of Wheat Growers v. Becerra*, 468 F. Supp. 3d 1247, 1266 (E.D. Cal. 2020) (similar).  Here, because Act 96's underlying scheme of registration fees and surcharges for cruise-ship operators is unconstitutional, the State has no legitimate interest—and certainly no *substantial* interest—in compelling speech from cruise-line operators to facilitate that underlying scheme.

**COUNT VI:  DECLARATORY RELIEF (All Plaintiffs)**

114.   Plaintiffs reallege and incorporate the allegations in paragraphs 1–80 as though fully set forth herein.

115.   The Declaratory Judgment Act, 28 U.S.C. § 2201, provides that in any "case of actual controversy within [their] jurisdiction," federal courts have the power to "declare the rights and other legal relations of any interested party seeking such declaration." *Id.*

116.   Actual controversy exists between the parties, as set forth above.

117.   Declaratory relief is needed to provide clarity to the parties respecting their rights in this case.

118.   The Court should exercise its power under the Declaratory Judgment Act to declare that Act 96's requirements are unconstitutional and violate federal law for the reasons discussed above.

<u>**PRAYER FOR RELIEF**</u>

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in their favor against Defendants and order the following relief:

a.   A declaration that Act 96's 11% and 3% surcharges on cruise fares violate the Tonnage Clause of the United States Constitution.

b.   A declaration that Act 96's 11% and 3% surcharges on cruise fares violate the Rivers and Harbors Act.

c.  A declaration that Act 96's registration-fee requirement violates the Tonnage Clause of the United States Constitution.

d.  A declaration that Act 96's registration-fee requirement violates the Rivers and Harbors Act.

e.  A declaration that Act 96's requirements to engage in compelled speech about cruise-ship operators' registration under Chapter 237D of the Hawaiʻi Revised Statutes violate the First Amendment.

f.  A preliminary injunction enjoining Defendants, as well as all officers, agents, and employees subject to their supervision or direction, from enforcing the above requirements of Act 96 against cruise-ship operators.

g.  A permanent injunction enjoining Defendants, as well as all officers, agents, and employees subject to their supervision or direction, from enforcing the above requirements of Act 96 against cruise-ship operators.

h.  Such costs and reasonable attorneys' fees to which Plaintiffs may be entitled by law, including under 42 U.S.C. § 1988.

i.  Any further relief the Court deems just and proper.

DATED:     Honolulu, Hawaiʻi, August 27, 2025.

/s/ *Jeffrey S. Portnoy*
JEFFREY S. PORTNOY
TREVER K. ASAM
LINDSAY N. MCANEELEY
BRADLEY J. BONDI*
BENJAMIN W. SNYDER*
RONALD K. ANGUAS, JR.*

Attorneys for Plaintiffs
CRUISE LINES INTERNATIONAL
ASSOCIATION, INC.; HONOLULU
SHIP SUPPLY CO.; KAUAʻI
KILOHANA PARTNERS; and
ALOHA ANUENUE TOURS LLC

* *Pro Hac Vice Motions Forthcoming*