ANNE E. LOPEZ                    7609
Attorney General of Hawaiʻi

NATHAN S.C. CHEE                 6368
KACYN H. FUJII                   12006
MICHAEL D. DUNFORD               10346
Deputy Attorneys General
Department of the Attorney
   General, State of Hawaiʻi
Hale Auhau Building
425 Queen Street
Honolulu, HI 96813
Telephone: (808) 586-1470
Email:        nathan.s.chee@hawaii.gov
              kacyn.h.fujii@hawaii.gov
              michael.d.dunford@hawaii.gov

Attorneys for Defendant
GARY S. SUGANUMA, in his capacity as
Director of Taxation for the State of Hawaiʻi and
HAWAIʻI DEPARTMENT OF TAXATION

ANDREW SCOTT MICHAELS            10407
Deputy County Attorney
Office of the County Attorney
4444 Rice Street, Suite 220
Lihue, HI 96766
Email:        amichaels@kauai.gov

Attorney for Defendants
CHELSIE SAKAI, in her capacity as County
Finance Director of the County of Kauaʻi
and COUNTY OF KAUAʻI

DANA M.O. VIOLA                  6095
Corporation Counsel

DANIEL M. GLUCK                  7959
NIKKI Y. LOH                     11448
Deputies Corporation Counsel

Department of the Corporation Counsel
1001 Bishop Street, Suite 2020
Honolulu, HI 96813
Telephone: (808) 768-5233
Email:        daniel.gluck@honolulu.gov
              nikki.loh@honolulu.gov

Attorneys for Defendants
ANDREW T. KAWANO, in his capacity as
Director of the Department of Budget and Fiscal
Services for the City and County of Honolulu
and CITY AND COUNTY OF HONOLULU

KENTON S. WERK                    7831
Deputy Corporation Counsel
Department of the Corporation Counsel
200 S. High St.
Kalana O Maui Bldg, 3rd Fl
Wailuku, HI 96793
Email:        kenton.werk@co.maui.hi.us

Attorney for Defendants
MARCY MARTIN, in her capacity as Director of
Finance for the County of Maui and COUNTY OF
MAUI

LERISA L. HEROLDT                 7519
HANNAH EHRIG MCKEE                11379
STEVEN K. IDEMOTO                 9013
Deputies Corporation Counsel
Office of Corporation Counsel
Hilo Lagoon Centre
101 Aupuni Street, Suite 325
Hilo, HI 96720
Email:        lerisa.heroldt@hawaiicounty.gov
              Hannah.mckee@hawaiicounty.gov
              steven.idemoto@hawaiicounty.gov

Attorneys for Defendants

DIANE NAKAGAWA, in her capacity as Director
of Finance for the County of Hawaiʻi and
COUNTY OF HAWAIʻI

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| CRUISE LINES INTERNATIONAL ASSOCIATION, INC.; HONOLULU SHIP SUPPLY CO.; KAUAʻI KILOHANA PARTNERS; ALOHA ANUENUE TOURS LLC, | CIVIL NO. 1:25-cv-00367-JAO-KJM JUDGE: The Honorable JILL A. OTAKE |
| Plaintiffs, | |
| v. | DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION; CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.4(e) |
| GARY S. SUGANUMA, in his capacity as Director of Taxation for the State of Hawaiʻi; HAWAIʻI DEPARTMENT OF TAXATION; CHELSIE SAKAI, in her capacity as County Finance Director of the County of Kauaʻi; COUNTY OF KAUAʻI; ANDREW T. KAWANO, in his capacity as Director of the Department of Budget and Fiscal Services for the City and County of Honolulu; CITY AND COUNTY OF HONOLULU; MARCY MARTIN, in her capacity as Director of Finance for the County of Maui; COUNTY OF MAUI; DIANE NAKAGAWA, in her capacity as Director of Finance for the County of Hawaiʻi; COUNTY OF HAWAIʻI, | |
| Defendants. | |

# **TABLE OF CONTENTS**

INTRODUCTION ...................................................................................1

LEGAL STANDARD...........................................................................2

ARGUMENT ........................................................................................2

I.   For all the reasons detailed in Defendants' motion to dismiss, Plaintiffs fail to demonstrate likelihood of success on the merits. ........................................................2

   A.   Plaintiffs' claims cannot succeed because they are barred under the Tax Injunction Act. ....................................................................................2

   B.   Plaintiffs' claims are also barred under the comity doctrine............................7

   C.   Plaintiffs have not sufficiently pled standing to bring this action.....................9

      1.   Kilohana, Honship, and Aloha Anuenue Tours lack standing because they have not suffered injury in fact............................................................10

      2.   CLIA has not demonstrated that it has pre-enforcement standing...............14

   D.   The Tonnage Clause claims are unlikely to succeed because the Tonnage Clause does not apply to a transient accommodation tax......................................16

   E.   The Rivers and Harbors Act ("RHA") claims are unlikely to succeed because there is no private right of action to bring these claims.........................................17

   F.   Plaintiffs' First Amendment claim is also unavailing because there is no underlying constitutional violation. ......................................................18

II.    Plaintiffs have not shown that they are likely to suffer irreparable injury in the absence of preliminary relief. ...................................................................19

III.    The balance of equities and the public interest favor denying injunctive relief. 22

CONCLUSION....................................................................................23

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*Air Polynesia, Inc. v. Freitas*, 742 F.2d 546 (9th Cir. 1984) ...................................5, 7

*Alcan Aluminium Ltd. v. Dep't of Revenue of State of Or.*, 724 F.2d 1294 (7th Cir. 1984). ...........................................................................................................8

*All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127 (9th Cir. 2011).........................20

*Am. Beverage Ass'n v. City & Cnty. of San Francisco*, 916 F.3d 749 (9th Cir. 2019) ..............................................................................................................19

*Arkansas v. Farm Credit Servs. of Cent. Arkansas*, 520 U.S. 821 (1997) .................8

*Bidart Bros. v. California Apple Comm'n*, 73 F.3d 925 (9th Cir. 1996)....................3

*California Sea Urchin Comm'n v. Bean*, 883 F.3d 1173 (9th Cir. 2018)........9, 10, 11

*California v. Grace Brethren Church*, 457 U.S. 393 (1982). ...............................3, 5

*Capitol Industries-EMI, Inc. v. Bennett*, 681 F.2d 1107 (9th Cir. 1982)...................14

*Dillon v. State of Montana*, 634 F.2d 463 (9th Cir. 1980)...........................................3

*Franklin v. United States*, 49 F.4th 429 (4th Cir. 2022) .............................................4

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167 (2000) ...........................................................................................................9, 15

*Georgia Railroad & Banking Co. v. Redwine*, 342 U.S. 299 (1952) .........................6

*Huber Pontiac, Inc. v. Whitler*, 585 F.2d 817 (7th Cir. 1978). ...................................8

*Hunt v. Washington State Apple Advertising Comm'n,* 432 U.S. 333 (1977)...........15

*Hyatt v. Yee*, 871 F.3d 1067 (9th Cir. 2017). ..........................................................6, 7

*Kowalski v. Tesmer*, 543 U.S. 125 (2004) ................................................................13

*Levin v. Commerce Energy, Inc.*, 560 U.S. 413 (2010). ...........................................7, 8

*Lil' Man in the Boat, Inc. v. City & Cnty. of San Francisco*, 5 F.4th 952 (9th Cir. 2021) ..................................................................................................18

*Lil' Man In The Boat, Inc. v. City & Cnty. of San Francisco*, No. 17-CV-00904-JST, 2019 WL 8263440 (N.D. Cal. Nov. 26, 2019) .......................................................18

*Lowe v. Washoe Cnty.*, 627 F.3d 1151 (9th Cir. 2010)................................................6

*Lujan v. Defs. of Wildlife*, 504 U.S. 555 (1992) .....................................................9, 12

*Makai Ranch, LLC v. City & Cnty. of Honolulu*, No. 23-00230 JAO-WRP, 2023 WL 12126782 (D. Haw. Dec. 20, 2023).................................................................8

*Mandel v. Hutchinson*, 494 F.2d 364 (9th Cir. 1974)................................................6

*Marvin F. Poer & Co. v. Cntys. of Alameda*, 725 F.2d 1234 (9th Cir. 1984) .........3, 8

*Matter of Aloha Motors, Inc.*, 69 Haw. 515 (1988). .....................................................4

*May Trucking Co. v. Oregon Dep't of Transp.*, 388 F.3d 1261 (9th Cir. 2004) .........6

*Mazurek v. Armstrong*, 520 U.S. 968 (1997)...............................................................2

*Naruto v. Slater*, 888 F.3d 418 (9th Cir. 2018).........................................................13

*Nat'l Private Truck Council, Inc. v. Oklahoma Tax Comm'n*, 515 U.S. 582 (1995)...7

*Peace Ranch, LLC v. Bonta*, 93 F.4th 482 (9th Cir. 2024)...................... 9, 11, 15, 16

*Polar Tankers, Inc. v. City of Valdez*, 557 U.S. 1 (2009) ....................................16, 17

*S.S. Co. v. Portwardens*, 73 U.S. (6 Wall.) 31 (1867) ...............................................17

*Satanic Temple v. Labrador*, 149 F.4th 1047 (9th Cir. 2025) ...................................15

*Susan B. Anthony List v. Driehaus*, 573 U.S. 149 (2014)............................. 10, 11, 12

*Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7 (2008)..............................2, 20, 22

**Statutes**

28 U.S.C. § 1341 ...........................................................................................................3

33 U.S.C. § 5(b)(2)......................................................................................................18

HRS § 232-11.................................................................................4, 5

HRS § 232-13....................................................................................4

HRS § 232-14.5.................................................................................4

HRS § 235-114..................................................................................4

HRS § 237D-11.................................................................................4

HRS § 237D-4.................................................................................17

**Other Authorities**

11A C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 2948 ........2

11A C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 2948.1 ..20, 21

Act 96, Session Laws of Hawai'i....................................................................1

Haw. Cnty. Code § 2-265..............................................................................5

Kauai Cnty. Code § 5-4.12.............................................................................5

Maui Cnty. Code § 3.47.120............................................................................5

Mia Taylor, "Carnival Unveils New Hawaii Cruises, Repositions Ships," Travelpulse by Northstar, https://www.travelpulse.com/news/cruise/carnival-cruise-line-announces-new-hawaii-2027-2028-sailings-and-repositions-ships-to-norfolk-and-baltimore (last updated 1:55 pm, Sept 17, 2025) ..............................11

Revised Ordinances of Honolulu § 8A-1.16......................................................5

## INTRODUCTION

Act 96, a state tax law going into effect on January 1, 2026, ensures that Hawaiʻi's transient accommodation tax ("TAT") applies to all short-term accommodations, including those located on cruise ships. Act 96, Session Laws of Hawaiʻi 2025. Plaintiffs Cruise Lines International Association, Inc. (CLIA), Honolulu Ship Supply Co. (Honship), Kauaʻi Kilohana Partners (Kilohana), and Aloha Anuenue Tours LLC (collectively, "Plaintiffs") ask this Court for an injunction barring enforcement of Act 96 only as to cruise operators—in effect, giving cruise operators preferential treatment over all other accommodation providers doing business in the state. And, by seeking injunctive relief in federal court, Plaintiffs attempt to bypass the normal state tax appeal process set out by the Hawaiʻi legislature.

Plaintiffs' motion for preliminary injunction should be denied for the same reasons that this case should be dismissed. This Court is expressly prohibited from granting injunctive relief in this case under the Tax Injunction Act and the comity doctrine, and Plaintiffs have also not shown that they have standing. But even if this Court finds jurisdiction over this case, injunctive relief should be denied because Plaintiffs have not shown that they are likely to succeed on any of their claims, that they would suffer irreparable harm if injunctive relief is denied, or that an injunction would be in the public interest.

1

## LEGAL STANDARD

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). "[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing,* carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (quoting 11A C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 2948).

## ARGUMENT

I.    **For all the reasons detailed in Defendants' motion to dismiss, Plaintiffs fail to demonstrate likelihood of success on the merits.**

Plaintiffs have failed to demonstrate likelihood of success on the merits for the same reason this case should be dismissed: (1) Plaintiffs' claims are barred by the Tax Injunction Act and principle of comity; (2) Plaintiffs lack standing to bring their claims in federal court; and (3) each of Plaintiffs' claims fail to state a claim upon which relief may be granted.

A. **Plaintiffs' claims cannot succeed because they are barred under the Tax Injunction Act.**

2

The Tax Injunction Act bars Plaintiffs from bringing their claims in this Court.  The Tax Injunction Act "prohibits a federal district court . . . from issuing an injunction enjoining the collection of state taxes," *California v. Grace Brethren Church*, 457 U.S. 393, 408 (1982), if there is a "plain, speedy and efficient remedy" in state court, 28 U.S.C. § 1341.  The Tax Injunction Act is a "broad jurisdictional impediment to federal court interference" that extends to suits against counties, as well as states.  *See Marvin F. Poer & Co. v. Cntys. of Alameda*, 725 F.2d 1234, 1236 (9th Cir. 1984) (quoting *Dillon v. State of Montana*, 634 F.2d 463, 466 (9th Cir. 1980)).  The "principal motivating force behind the Act . . . [is] to limit drastically federal district court jurisdiction to interfere with so important a local concern as the collection of taxes."  *Rosewell v. LaSalle Nat'l Bank*, 450 U.S. 503, 522 (1981).

Plaintiffs ask this Court for an injunction preventing the State of Hawaiʻi and its counties from collecting the TAT on cruise ships in accordance with Act 96.  Because Plaintiffs' requested relief, if granted, would "enjoin[] the collection of state taxes," *Grace Brethren Church*, 457 U.S. at 408,  this action falls squarely within the purview of the Tax Injunction Act and should be dismissed.[1]

---

[1] There is no question that the Transient Accommodations Tax is a tax, as the TAT is imposed by the legislature and the funds raised are to be used for the public benefit—and not, for example, to defray costs associated with regulating cruise ships.  *See Bidart Bros. v. California Apple Comm'n*, 73 F.3d 925, 931-32 (9th Cir. 1996).

3

State law also provides a "plain, speedy, and efficient" remedy for Plaintiffs

to bring their claims. A taxpayer who seeks to challenge the constitutionality of the

TAT may submit a request to the Department of Taxation for a refund, and upon the

Department's denial of the request, or the Department's failure to take action on the

request, the taxpayer may appeal to the Tax Appeal Court of the State of Hawai'i

("Tax Appeal Court"). Hawai'i Revised Statutes ("HRS") § 232-14.5.

Alternatively, a taxpayer could refrain from paying the tax, receive a tax assessment,

and appeal that assessment to the Tax Appeal Court. *See* HRS §§ 237D-11, 235-

114; *Matter of Aloha Motors, Inc.*, 69 Haw. 515, 520 (1988) (explaining that an

aggrieved taxpayer may appeal to the Tax Appeal Court from "adverse rulings by

the Tax Director"). Upon appeal, the Tax Appeal Court "shall determine all

questions of fact and all questions of law, including constitutional questions."[2]  HRS

§ 232-13; *see also* HRS § 232-11 (stating that the Tax Appeal Court "shall have the

power and authority . . . to decide all questions of fact and all questions of law,

including constitutional questions"). Each county also provides appeal rights

---

[2] The statute does not contain any exception for First Amendment questions.
Further, the First Amendment claim is based on an assumption that the TAT on
cruise ships is invalid, thus requiring the Court to examine the validity of the TAT
as applied to cruise ships. Therefore, the First Amendment claim should also be
barred by the Tax Injunction Act. *Cf. Franklin v. United States*, 49 F.4th 429, 434-
35 (4th Cir. 2022) (holding that claims that impliedly challenged the validity of
the tax assessment itself, and were based on the assumption that assessment was
void, were barred by the Anti-Injunction Act, the federal tax analog to the Tax
Injunction Act).

through the Tax Appeal Court. *See* Maui Cnty. Code § 3.47.120; Haw. Cnty. Code § 2-265; Kauaʻi Cnty. Code § 5-4.12; Revised Ordinances of Honolulu § 8A-1.16.

The Ninth Circuit has already determined that the state tax appeal process satisfies the "minimal procedural requirements" of the Tax Injunction Act—HRS § 232-11 authorizes the Tax Appeal Court "to decide all questions of fact and all questions of law, including constitutional questions," thereby ensuring that the Tax Appeal Court "can provide a full and fair hearing on these claims." *Air Polynesia, Inc. v. Freitas*, 742 F.2d 546, 548 (9th Cir. 1984). Because there is a "plain, speedy, and efficient" state remedy and because Plaintiffs request relief that would "enjoin[] the collection of state taxes," *Grace Brethren Church*, 457 U.S. at 408, Plaintiffs' claims are barred in this Court under the Tax Injunction Act.

Plaintiffs argue that the state remedies "are neither speedy nor efficient." However, the United States Supreme Court in *Rosewell v. LaSalle Nat'l Bank* dismissed a similar argument for an Illinois statute. *Rosewell*, 450 U.S. at 522. *Rosewell* held that "Illinois' legal remedy that provides property owners paying property taxes under protest a refund without interest in two years is 'a plain, speedy and efficient remedy' under the Tax Injunction Act." *Id.* *Rosewell* acknowledged the reality that litigation could take "many years," *id.* at 518, but nonetheless dismissed the respondent's argument that the remedy was not "speedy," stating that "[n]owhere in the Tax Injunction Act did Congress suggest that the remedy just be

the speediest," *id.* at 520.  And as the Ninth Circuit has said, the "plain, speedy, and efficient remedy" requirement "requires only that a state remedy meet certain minimal procedural criteria," which are satisfied when a taxpayer has an opportunity for "a full hearing and judicial determination at which he may raise any and all constitutional objections to the tax." *Hyatt v. Yee*, 871 F.3d 1067, 1073 (9th Cir. 2017).  It does not need to be "the best remedy available or even equal to or better than the remedy which might be available in the federal courts." *Lowe v. Washoe Cnty.*, 627 F.3d 1151, 1155-56 (9th Cir. 2010) (internal quotations omitted) (quoting *Mandel v. Hutchinson*, 494 F.2d 364, 367 (9th Cir. 1974)).

Plaintiffs argue that it would be cumbersome and therefore not "efficient" to submit multiple refund requests per year.  However, this argument relies on *Georgia Railroad & Banking Co. v. Redwine*, 342 U.S. 299 (1952), a case that has been called into doubt by the Ninth Circuit as being inconsistent with the Supreme Court's subsequent decision in *Rosewell*.  *May Trucking Co. v. Oregon Dep't of Transp.*, 388 F.3d 1261, 1272 (9th Cir. 2004) ("[I]t is unclear that the wholesale adoption of principles of equity practice in *Redwine* . . . has withstood the Court's decision in *Rosewell*.").  Current law only requires meeting the "minimal procedural criteria" of having the opportunity "a full hearing and judicial determination at which he may raise any and all constitutional objections to the tax." *Hyatt*, 871 F.3d

at 1073.  In addition, Plaintiffs need not request refunds at all to bring their

challenge—they could choose to appeal from an assessment instead.

And, as discussed above, the Ninth Circuit in *Air Polynesia* has already held

that the remedy provided under Hawaiʻi law is plain, speedy, and efficient.  *Air

Polynesia*, 742 F.2d at 548.  This Court lacks jurisdiction to hear Plaintiffs' claims

under the Tax Injunction Act.

**B. Plaintiffs' claims are also barred under the comity doctrine.**

Plaintiffs' claims should also be dismissed under the comity doctrine, which

"restrains federal courts from entertaining claims for relief that risk disrupting state

tax administration."  *Levin v. Commerce Energy, Inc.*, 560 U.S. 413, 413 (2010).

"Comity's constraint has particular force when lower federal courts are asked to

pass on the constitutionality of state taxation of commercial activity."  *Id.*

Notably, the comity doctrine is "more embracive" than the Tax Injunction

Act, which "may be best understood as but a partial codification of the federal

reluctance to interfere with state taxation."  *Id.* at 424 (quoting *Nat'l Private Truck

Council, Inc. v. Oklahoma Tax Comm'n*, 515 U.S. 582, 590 (1995)).  Thus, "even if

the facts of a state tax matter do not technically fit within the language of [the Tax

Injunction Act], the federal courts should in their discretion restrain from interfering

in the state proceedings."  *Alcan Aluminium Ltd. v. Dep't of Revenue of State of Or.*,

724 F.2d 1294, 1297 (7th Cir. 1984) (quoting *Huber Pontiac, Inc. v. Whitler*, 585

F.2d 817, 820 (7th Cir. 1978)).

Plaintiffs challenge the constitutionality of the provisions of Act 96 that

assess a state tax on cruise ships. This action is precisely the type of action to which

comity's constraint applies. *Levin*, 560 U.S. at 421. Moreover, Hawaiʻi law

provides a plain, speedy, and effective remedy. Accordingly, the comity doctrine

also warrants dismissal for lack of jurisdiction.

Plaintiffs should also not be allowed to use the $15 one-time license fee to

circumvent the Tax Injunction Act's "broad jurisdictional barrier." *Arkansas v.*

*Farm Credit Servs. of Cent. Arkansas*, 520 U.S. 821, 825 (1997). Even if a $15

license fee does not "technically fit within the language of [the Tax Injunction

Act]," *Alcan Aluminium*, 724 F.2d at 1297, the Ninth Circuit requires that the Tax

Injunction Act and comity doctrines be broadly construed "to prevent an artful

pleader from evading § 1341." *Makai Ranch, LLC v. City & Cnty. of Honolulu*, No.

23-00230 JAO-WRP, 2023 WL 12126782, at *17 (D. Haw. Dec. 20, 2023) (Otake,

J.) (quoting *Marvin F. Poer*, 725 F.2d at 1236) (internal quotation marks and

alterations omitted). Because granting relief to Plaintiffs would affect the collection

of state taxes, this Court should use its "discretion [to] restrain from interfering" in

this state tax matter under the principle of comity. *Alcan Aluminium*, 724 F.2d at

1297.

**C. Plaintiffs have not sufficiently pled standing to bring this action.**

Even if the Tax Injunction Act and the principle of comity do not bar this action in its entirety, it is still subject to dismissal because all Plaintiffs lack standing. The Constitution of the United States "limits the jurisdiction of federal courts to 'Cases' and 'Controversies.'" *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 559 (1992). "[S]tanding is an essential and unchanging part of the case-or-controversy requirement of Article III." *Id.* at 560.

Plaintiffs "bear[] the burden of establishing the[] elements [of standing]." *Id.* at 561. "In order to have standing, a plaintiff must show: '(1) it has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.'" *California Sea Urchin Comm'n v. Bean*, 883 F.3d 1173, 1180 (9th Cir. 2018), *as amended* (Apr. 18, 2018) (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000)).

"Pre-enforcement injury is a special subset of injury-in-fact." *Peace Ranch, LLC v. Bonta*, 93 F.4th 482, 487 (9th Cir. 2024). "Typically, plaintiffs must allege an injury at the time of filing. For pre-enforcement plaintiffs, the injury is the anticipated enforcement of the challenged statute in the future." *Id.*

9

For pre-enforcement challenges, Plaintiffs must establish that they have: (1) "an intention to engage in a course of conduct arguably affected with a constitutional interest"; (2) that their "intended future conduct" is "arguably . . . proscribed by [the] statute" they wish to challenge; and (3) that there is a "substantial threat" of enforcement.  *Id.* at 488 (following the factors articulated by the United States Supreme Court in *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 161 (2014)).

### 1. Kilohana, Honship, and Aloha Anuenue Tours lack standing because they have not suffered injury in fact.

Kilohana, Honship, and Aloha Anuenue Tours argue that their claims can go forward, notwithstanding the Tax Injunction Act, because they have no state remedy to challenge Act 96's provisions on cruise ships.  However, these plaintiffs lack standing: they have not demonstrated, and cannot demonstrate, that they "ha[ve] suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical."  *California Sea Urchin Comm'n*, 883 F.3d at 1180.

Honship is in the business of servicing ships (ECF No. 1, PageID.6), Kilohana "provides visitors with scenic train rides, rum tasting, artisan shops, luaus, and opportunities to interact with local livestock" (ECF No. 1, PageID.7), and Aloha Anuenue Tours "offers guided motorcoach tours" on Hawai'i Island (ECF No. 1,

PageID.7).  None of these three plaintiffs own or operate cruise ships, and therefore, none of them will be assessed the state tax on cruise ships (or be subject to any of Act 96's other requirements).

Kilohana, Honship, and Aloha Anuenue Tours assert that if the tax on cruise ships goes into effect, it would necessarily raise cruise fares, reduce the number of cruise passengers, and decrease business for each of the three companies.[3]  But this is merely conjecture—it assumes, for example, that the cruise ships will pass on the TAT to their customers.  The articulated harm to Kilohana, Honship, and Aloha Anuenue Tours is too attenuated and speculative to establish injury in fact.  *See California Sea Urchin Comm'n*, 883 F.3d at 1180 ("[T]o show a concrete and particularized harm a plaintiff must do more than allege a potential risk of [harm].").

Kilohana, Honship, and Aloha Anuenue Tours also fail to satisfy the *Driehaus* factors that the Ninth Circuit adopted for pre-enforcement standing.  The first *Driehaus* factor requires a plaintiff to "establish that it has 'an intention to engage in a course of conduct arguably affected with a constitutional interest.'"  *Peace Ranch, LLC*, 93 F.4th at 488 (quoting *Driehaus*, 573 U.S. at 161).  "That is to

---

[3] *But see*, *e.g.,* Mia Taylor, "Carnival Unveils New Hawaii Cruises, Repositions Ships," Travelpulse by Northstar, https://www.travelpulse.com/news/cruise/carnival-cruise-line-announces-new-hawaii-2027-2028-sailings-and-repositions-ships-to-norfolk-and-baltimore (last visited Sept. 17, 2025) (reporting on the recently announced planned launch of "Carnival's first-ever program dedicated to Hawaii cruises.")

say, courts must ask whether the plaintiff would have the intention to engage in the proscribed conduct, were it not proscribed." *Id.* Act 96 provides that cruise ships are subject to the state TAT requirements; the conduct proscribed by Act 96 is failure to comply with this requirement. Kilohana, Honship, and Aloha Anuenue Tours are not subject to any of Act 96's requirements and therefore could not "have the intention to engage in the proscribed conduct" of violating Act 96. *Id.*

Second, Kilohana, Honship, and Aloha Anuenue Tours' "intended future conduct" is not "arguably . . . proscribed by [the] statute" they challenge. *Id.* at 489. Assuming that their "intended future conduct" is to continue operating their businesses, this conduct is not "proscribed" by the provisions of Act 96 that apply to cruise ships. *Id.* Act 96 does not apply to or mention the business activities of companies like Kilohana, Honship, and Aloha Anuenue Tours at all.

Third, there is no "substantial threat of enforcement" against Kilohana, Honship, and Aloha Anuenue Tours because they would not be subject to any of Act 96's requirements. *Id.* at 488. Therefore, Kilohana, Honship, and Aloha Anuenue Tours fail to demonstrate standing because they cannot show injury in fact. *See Lujan*, 504 U.S. at 562 ("[W]hen the plaintiff is not himself the object of the government action or inaction he challenges, standing is . . . substantially more difficult to establish.") (internal quotation marks omitted).

Finally, even if Kilohana, Honship, and Aloha Anuenue Tours suffer the kind of injury sufficient to support Article III standing, they still lack the ability to bring these claims because the rights they seek to assert are not *their* rights.[4]  Such claims, "where a party has an Article III injury, but she must advance someone else's rights to achieve redress," are third-party claims.  *Naruto v. Slater*, 888 F.3d 418, 430 n.3 (9th Cir. 2018) (Smith, J., concurring in part).  The general rule is that a litigant "cannot rest his claim to relief on the legal rights or interests of third parties," unless (1) the litigant shows a close relationship with the possessor of the right and (2) there is a hinderance interfering with the possessor's ability to protect its own interests.  *Kowalski v. Tesmer*, 543 U.S. 125, 129, (2004) (cleaned up).

Kilohana, Honship, and Aloha Anuenue Tours are classic third-parties; they are not subject to any of the requirements of Act 96.  Instead, their claimed injuries stem from the alleged infringement of the rights of proprietors of affected cruise ships.  But these companies do not plead a close relationship with any cruise companies, nor is there any reason to believe that the cruise companies are incapable of protecting their own interests from the state.  *Id.*  Kilohana, Honship, and Aloha

---

[4] To the extent Plaintiffs argue that Kilohana, Honship, and Aloha Anuenue Tours lack the ability to appeal in Tax Appeal Court (ECF No. 28-1, PageID.114), it is only because they are attempting to assert the rights of cruise operators instead of their own rights.

Anuenue Tours simply cannot meet the requirements for third-party standing even if they could show Article III standing.

In sum, Kilohana, Honship, and Aloha Anuenue Tours are not companies operating cruise ships; they are tourism and ship servicing companies that would not be subject to any of Act 96's requirements. Therefore, even if their claims were not barred by the Tax Injunction Act, they would lack standing to challenge Act 96; they cannot use the lack of entitlement to a remedy caused by their lack of standing to defeat the application of the Tax Injunction Act to this case. But the Tax Injunction Act applies to this case because there are adequate state remedies allowing a *taxpayer—i.e.*, a party with standing—to bring its challenge in the state system.[5]

## 2. CLIA has not demonstrated that it has pre-enforcement standing.

Similarly, CLIA also does not satisfy any of the *Driehaus* factors for pre-enforcement standing. Like Kilohana, Honship, and Aloha Anuenue Tours, CLIA is also not an entity that would be subject to Act 96's imposition of the TAT on cruise

---

[5] Plaintiffs rely on *Capitol Industries-EMI, Inc. v. Bennett*, 681 F.2d 1107 (9th Cir. 1982), but this case is distinguishable. In *Capitol Industries*, a non-taxpayer had standing to challenge a tax because it received a notice of proposed assessment. Kilohana, Honship, and Aloha Anuenue Tours have not and will not receive a TAT assessment because they are not subject to Act 96's requirements. They cannot rely on *Capitol Industries* to show they have standing or to circumvent the Tax Injunction Act.

ships.  As an entity not subject to Act 96's requirements, CLIA could not "engage in the proscribed conduct" of failing to comply with Act 96.  *Peace Ranch, LLC*, 93 F.4th at 488.  CLIA also has not alleged any "intended future conduct" that would violate Act 96, either for itself or for its members.  *Id.* at 489.  There is also no "substantial threat of enforcement" against CLIA because Act 96 does not apply to it.  *Id.*

Further, CLIA has failed to adequately plead associational standing.  "An association has standing to bring suit on behalf of its members when its members would otherwise have standing to sue in their own right, the interests at stake are germane to the organization's purpose, and neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit."  *Friends of the Earth*, 528 U.S. at 181 (citing *Hunt v. Washington State Apple Advertising Comm'n,* 432 U.S. 333, 343 (1977)); *accord Satanic Temple v. Labrador*, 149 F.4th 1047, 1050 (9th Cir. 2025).  Plaintiffs do not adequately plead whether "the interests at stake"—the cruise ships' interest in paying lower taxes—is "germane to the organization's purpose" because their complaint does not clearly state what the CLIA's purpose is, or how it relates to this litigation.  Without more information on what CLIA's purpose is, Plaintiffs have not met their burden of showing that CLIA has standing.  Plaintiffs also do not adequately allege that its "members would otherwise have standing to sue in their own right" in this pre-enforcement challenge.

The complaint does not allege, for example, that its members intend to engage in any future conduct that would violate Act 96. *Peace Ranch, LLC*, 93 F.4th at 489. Because Plaintiffs have not met their burden of showing that they have standing, their claims should be dismissed.

### D. The Tonnage Clause claims are unlikely to succeed because the Tonnage Clause does not apply to a transient accommodation tax.

Even if this case is not dismissed for lack of jurisdiction, Plaintiffs' claims nonetheless fail. Counts I and II lack merit because Act 96 does not violate the Tonnage Clause. The Tonnage Clause "forbids all charges . . . that impose a charge for the privilege of entering, trading in, or lying in a port." *Polar Tankers, Inc. v. City of Valdez*, 557 U.S. 1, 9 (2009) (internal quotation marks omitted). However, as the United States Supreme Court has said, "nothing in the history of the adoption of the Clause, the purpose of the Clause, or this Court's interpretation of the Clause suggests that it operates as a ban on *any and all* taxes which fall on vessels that use a State's port, harbor, or other waterways." *Id.* "Such a radical proposition would transform the Tonnage Clause from one that protects vessels, and their owners, from discrimination by seaboard States, to one that gives vessels preferential treatment vis-à-vis all other property, and its owners, in a seaboard State." *Id.* Therefore, "[t]he Tonnage Clause cannot be read to give vessels such preferential treatment." *Id.* (internal quotation marks omitted).

16

The Tonnage Clause does not apply to this case because the TAT is not "a charge for the privilege of entering, trading in, or lying in a port."[6] *Id.* It is a tax on short-term accommodations, regardless of whether those accommodations are located in a hotel, a rental apartment, or on a cruise ship. Vessels that do not offer short-term accommodations to passengers would not subject to the TAT at all.[7] Because the TAT is unrelated to "the privilege of entering, trading in, or lying in a port," there is no violation of the Tonnage Clause. *Id.* Similarly, the $15 license fee and registration requirement set out in HRS § 237D-4(a) are also unrelated to "the privilege of entering, trading in, or lying in a port." *Id.*

Finally, as the U.S. Supreme Court has stated, the "Tonnage Clause cannot be read to give [cruise ships] . . . preferential treatment" over other transient accommodation providers like hotels. *Id.* Therefore, the Tonnage Clause claims (Counts I and II) are also unlikely to succeed on the merits.

**E. The Rivers and Harbors Act ("RHA") claims are unlikely to succeed because there is no private right of action to bring these claims.**

---

[6] The fact that the TAT is prorated based on the number of days docked in a Hawai'i port does not mean that the TAT is assessed "for the privilege of entering, trading in, or lying in a port." *Polar Tankers*, 557 U.S. at 9. The TAT is prorated to ensure that the cruise ship is taxed only for the time it is providing accommodations in the state.

[7] This case is therefore distinguishable from the $5 fee imposed on *all* ships in the 1867 Supreme Court case *S.S. Co. v. Portwardens*, 73 U.S. (6 Wall.) 31 (1867).

The Rivers and Harbors Act ("RHA") claims also cannot succeed because the RHA does not provide a private right of action.  Section 5(b)(2) of the RHA states: "No taxes, . . . shall be levied upon or collected from any vessel . . . , except for . . . reasonable fees charged on a fair and equitable basis that . . . are used solely to pay the cost of a service to the vessel . . . ."  33 U.S.C. § 5(b)(2).

The Ninth Circuit held that Section 5(b) of the RHA does not create a private right of action.  *Lil' Man in the Boat, Inc. v. City & Cnty. of San Francisco*, 5 F.4th 952, 963 (9th Cir. 2021) (examining the text, structure, and legislative history of the RHA to conclude that "Congress did not intend to imply a private right of action" in the RHA).  Thus, Plaintiffs' claims brought under the RHA (Counts III and IV) are unsuccessful because Plaintiffs lack authority as private citizens to bring these claims.[8]

### F. Plaintiffs' First Amendment claim is also unavailing because there is no underlying constitutional violation.

Because Plaintiffs' Tonnage Clause claims fail, their First Amendment claim also necessarily fails.  Plaintiffs argue that because it is unconstitutional to impose the TAT on cruise ships, it is a violation of the First Amendment to be required to

---

[8] It the court finds that there is a right to bring an RHA claim, such a claim would also fail because the challenged conduct here does not fall within the intended scope of the RHA.  *See Lil' Man In The Boat, Inc. v. City & Cnty. of San Francisco*, No. 17-CV-00904-JST, 2019 WL 8263440, at *8 (N.D. Cal. Nov. 26, 2019), *aff'd on alternative grounds*, 5 F.4th 952 (9th Cir. 2021).

display proof of having a TAT license.  Other than the First Amendment claim, the
only other constitutional argument Plaintiffs make is under the Tonnage Clause.
But because there is no violation of the Tonnage Clause, the First Amendment
(Count V) claim is also unavailing.

In any event, there is a "substantial governmental interest" in ensuring
compliance with the TAT, including the requirement that accommodation providers
operate with a valid license.  Requiring that accommodation providers display proof
of valid license is rationally related to that interest.  *Am. Beverage Ass'n v. City &
Cnty. of San Francisco*, 916 F.3d 749, 755 (9th Cir. 2019) ("[T]he government may
compel truthful disclosure in commercial speech as long as the compelled disclosure
is 'reasonably related' to a substantial governmental interest.").  Moreover,
Plaintiffs themselves concede that if the TAT on cruise ships is constitutional, the
"notice and disclosure requirements" of the TAT are likely also constitutional.
(ECF No. 28-1, PageID.111.)

In conclusion, Plaintiffs have failed to show that they are likely to succeed on
the merits of any of their claims.  Because all of Plaintiffs' claims lack merit, they
are also not entitled to declaratory relief (Count VI).

**II.    Plaintiffs have not shown that they are likely to suffer irreparable
injury in the absence of preliminary relief.**

"Perhaps the single most important prerequisite for the issuance of a preliminary injunction is a demonstration that if it is not granted the applicant is likely to suffer irreparable harm before a decision on the merits can be rendered." 11A C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 2948.1. Plaintiffs have failed to make this showing.

Plaintiffs' irreparable harm argument relies on the assumption that cruise operators will pass the cost of tax on to their customers, thereby increasing cruise fares and reducing demand for cruises. However, cruise operators could simply decide not to pass on the cost of the tax to their customers. Plaintiffs attach six declarations to their motion for preliminary injunction; not a single one states that cruise operators are unable to absorb the costs of the tax. Indeed, all six of the declarations—and Plaintiffs' motion and supporting memorandum—simply assume that the full cost of the TAT must be passed on to cruise passengers. But mere assumptions are not enough to warrant granting the "extraordinary remedy" of a preliminary injunction. *See Winter*, 555 U.S. at 24; *see also All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011) ("[P]laintiffs must establish that irreparable harm is *likely,* not just possible, in order to obtain a preliminary injunction." (citing *Winter*, 555 U.S. at 22)).

But even assuming the TAT must be passed on to cruise passengers, Plaintiffs do not explain why this harm must occur "before a decision on the merits can be

rendered." 11A C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure
§ 2948.1. There is no requirement that cruise operators must pay the assessed tax
upfront in order to bring a challenge before the Tax Appeal Court. *See* HRS § 232-
16. Thus, there is no reason that cruise operators would have to increase their fares
while their challenge to the tax is pending. With no immediate fare increases, cruise
passengers would not need to "make vacation plans elsewhere" (ECF No. 28-1,
PageID.100) "before a decision on the merits [is] rendered." 11A C. Wright, A.
Miller, & M. Kane, Federal Practice and Procedure § 2948.1 ("Only when the
threatened harm would impair the court's ability to grant an effective remedy is
there really a need for preliminary relief. If a trial on the merits can be conducted
before the injury would occur there is no need for a preliminary injunction.").

Plaintiffs also argue that cruise operators are irreparably harmed by the
requirement that they display their TAT license number, but these arguments also
fail. But the requirement that cruise operators display their TAT license number is
not a First Amendment violation. And, contrary to Plaintiffs' contentions,
displaying a license number does not "dilute . . . advertising messages" or "force"
cruise operators to voice their support for a state tax law "to which they strenuously
object." (ECF No. 28-1, PageID.122.) Complying with a law does not necessarily
mean one is endorsing it. Moreover, there is nothing to suggest that Kilohana,

Honship, and Aloha Anuenue Tours would suffer any harm from this requirement, as they are not subject to any of Act 96's requirements at all.

Finally, it is notable that Plaintiffs make no argument that they are harmed at all, let alone irreparably harmed, by the $15 license fee. Thus, for the reasons above, the irreparable harm factor also supports denying injunctive relief.

## III.  The balance of equities and the public interest favor denying injunctive relief.

Plaintiffs do not establish that "the balance of equities tips in [their] favor," nor do they show that "an injunction is in the public interest." *Winter*, 555 U.S. at 20. Courts "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Id.* at 24.

If this Court grants injunctive relief, Defendants will be prevented from collecting TAT from cruise operators. This will hamper Defendants' ability to enforce state tax law, as well as encourage future plaintiffs to circumvent the state tax appeal process by bringing actions for injunctive relief in federal court. In other words, granting injunctive relief in this case would be an affront to the principle of comity and create significant challenges in state tax enforcement going forward. These foundational comity concerns outweigh cruise operators' interest in avoiding paying the TAT.

The public interest also supports denying injunctive relief.  Granting an injunction would establish a rule giving preferential treatment to cruise operators over other accommodation providers like hotels.  It would exempt cruise operators from paying their fair share of the TAT, thereby reducing the funds to be used for the benefit of the people of Hawai'i—to, among other things, offset the environmental effects of tourism and protect the fragile and unique ecosystems in the state.  The balance of the equities and the public interest support denying injunctive relief.

## CONCLUSION

Plaintiffs fail to meet their burden of establishing any of the four preliminary injunction factors.  Defendants therefore request that this Court deny Plaintiffs' motion for preliminary injunction.

DATED:    Honolulu, Hawai'i, September 26, 2025.

/s/ Kacyn H. Fujii
KACYN H. FUJII
MICHAEL D. DUNFORD
NATHAN S. C. CHEE
Deputy Attorneys General

Attorneys for Defendants
GARY S. SUGANUMA, in his capacity as
Director of Taxation for the State of Hawai'i
and
HAWAI'I DEPARTMENT OF TAXATION

23

*/s/ Andrew Scott Michaels*
ANDREW SCOTT MICHAELS
Deputy County Attorney

Attorney for Defendants
CHELSIE SAKAI, in her capacity as County
Finance Director of the County of Kaua'i
and
COUNTY OF KAUA'I

DANA M.O. VIOLA
Corporation Counsel

By: */s/ Daniel M. Gluck*
DANIEL M. GLUCK
NIKKI Y. LOH
Deputies Corporation Counsel

Attorneys for Defendants
ANDREW T. KAWANO, in his capacity as
Director of the Department of Budget and
Fiscal Services for the City and County of
Honolulu
and
CITY AND COUNTY OF HONOLULU

*/s/ Kenton S. Werk*
KENTON S. WERK
Deputy Corporation Counsel

Attorney for Defendants
MARCY MARTIN, in her capacity as
Director of Finance for the County of Maui
and
COUNTY OF MAUI

*/s/ Hannah Ehrig McKee*
HANNAH EHRIG MCKEE
LERISA L. HEROLDT
STEVEN K. IDEMOTO

24

Deputies Corporation Counsel

Attorneys for Defendants
DIANE NAKAGAWA, in her capacity as
Director of Finance for the County of Hawaiʻi
and
COUNTY OF HAWAIʻI

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| CRUISE LINES INTERNATIONAL ASSOCIATION, INC.; HONOLULU SHIP SUPPLY CO.; KAUA'I KILOHANA PARTNERS; and ALOHA ANUENUE TOURS, LLC,<br><br>                    Plaintiffs,<br><br>        vs.<br><br>GARY S. SUGANUMA, in his capacity as Director of Taxation for the State of Hawai'i; et. al.,<br><br>                    Defendants. | CIVIL NO. 1:25-cv-00367-JAO-KJM<br><br>CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.4(e) |

<u>CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.4(e)</u>

        I hereby certify under Local Rule 7.4(e) this document contains 6,114

words.

        DATED:   Honolulu, Hawai'i, September 26, 2025.

                            */s/ Kacyn H. Fujii*
                            KACYN H. FUJII
                            MICHAEL D. DUNFORD
                            NATHAN S. C. CHEE
                            Deputy Attorneys General

                            Attorneys for Defendants
                            GARY S. SUGANUMA, in his capacity as
                            Director of Taxation for the State of Hawai'i
                            and
                            HAWAI'I DEPARTMENT OF
                            TAXATION