PAUL HASTINGS
A Limited Liability Partnership

BRADLEY J. BONDI (*Pro Hac Vice*)
BENJAMIN W. SNYDER (*Pro Hac Vice*)
RONALD K. ANGUAS, JR. (*Pro Hac Vice*)
2050 M Street NW
Washington, DC 20036
Telephone:  (202) 551-1701
Email: bradbondi@paulhastings.com
        bensnyder@paulhastings.com
        ronaldanguas@paulhastings.com

CADES SCHUTTE
A Limited Liability Law Partnership

JEFFREY S. PORTNOY        1211
TREVER K. ASAM           8133
LINDSAY N. MCANEELEY     8810
1000 Bishop Street, Suite 1200
Honolulu, HI 96813
Telephone:  (808) 521-9200
Email: jportnoy@cades.com
        tasam@cades.com
        lmcaneeley@cades.com

Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| CRUISE LINES INTERNATIONAL ASSOCIATION, INC.; HONOLULU SHIP SUPPLY CO.; KAUAʻI KILOHANA PARTNERS; and ALOHA ANUENUE TOURS LLC,<br><br>Plaintiffs,<br><br>v.<br><br>GARY S. SUGANUMA, in his capacity as Director of Taxation for the State of Hawaiʻi; | Civil No. 25-00367-JAO-KJM<br><br>**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE COMPLAINT (ECF 53)** |

HAWAI'I DEPARTMENT OF
TAXATION; CHELSIE SAKAI, in her
capacity as County Finance Director of the
County of Kaua'i; COUNTY OF KAUA'I;
ANDREW T. KAWANO, in his capacity as
Director of the Department of Budget and
Fiscal Services for the City and County of
Honolulu; CITY AND COUNTY OF
HONOLULU; MARCY MARTIN, in her
capacity as Director of Finance for the
County of Maui; COUNTY OF MAUI;
DIANE NAKAGAWA, in her capacity as
Director of Finance for the County of
Hawai'i; and COUNTY OF HAWAI'I,

    Defendants.

<u>Hearing</u>
Date: November 5, 2025
Time: 2:00 p.m.
Judge: Honorable Jill A. Otake

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................1

BACKGROUND .................................................................................2

LEGAL STANDARD...........................................................................3

ARGUMENT .....................................................................................4

I.    The Tax Injunction Act Does Not Bar Plaintiffs' Claims ..............................4

    A.    The Hawaiʻi-Based Plaintiffs' Claims Are Not Barred ......................4

    B.    CLIA's Claims Are Not Barred ...........................................................6

        1.    Hawaiʻi Does Not Provide A Speedy And Efficient Means By Which CLIA's Members May Challenge The Surcharges ..............................................................6

        2.    Hawaiʻi Provides No Means At All By Which CLIA's Members May Challenge The Registration Fees.......................9

        3.    CLIA's First Amendment Claim Is Not Barred ......................10

II.   The Comity Doctrine Does Not Bar Plaintiffs' Claims .................................11

III.  Plaintiffs Clearly Have Standing Under Controlling Law ............................12

    A.    The Hawaiʻi-Based Plaintiffs Have Standing ....................................12

    B.    CLIA Has Standing Under Controlling Law ......................................16

IV.   Plaintiffs Plausibly Have Alleged Violations Of The Tonnage Clause, The Rivers And Harbors Act, And The First Amendment...........................17

    A.    Act 96's Surcharges And Fees Violate The Tonnage Clause Of The Constitution..................................................................................18

    B.    Act 96's Surcharges And Fees Violate The Rivers And Harbors Act ...........................................................................................21

    C.    Act 96's Compelled-Speech Provisions Violate The First Amendment.........................................................................................23

V.    The Individual Defendants Should Not Be Dismissed..................................24

CONCLUSION ..................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Air Polynesia, Inc. v. Freitas,*
   742 F.2d 546 (9th Cir. 1984) .................................................................9

*American Beverage Ass'n v. City & Cnty. of San Francisco,*
   916 F.3d 749 (9th Cir. 2019) ..........................................................2, 24

*Armstrong v. Exceptional Child Ctr., Inc.,*
   575 U.S. 320 (2015).........................................................................23

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007).........................................................................3

*Bidart Bros. v. Cal. Apple Comm'n,*
   73 F.3d 925 (9th Cir. 1996) .............................................................10

*Bond v. United States,*
   564 U.S. 211 (2011)....................................................................15, 16

*Capitol Indus.-EMI, Inc. v. Bennett,*
   681 F.2d 1107 (9th Cir. 1982) .....................................................4, 5, 6

*Clyde Mallory Lines v. Alabama ex rel. State Docks Comm'n,*
   296 U.S. 261 (1935)...............................................................1, 18, 19

*Ctr. for Biological Diversity v. Exp.-Imp. Bank of the United States,*
   894 F.3d 1005 (9th Cir. 2018) .........................................................13

*Dep't of Com. v. New York,*
   588 U.S. 752 (2019).........................................................................14

*Diamond Alternative Energy, LLC v. EPA,*
   145 S. Ct. 2121 (2025)..................................................1, 13, 14, 15

*Direct Mktg. Ass'n v. Brohl,*
   575 U.S. 1 (2015).......................................................................10, 11

*Ex parte Young,*
   209 U.S. 123 (1908).................................................................2, 23, 25

*Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.,*
   528 U.S. 167 (2000).........................................................................16

*Ga. R.R. & Banking Co. v. Redwine,*
   342 U.S. 299 (1952).......................................................................8, 9

*Hyatt v. Yee*,
  871 F.3d 1067 (9th Cir. 2017) ............................................................6

*Juliana v. United States*,
  947 F.3d 1159 (9th Cir. 2020) ...........................................................12

*Kowalski v. Tesmer*,
  543 U.S. 125 (2004)............................................................................15

*Larez v. City of Los Angeles*,
  946 F.2d 630 (9th Cir. 1991) .........................................................2, 25

*Levin v. Com. Energy, Inc.*,
  560 U.S. 413 (2010)......................................................................11, 12

*Lil' Man in the Boat, Inc. v. City & Cnty. of San Francisco*,
  2019 WL 8263440 (N.D. Cal. Nov. 26, 2019) ...............................22, 23

*Lil' Man in the Boat, Inc. v. City & Cnty. of San Francisco*,
  5 F.4th 952 (9th Cir. 2021) ...........................................................22, 23

*Mata v. Lynch*,
  576 U.S. 143 (2015)............................................................................12

*McNatt v. Apfel*,
  201 F.3d 1084 (9th Cir. 2000) .............................................................3

*MedImmune, Inc. v. Genentech, Inc.*,
  549 U.S. 118 (2007)............................................................................17

*Polar Tankers, Inc. v. City of Valdez*,
  557 U.S. 1 (2009).................................................................18, 20, 21

*Pride v. Correa*,
  719 F.3d 1130 (9th Cir. 2013) .............................................................3

*Rosewell v. LaSalle Nat'l Bank*,
  450 U.S. 503 (1981)..............................................................................7

*Tyler v. Hennepin Cnty.*,
  598 U.S. 631 (2023)............................................................................12

*Washington v. Trump*,
  145 F.4th 1013 (9th Cir. 2025) ..........................................................24

STATUTES

28 U.S.C § 1341 ................................................................1, 4, 5, 6, 8, 10, 11

33 U.S.C. § 5 ...................................................................................1, 21, 22

33 U.S.C. § 2236 ...................................................................................21, 22

42 U.S.C. § 1983 .........................................................................................22

Haw. Act 96 § 5.1 .................................................................................1, 3, 18

Haw. Cnty. Code § 2-265 ...............................................................................8

Haw. Rev. Stat. (HRS) § 232-13 ...................................................................11

HRS § 237D-2.5 ...........................................................................................25

HRS § 237D-4 .........................................................................................3, 18

HRS § 237D-6 ................................................................................................7

HRS § 237D-9 ................................................................................................7

Kauaʻi Cnty. Code § 5-4.12 ...........................................................................8

Maui Cnty. Code § 3.47.120 ...........................................................................8

Rev. Ord. Hon. § 8A-1.16 ...............................................................................8

REGULATION

33 C.F.R. § 329.4 ........................................................................................21

CONSTITUTIONAL PROVISION

U.S. Const. art. I, § 10, cl. 3 .................................................................18, 21

OTHER AUTHORITY

Erik M. Jensen, *Quirky Constitutional Provisions Matter:*
    *The Tonnage Clause,* Polar Tankers*, and State Taxation of Commerce*,
    18 Geo. Mason L. Rev. 669 (2011) ............................................................15, 21

**INTRODUCTION**

Hawai'i's Act 96 violates the Constitution of the United States and federal law by imposing a tax on the passengers of cruise ships that are "docked at any port in the State." Act 96 § 5.1. The Tonnage Clause of the Constitution unequivocally prohibits States from precisely this conduct—"tax[ing] the privilege of access by vessels to their harbors." *Clyde Mallory Lines v. Alabama ex rel. State Docks Comm'n*, 296 U.S. 261, 265 (1935). The Rivers and Harbors Act ("RHA") also prohibits States from charging any "impositions whatever" on vessels in federal waters. 33 U.S.C. § 5(b). Defendants' motion to dismiss fails to respond in any meaningful or credible fashion to these clear constitutional and statutory violations.

Lacking any response on the merits, Defendants resort to jurisdictional and procedural arguments—each of which fails to bar this action. Defendants rely mostly on the Tax Injunction Act ("TIA"), but CLIA's members lack the requisite "plain, speedy and efficient" remedy in state court, 28 U.S.C § 1341, with respect to any of their claims that would trigger the TIA. And, even if the TIA were to apply here—which it does not—the TIA cannot apply to the Hawai'i-based plaintiffs, who have no state-law remedy whatsoever. Defendants have no response there.

Defendants' half-hearted standing argument also fails. Defendants entirely ignore *Diamond Alternative Energy, LLC v. EPA*, 145 S. Ct. 2121 (2025), and other controlling decisions that unequivocally confirm Plaintiffs' standing here.

Defendants' assertion that they may escape the RHA because it contains no "private right of action" ignores that Plaintiffs do not assert such a right. Rather, Plaintiffs ask this Court to exercise its *equitable* authority—consistent with the Supreme Court's seminal decision in *Ex parte Young*, 209 U.S. 123 (1908)—to *enjoin* a state law that is preempted by a federal statute. An injunction is an entirely appropriate remedy for blatant violations of the Constitution and federal law.

It follows naturally that the First Amendment bars Act 96's compelled-speech requirements as a matter of law if Act 96 violates the Tonnage Clause or RHA because there is no "substantial governmental interest," *American Beverage Ass'n v. City & Cnty. of San Francisco*, 916 F.3d 749, 755 (9th Cir. 2019) (en banc), in promoting unlawful surcharges. Defendants do not dispute that Act 96 would violate the First Amendment if Act 96's surcharges are found unlawful.

And finally, Defendants' attempt to dismiss the individual Defendants flies in the face of the very case on which they rely. *See Larez v. City of Los Angeles*, 946 F.2d 630, 646–48 (9th Cir. 1991).

For these reasons and as explained in further detail below, the Court should deny Defendants' motion in full.

## BACKGROUND

Act 96, which is scheduled to take effect on January 1, 2026, will authorize a cumulative 14% surcharge on the prorated fares paid by cruise-ship passengers for

voyages docking in Hawaiʻi.  Compl. ¶¶ 30, 32.  The charges are calculated based on "days docked at any port in the State."  *Id.* ¶ 4 (quoting Act 96 § 5.1).  The law also requires cruise-ship operators to pay a one-time registration fee for each ship "as a condition precedent to engaging or continuing in the business of furnishing transient accommodations."  *Id.* ¶ 86 (quoting Haw. Rev. Stat. ("HRS") § 237D-4(a)).  It compels cruise-ship operators to post notices about compliance with that regime on every ship that visits Hawaiʻi, and to include similar information in every advertisement they run for Hawaiʻi-bound cruises.  *See id.* ¶ 6.

Plaintiffs—an association of cruise-ship operators and three Hawaiʻi-based entities that depend on cruises for all or a substantial portion of their business—sued to enjoin Act 96's violations of the Tonnage Clause, the RHA, and the First Amendment.  Defendants moved to dismiss under Rules 12(b)(1) and (6).

## LEGAL STANDARD

When evaluating Defendants' motion, "all factual allegations in [Plaintiffs'] complaint are taken as true and all reasonable inferences are drawn in [their] favor." *Pride v. Correa*, 719 F.3d 1130, 1133 (9th Cir. 2013).  The Court must deny the 12(b)(1) motion if "the facts alleged . . . support jurisdiction," *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000), and it must deny the 12(b)(6) motion if the complaint alleges "enough facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

## ARGUMENT

### I.    The Tax Injunction Act Does Not Bar Plaintiffs' Claims

The TIA provides that "district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State."  28 U.S.C § 1341.  No Plaintiff has a "plain, speedy and efficient remedy" for Act 96's violations, and some Plaintiffs have no remedy at all.  The TIA does not bar Plaintiffs' claims.

#### A.    The Hawai'i-Based Plaintiffs' Claims Are Not Barred

The TIA cannot apply to the claims brought by the Hawai'i-based plaintiffs because they have no state-law mechanism whatsoever for challenging Act 96. While these plaintiffs will be harmed by the law's enforcement (and thus plainly have standing, *see* Part III, *infra*), they cannot use state-law assessment or refund procedures to challenge Act 96 because they do not pay Act 96's fees directly. *See* Compl. ¶ 73.  They also cannot bring a state-court action, because Hawai'i has stripped its courts of jurisdiction to hear requests for declaratory relief "in any controversy with respect to taxes." *See id.* (quoting HRS § 632-1(a)).

On these facts, Ninth Circuit precedent precludes application of the TIA to the Hawai'i-based plaintiffs' claims.  In *Capitol Industries-EMI, Inc. v. Bennett*, 681 F.2d 1107 (9th Cir. 1982) (*EMI*), the Ninth Circuit held that the TIA did not block a challenge to a California tax brought by a plaintiff who was not itself a taxpayer— just like the Hawai'i-based plaintiffs—and as a result lacked any "administrative or

judicial remedy" under California law.  *Id.* at 1118.  "Because California does not provide [the plaintiff] with an effective state remedy for its claims," the court explained, "Section 1341 does not bar the district court from exercising subject matter jurisdiction over such claims."  *Id.* at 1119.  The same logic applies here and compels the same result.

Plaintiffs alerted Defendants to *EMI* in their motion for a preliminary injunction, *see* P.I. Br. (Dkt. 28-1) at 15, yet Defendants' demand for dismissal under the TIA ignores *EMI* entirely.  Indeed, Defendants offer virtually no explanation of how the TIA could apply to the Hawai'i-based plaintiffs.  Their only argument comes in their standing discussion, where they assert that the Hawai'i-based plaintiffs "cannot use the lack of entitlement to a remedy caused by their lack of standing to defeat the application of the Tax Injunction Act."  MTD (Dkt. 53) at 16.  But as explained below, all Plaintiffs do have standing; the Hawai'i-based plaintiffs' lack of any state-law remedy is instead caused by Hawai'i's deliberate decision to strip its courts of jurisdiction over tax-related declaratory judgment suits.  And because Hawai'i has chosen to deny the Hawai'i-based plaintiffs "an effective state remedy for [their] claims, Section 1341 does not bar the district court from exercising subject matter jurisdiction over such claims."  *EMI*, 681 F.2d at 1119.[1]

---

[1] Defendants argue (at 16) that because CLIA members can pursue relief in state court, the Hawai'i-based plaintiffs cannot.  As discussed below, Defendants are

## B.    CLIA's Claims Are Not Barred

The TIA does not bar CLIA's claims either.  Defendants argue that CLIA's members can challenge Act 96 in state court through assessment appeals or refund proceedings.  MTD 6–7.  But those options provide neither a speedy nor an efficient remedy with respect to the surcharges, and provide no remedy at all with respect to the registration fees and compelled-speech requirements.

### 1.    Hawaiʻi Does Not Provide A Speedy And Efficient Means By Which CLIA's Members May Challenge The Surcharges

Hawaiʻi provides CLIA members with only two means of challenging Act 96's illegal surcharges.  Both fall well short of the "plain, speedy and efficient" remedy required by the TIA.  28 U.S.C § 1341; *see* Compl. ¶¶ 76–79.

First, Defendants argue that CLIA members "could refrain from paying the tax, receive a[] tax assessment, and appeal that assessment to the Tax Appeal Court." MTD 7.  But that procedure is not "speedy."  To be "speedy," a state-law remedy must "not entail a significantly greater delay than a corresponding federal procedure." *Hyatt v. Yee*, 871 F.3d 1067, 1073 (9th Cir. 2017) (citation omitted). The Complaint makes clear that Act 96 flunks that test:  It will require cruise-ship

---

wrong about the adequacy of the available state-court remedies for CLIA members. In any event, *EMI* specifically rejected the argument "that a nontaxpayer, without state administrative or judicial remedies, is precluded under Section 1341 from maintaining an action in federal court because it has substantially similar interests and claims as a taxpayer that has such state remedies."  681 F.2d at 1119.

operators to begin making monthly payments in January 2026, *see* HRS § 237D-6, but state and county tax authorities would not be required to make an assessment of withheld tax until *April 2030*, *see* HRS § 237D-9; Compl. ¶ 77.  So CLIA members might not even *begin* state-court proceedings challenging an assessment until *more than four years* after the tax is first due, at which point they also would be subject to a penalty of up to 25% of the tax withheld in the interim.  *See* Compl. ¶ 77.

Defendants contend that under the Supreme Court's decision in *Rosewell v. LaSalle National Bank*, 450 U.S. 503 (1981), a state remedy can qualify as "speedy" even where it may not "be the speediest."  MTD 8 (citation omitted).  But Defendants are hopelessly far from *Rosewell*, and that case if anything undermines their argument.  In *Rosewell*, the Illinois courts afforded taxpayers a remedy "without interest in two years."  450 U.S. at 528.  Justice Blackmun, who provided the decisive fifth vote in the case, clarified that the remedy there satisfied the TIA's requirements "only barely."  *Id.* at 529.  The two years permitted in *Rosewell* cannot justify the much longer delay here.  Worse, Defendants also ignore that *Rosewell* permitted a two-year delay only where "federal trial courts" also were "beset by docket congestion and delay for many years."  *Id.* at 518.  The two-year state-court delay in *Rosewell* therefore was not "significantly greater" than the time to disposition in federal court.  The opposite is true here: a four-year delay to *start* in state court would be far in excess of the time necessary to *resolve* this case in federal

court (and Defendants, at minimum, make no showing otherwise).

Second, Defendants argue that CLIA members could "submit a request to the Department of Taxation for a refund," then "appeal to the Tax Appeal Court" when the refund is not granted.  MTD 6.  That option is insufficient, too.  As an initial matter, it is not available with respect to the 3% county-level surcharges, meaning that CLIA, at a minimum, has *no remedy* as to those surcharges.  *See* Compl. ¶ 78 & n.15 (explaining that the Counties have not incorporated the state-level provision allowing appeals of Department of Taxation refund denials).[2]

Even if CLIA members *could* appeal county-level refund denials, Act 96's monthly filing requirements mean that some CLIA members could be required to file hundreds of refund requests every year just to preserve their federal constitutional and statutory claims.  *See* Compl. ¶ 79.  The need for such a proliferation of substantively identical claims—which Defendants do not dispute— means the refund procedure is not "efficient."  28 U.S.C § 1341.  The Court need look no further than Supreme Court precedent to support that conclusion.  In *Georgia Railroad & Banking Co. v. Redwine*, 342 U.S. 299 (1952), the Court held the Tax

---

[2] Defendants assert (at 7) that "[e]ach county also provides appeal rights through the Tax Appeal Court."  But the cited provisions concern only appeals of assessments, not refund denials.  *See* Haw. Cnty. Code § 2-265; Kauaʻi Cnty. Code § 5-4.12; Maui Cnty. Code § 3.47.120; Rev. Ord. Hon. § 8A-1.16.  That explains why Defendants carefully refer only to "a request to the Department of Taxation for a refund," MTD 6, without mentioning refunds from any of the Counties.

Injunction Act is inapplicable on "efficien[cy]" grounds where a taxpayer otherwise would have been required to file "three hundred separate claims in fourteen different counties to protect [a] single federal claim." *Id.* at 303. CLIA members face the same burden here, and *Redwine* compels the same result.

The Ninth Circuit's decision in *Air Polynesia, Inc. v. Freitas*, 742 F.2d 546 (9th Cir. 1984), does not establish otherwise. Defendants argue that *Air Polynesia* supplies "binding precedent" that "the remedy provided under Hawaiʻi law is plain, speedy, and efficient." MTD 9. In *Air Polynesia*, however, the Department of Taxation already had issued an assessment by the time the plaintiff sued in federal court, and only state-level taxes were at issue. *See* 742 F.2d at 547. The Ninth Circuit had no occasion to address any of the issues discussed above concerning delay, inefficiency, and the unavailability of appeals from county-level refund denials. Instead, the court considered only case-specific questions about notice and the plaintiff's inability to pay. *See id.* at 548–49. Its decision resolving those narrow issues cannot be read to establish that Hawaiʻi's tax procedures always satisfy the TIA's requirements in wholly dissimilar circumstances.

### 2. Hawaiʻi Provides No Means At All By Which CLIA's Members May Challenge The Registration Fees

The TIA also does not bar CLIA's challenges to Act 96's registration fees. First, there is no mechanism at all by which CLIA's members can recover the registration fees after they have been paid—let alone a plain, speedy, and efficient

one.  *See* Compl. ¶ 75.  Second, the registration fees are not "taxes" covered by the

TIA, but rather "regulatory 'fee[s].'"  *Bidart Bros. v. Cal. Apple Comm'n*, 73 F.3d

925, 930 (9th Cir. 1996); *see* P.I. Br. 20–21.

Defendants dispute neither point.  Indeed, they concede that the registration

fees do "not technically fit within the language of the Tax Injunction Act."  MTD 9–

10 (internal quotation marks and alteration omitted).  The TIA has no bearing on

CLIA's challenge to the registration fees.

### 3.    CLIA's First Amendment Claim Is Not Barred

Finally, the TIA does not bar CLIA's First Amendment claim.  That claim

does not seek to "enjoin, suspend or restrain the assessment, levy or collection of

any tax," 28 U.S.C. § 1341, but instead challenges separate compelled-speech

requirements.  The Supreme Court's decision in *Direct Marketing Ass'n v. Brohl*,

575 U.S. 1 (2015), is on point.  There, the Court held that the TIA did not bar a First

Amendment challenge to notice and reporting requirements that Colorado had

imposed on online merchants.  *See id.* at 4.  Even if "[e]nforcement of the notice and

reporting requirements may improve Colorado's ability to assess and ultimately

collect its sales and use taxes from consumers," the Court explained, "the TIA is not

keyed to all activities that may improve a State's ability to assess and collect taxes."

*Id.* at 11.  Rather, "[t]he TIA is keyed to the acts of assessment, levy, and collection

themselves, and enforcement of the notice and reporting requirements is none of

these." *Id.* at 12.   The same is true here:  CLIA's challenge to the notice and disclosure regime does not target the State's assessment, levy, or collection efforts, but instead focuses on Act 96's compelled-speech requirements.  The TIA therefore does not prevent this Court from considering CLIA's First Amendment claim.[3]

## II.    The Comity Doctrine Does Not Bar Plaintiffs' Claims

Plaintiffs' claims also are not barred by the doctrine of comity.  Defendants admit that the comity doctrine justifies abstaining from the exercise of jurisdiction only "if an 'adequate state-court forum' is available to hear and decide the plaintiff's constitutional claims."  MTD 9 (footnote omitted) (quoting *Levin v. Com. Energy, Inc.*, 560 U.S. 413, 421 (2010)).  And the "adequate state-court forum" requirement "has 'no significant difference' from the TIA's 'plain, speedy, and efficient' requirement."  *Id.* at 9 n.4 (quoting *Fair Assessment in Real Est. Ass'n, Inc. v. McNary*, 454 U.S. 100, 116 n.8 (1981)).

For the reasons just discussed, Plaintiffs lack "plain, speedy, and efficient" state-law remedies with respect to their claims.  As a result, they lack an "adequate

---

[3] In a footnote (at 7 n.3), Defendants suggest that nothing prevents the Tax Appeal Court from hearing First Amendment claims in the context of a challenge to an assessment or a refund denial.  Because CLIA's First Amendment claim does not seek to "enjoin, suspend or restrain the assessment, levy or collection of any tax," 28 U.S.C. § 1341, the TIA would not apply even if that were true.  But, in any event, the provision that Defendants cite itself states that "[t]he jurisdiction of the tax appeal court shall be limited to the amount of valuation or taxes . . . in dispute."  HRS § 232-13.  The Tax Appeal Court has no jurisdiction to enjoin enforcement of the separate notice and disclosure requirements.

state-court forum" under the comity doctrine, too.    In addition, CLIA's First

Amendment claim does not "risk disrupting state tax administration," *Levin*, 560

U.S. at 417, because it seeks only to enjoin Act 96's notice and disclosure

requirements.    The comity doctrine provides no grounds for refusing to decide

Plaintiffs' claims.  *See Mata v. Lynch*, 576 U.S. 143, 150 (2015) ("[W]hen a federal

court has jurisdiction, it also has a 'virtually unflagging obligation . . . to exercise'

that authority." (ellipsis in original; citation omitted)).

## III.   Plaintiffs Clearly Have Standing Under Controlling Law

"To have standing under Article III, a plaintiff must have (1) a concrete and

particularized injury that (2) is caused by the challenged conduct and (3) is likely

redressable by a favorable judicial decision."  *Juliana v. United States*, 947 F.3d

1159, 1168 (9th Cir. 2020).  Plaintiffs here satisfy each of those requirements.

### A.    The Hawaiʻi-Based Plaintiffs Have Standing

The Hawaiʻi-based plaintiffs have alleged that by substantially increasing the

cost of sailing to Hawaiʻi, Act 96 will cause fewer cruise ships and cruise-ship

passengers to patronize their businesses.  *See* Compl. ¶¶ 55–70 (explaining Hawaiʻi-

based plaintiffs' heavy dependence on the cruise industry).   "This is a classic

pocketbook injury sufficient to give [them] standing."  *Tyler v. Hennepin Cnty.*, 598

U.S. 631, 636 (2023).  Enjoining enforcement of Act 96 would redress that injury,

as it would prevent the increased costs that will otherwise reduce demand from the

cruise ships and cruise-ship passengers on whom the Hawaiʻi-based plaintiffs' businesses depend. *See Ctr. for Biological Diversity v. Exp.-Imp. Bank of the United States*, 894 F.3d 1005, 1012 n.2 (9th Cir. 2018) ("[C]ausation and redressability 'are two sides of the same coin.'" (citation omitted)).

Defendants argue (at 13–14) that the alleged effects of Act 96's surcharges are "merely conjecture," and that the Hawaiʻi-based plaintiffs' "articulated harm . . . is too attenuated to establish injury in fact." That is wrong. The Supreme Court reaffirmed just last Term that "commonsense economic inferences about the operation of" a given market can support standing. *Diamond Alternative Energy, LLC v. EPA*, 145 S. Ct. 2121, 2136, 2138 (2025). Here, such commonsense economic inferences make it obvious (and, at minimum, plausible) that a 14% surcharge will cause fewer cruise-ship passengers to visit Hawaiʻi, and will cause those passengers who do travel to the State to have less disposable income to spend on the Hawaiʻi-based plaintiffs' optional goods and excursions. *See, e.g.*, Compl. ¶¶ 57, 70. Indeed, Hawaiʻi's own state tourism agency already has acknowledged that Act 96 "is likely to reduce the number of stops that cruise lines would want to visit between the islands, which could significantly reduce the amount of on-island spend through excursions, shopping, etc.," and may cause cruise lines to "reduce the number of trips that they offer" in the State. *Id.* ¶ 56.

Defendants also argue that the Hawaiʻi-based plaintiffs "are not subject to any

of Act 96's requirements," that their "'intended future conduct' is not 'arguably . . . proscribed by [the] statute' they challenge," and that they face "no 'substantial threat of enforcement.'"  MTD 14–15 (quoting *Peace Ranch, LLC v. Bonta*, 93 F.4th 482, 488–89 (9th Cir. 2024)).  These arguments are misguided.  A plaintiff need not be "the object of a government regulation" to show standing.  *Diamond Alternative Energy*, 145 S. Ct. at 2134.  Rather, "when the government regulates (or under-regulates) a business, the regulation (or lack thereof) may cause downstream or upstream economic injuries to others in the chain, such as certain manufacturers, retailers, suppliers, competitors, or customers."  *Id.* at 2136 (internal quotation marks omitted).  And when those injuries are "predictable, commonsense inferences may be drawn" in favor of standing for "others in the chain."  *Id.*

That is true regardless of whether the challenged policy has taken effect, or whether the unregulated plaintiff is bringing a pre-enforcement suit.  In *Department of Commerce v. New York*, 588 U.S. 752 (2019), for example, the Supreme Court held that States had standing to challenge the proposed addition of a citizenship question to the census, even though the households who were legally required to answer the question were the regulated parties, because the addition of the question would predictably injure the States by depressing noncitizen-household response rates.  *See id.* at 766–68.  Here, too, it is predictable that imposing surcharges on cruise-ship operators will harm the businesses of the Hawaiʻi-based plaintiffs—as,

14

again, the State's official tourism agency already has acknowledged.

Finally, Defendants argue that the Hawai'i-based plaintiffs are somehow asserting third-party rights or bringing third-party claims. *See* MTD 15–16 (citing *Kowalski v. Tesmer*, 543 U.S. 125, 129 (2004)). But this is not a third-party standing case. The Hawai'i-based plaintiffs are not trying to "raise the rights of others," *Kowalski*, 543 U.S. 129; they are asserting their own rights—just like the plaintiffs in *Diamond Alternative Energy*. And just like the plaintiffs in *Diamond Alternative Energy*, the Hawai'i-based plaintiffs have standing to assert their own rights because they have adequately alleged injury, causation, and redressability.

The Supreme Court has explained, moreover, that where a plaintiff has standing, that plaintiff may bring challenges under structural constitutional provisions—like the Tonnage Clause—because those provisions "protect[] individual liberty." *Bond v. United States*, 564 U.S. 211, 223 (2011); *see* Erik M. Jensen, *Quirky Constitutional Provisions Matter: The Tonnage Clause,* Polar Tankers*, and State Taxation of Commerce*, 18 Geo. Mason L. Rev. 669, 716 (2011) (explaining that the Tonnage Clause is a "provision of the Constitution . . . that is part of the structure intended to ensure federal control over commerce"). In *Bond*, for example, the Court rejected an argument—similar to the one Defendants raise here—that the petitioner was impermissibly asserting the rights of the States by raising a Tenth Amendment objection to her prosecution. *See* 564 U.S. at 220. The

Court explained that historically, across a wide range of cases, "the claims of individuals . . . have been the principal source of judicial decisions concerning separation of powers and checks and balances." *Id.* at 222. So too here: the Hawaiʻi-based plaintiffs will be injured by Defendants' violations of the Tonnage Clause and RHA, and they can sue to challenge those violations.

## B.    CLIA Has Standing Under Controlling Law

CLIA also has standing to challenge the surcharges, registration fees, and notice and disclosure requirements imposed by Act 96. As Defendants concede (at 17), it is well established that "[a]n association has standing to bring suit on behalf of its members when its members would otherwise have standing to sue in their own right, the interests at stake are germane to the organization's purpose, and neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 181 (2000). CLIA satisfies each of those requirements here.

Defendants argue that CLIA did not "adequately plead whether 'the interests at stake'—the cruise ships' interest in paying lower taxes—[are] 'germane to the organization's purpose.'" MTD 17 (citation omitted). This ignores the Complaint's allegations. The Complaint establishes that one of CLIA's purposes is "to protect its members' legal rights in the jurisdictions in which they operate, including Hawaiʻi," Compl. ¶ 8; that "CLIA's members collectively represent 95% of global

16

cruise passenger capacity," *id.*; and that "[m]any of those members sail and dock in Hawai'i," *id.*  In addition, a CLIA representative has declared that "CLIA's Charter . . . expressly provides that CLIA is authorized to represent its members' interests before 'state and federal judiciaries,'" and that CLIA, "where necessary, participates in litigation to advance the interests of CLIA's members."  McGarry Decl. ¶ 5.  All this is more than enough to satisfy the germaneness requirement.

Defendants also contend that CLIA's members would not have standing to sue in their own right because "[t]he complaint does not allege . . . that [CLIA's] members intend to engage in any future conduct that would violate Act 96."  MTD 18.  But it alleges that CLIA represents members that sail to Hawai'i, Compl. ¶ 8, and the Supreme Court has long held that "where threatened action by government is concerned, we do not require a plaintiff to expose himself to liability before bringing suit to challenge the basis for the threat," *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 128–29 (2007) (emphasis omitted).  It is sufficient, for purposes of standing, that CLIA's members will be subject to Act 96's surcharges, registration fees, and notice and disclosure requirements if the law is not enjoined.

## IV.    Plaintiffs Plausibly Have Alleged Violations Of The Tonnage Clause, The Rivers And Harbors Act, And The First Amendment

After devoting most of their Motion to flawed jurisdictional arguments, Defendants turn briefly to the merits.  *See* MTD 18–21.  But here, too, Defendants provide no basis for the Court to dismiss Plaintiffs' suit.  Plaintiffs have stated valid

17

claims for violations of the Tonnage Clause, the RHA, and the First Amendment.

**A.    Act 96's Surcharges And Fees Violate The Tonnage Clause Of The Constitution**

The Tonnage Clause provides that "[n]o State shall, without the Consent of Congress, lay any Duty of Tonnage."  U.S. Const. art. I, § 10, cl. 3.  The Framers' goal in drafting that provision was to prevent States from "tax[ing] the privilege of access by vessels to their harbors."  *Clyde Mallory Lines v. Alabama ex rel. State Docks Comm'n*, 296 U.S. 261, 265 (1935).  The Supreme Court has construed the Tonnage Clause broadly to "embrace all taxes and duties regardless of their name or form, and even though not measured by the tonnage of the vessel, which operate to impose a charge for the privilege of entering, trading in, or lying in a port."  *Id.* at 265–66; *see Polar Tankers, Inc. v. City of Valdez*, 557 U.S. 1, 8 (2009).

Act 96 violates the Tonnage Clause by (i) imposing registration fees as a condition to docking in Hawai'i ports and (ii) imposing 14% cumulative surcharges for exercising the same privilege.  The fees are "a condition precedent to engaging or continuing in the business of furnishing transient accommodations," HRS § 237D-4(a), meaning that cruise-ship operators must pay them to dock in Hawai'i's ports.  The surcharges likewise are calculated based on the number of days that a ship is "docked at any port in the State," Act 96 § 5.1, increasing as the time in port goes up.  Those are paradigmatic "charge[s] for the privilege of entering, trading in, or lying in a port."  *Clyde Mallory Lines*, 296 U.S. at 265–66.  And while the Tonnage

Clause does allow States to require payment "for services rendered to and enjoyed by [a] vessel," *id.* at 266 (citations omitted), the registration fees and surcharges do not fall within that exception:  CLIA's members already pay numerous charges and fees for maritime services when their ships visit Hawai'i ports, Compl. ¶ 88, and Defendants concede (at 5 n.1) that "the funds raised [by Act 96] are to be used for the public benefit," *not* for services to cruise ships.

Defendants weakly assert that the registration fees are "unrelated to 'the privilege of entering, trading in, or lying in a port.'"  MTD 20 n.6.  That is wrong— the registration fees are a condition precedent to a cruise ship docking in Hawai'i, and so are very much related to the privilege of entering and lying in a port.

Defendants also cannot avoid that the 14% surcharges are unconstitutional duties of tonnage.  They appear to make two arguments:  First, they contend that the surcharges are a tax on short-term accommodations—not on "the privilege" of entering port—because vessels that do not offer short-term accommodations are not required to pay them.  MTD 20 (internal quotation marks omitted).  Second, Defendants assert that the surcharges apply to all short-term accommodations and so do not discriminate against cruise ships.  *See id.*  Both arguments are wrong.

First, Supreme Court precedent makes clear that States cannot evade the prohibitions of the Tonnage Clause by targeting the business in which a vessel engages, rather than the entry or docking of the vessel itself.  The Court even has

held specifically that the Tonnage Clause forbids States from taxing a ship based on "*the number of passengers which she carries*." *Polar Tankers*, 557 U.S. at 8 (quoting *Passenger Cases*, 48 U.S. 283, 458–59 (1849)) (emphasis added). Defendants' argument would imply that a tax on passengers does violate the Tonnage Clause because an empty ship could dock without paying it. The Supreme Court has expressly rejected that view.

Second, CLIA has plainly demonstrated that Act 96 discriminates against cruise ships. Act 96 taxes certain items included in cruise fares, like meals, that are not taxed at all-inclusive land-based accommodations. *See* Compl. ¶¶ 51–53. Defendants completely ignore that discriminatory treatment. And even if Act 96 did treat cruise ships identically to land-based accommodations, it still would violate the Tonnage Clause. Defendants' selective quotations from *Polar Tankers* suggest that the Court blessed taxes that apply evenly on and off land. *See* MTD 19–20. But the Court was divided on that point, and Justice Alito, who supplied the fifth vote, expressly declined to join the portion of the lead opinion "which might be read to suggest that the tax at issue here would be permitted under the Tonnage Clause if the tax were a property tax levied in the same manner on other personal property within the jurisdiction." 557 U.S. at 19.

This Court therefore should follow Chief Justice Roberts, whose separate concurring opinion explained that "[t]he Tonnage Clause applies to 'any Duty of

Tonnage,' regardless of how that duty compares to other commercial taxes." *Id.* at 17 (quoting U.S. Const. art. I, § 10, cl. 3). Commentators agree with the Chief Justice's understanding. Jensen, *supra*, at 714. Because the surcharges are duties of tonnage imposed without Congress's consent, they violate the Tonnage Clause.

**B.    Act 96's Surcharges And Fees Violate The Rivers And Harbors Act**

Plaintiffs also have alleged violations of the RHA. Under that statute, "[n]o taxes, tolls, operating charges, fees, or any other impositions whatever shall be levied upon or collected from any vessel or other water craft . . . by any non-Federal interest, if the vessel or water craft is operating on any navigable waters subject to the authority of the United States." 33 U.S.C. § 5(b). The statute contains only limited exceptions for "fees charged under [33 U.S.C. § 2236]" for port or harbor dues used to pay for construction projects; certain "reasonable fees . . . used solely to pay the cost of a service to the vessel or water craft"; and "property taxes on vessels or watercraft." 33 U.S.C. § 5(b)(1)–(3).

Act 96 unquestionably violates the RHA. The registration fees and surcharges are "taxes, tolls, operating charges, fees, or . . . other impositions." 33 U.S.C. § 5(b). They are "levied upon or collected from any vessel or other water craft." *Id.* And ships entering, exiting, and docking in Hawai'i ports are "operating on . . . navigable waters subject to the authority of the United States." *Id.*; *see* 33 C.F.R. § 329.4. The fees and surcharges also do not fall within any of the statutory exceptions: They are

not "fees charged under [33 U.S.C. § 2236]" for port or harbor dues; they are not "property taxes"; and they are not "used solely to pay the cost of a service to the vessel or water craft." 33 U.S.C. § 5(b)(1)–(3).

Defendants barely contest that the registration fees and surcharges violate the RHA's plain terms.[4] Instead, drawing on the Ninth Circuit's decision in *Lil' Man in the Boat, Inc. v. City & County of San Francisco*, 5 F.4th 952 (9th Cir. 2021), Defendants argue that Plaintiffs cannot invoke the RHA because the statute does not contain a private right of action.

Defendants are mistaken. The question in *Lil' Man* was whether the RHA, combined with 42 U.S.C. § 1983, clearly established a private right of action *for damages*. *See* 5 F.4th at 955; *Lil' Man*, 2019 WL 8263440, at *2 (noting that the plaintiff's complaint rested on Section 1983 and "request[ed] compensatory damages, punitive damages, costs of suit, and attorney's fees"). The Ninth Circuit

---

[4] In a footnote, Defendants contend (at 19 n.5) that "the challenged conduct here does not fall within the intended scope of the RHA." Plaintiffs' sole support is a district court opinion that concluded, based on a misreading of legislative history, that the RHA applies only "where the vessel is not calling on, or landing, in the local community." *Lil' Man in the Boat, Inc. v. City & Cnty. of San Francisco*, 2019 WL 8263440, at *8 (N.D. Cal. Nov. 26, 2019) (citation omitted). But that view is irreconcilable with the statutory text, which applies to "*any . . .* impositions whatever" that are levied "if [a] vessel or water craft is operating on any navigable waters subject to the authority of the United States." 33 U.S.C. § 5(b) (emphasis added). It also cannot be reconciled with the statutory exceptions for port and harbor dues levied under 33 U.S.C. § 2236, and for fees used solely to pay for services to vessels. *See* 33 U.S.C. § 5(b)(1)–(2). If the RHA applied only when a vessel was not calling on or landing in a port, those exceptions would be unnecessary.

held that it did not, applying the clear-statement rule applicable when a plaintiff alleges that Congress "create[d] new rights enforceable under an implied private right of action." 5 F.4th at 958 (quoting *Gonzaga Univ. v. Doe*, 536 U.S. 273, 290 (2002)). In doing so, the court specifically observed that the fact that Congress had adopted "a statute intended to protect a class of beneficiaries does not require the conclusion that Congress intended to imply a private cause of action *for damages*." *Id.* at 959 (emphasis added). Plaintiffs, by contrast, do not contend that the RHA entitles them to damages under Section 1983 or an implied private right of action. Instead, Plaintiffs' RHA claims seek solely the declaratory and injunctive relief traditionally available under "the Court's equitable authority." Compl. ¶ 23 (citing *Ex parte Young*, 209 U.S. 123 (1908)). As the Supreme Court has "long recognized, if an individual claims federal law immunizes him from state regulation, the court may issue an injunction upon finding the state regulatory actions preempted." *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 326 (2015) (citing *Ex parte Young*, 209 U.S. at 155–56). Nothing in the Ninth Circuit's discussion of implied private rights of action in *Lil' Man* purports to alter that well-established equitable authority to enjoin preempted state laws where, as here, private parties would be injured by their enforcement.

### C.    Act 96's Compelled-Speech Provisions Violate The First Amendment

Finally, CLIA has stated a First Amendment claim based on Act 96's notice

and disclosure requirements.  In the commercial context, States may compel speech only if, among other things, "the compelled disclosure is 'reasonably related' to a substantial governmental interest." *American Beverage Ass'n v. City & Cnty. of San Francisco*, 916 F.3d 749, 755 (9th Cir. 2019) (en banc) (citation omitted). Defendants cannot make that showing:  For the reasons discussed above, Act 96 violates the Tonnage Clause and the RHA—and a State has "no legitimate interest" in enforcing an unconstitutional law, *Washington v. Trump*, 145 F.4th 1013, 1037 (9th Cir. 2025) (citation omitted), let alone a "substantial" one.[5]

Defendants do not dispute that CLIA's First Amendment claims depend on the constitutionality of the underlying surcharges and registration fees.  Instead, they simply repeat (at 21) their arguments that the surcharges and fees are permissible. Accordingly, unless this Court agrees with Defendants' arguments about the validity of the surcharges and fees, CLIA's First Amendment claim must prevail.  *See American Beverage Ass'n*, 916 F.3d at 756 (noting that government defendants bear the burden of establishing the constitutionality of compelled-speech requirements).

## V.    The Individual Defendants Should Not Be Dismissed

Defendants conclude by arguing (at 21–22) that even if Plaintiffs' claims proceed, the Court should dismiss all of the officials named in the Complaint as

---

[5] Defendants suggest (at 21) that Plaintiffs' RHA claims are not relevant to the First Amendment analysis.  But because Act 96 conflicts with that statute, its enforcement would violate the Supremacy Clause.  *See* Compl. ¶ 5.

redundant.  The very cases on which Defendants rely, however, confirm that the county officials are properly named.  *See Larez v. City of Los Angeles*, 946 F.2d 630, 646–48 (9th Cir. 1991) (finding sufficient evidence to warrant jury verdict against both city and police chief named in his official capacity).  And *Ex parte Young* made clear over a century ago that naming state officials like Defendant Suganuma is appropriate.  *See* 209 U.S. at 155–56.  Unless and until Defendants concede that Plaintiffs' claims may proceed against the Counties and the Department of Taxation, there is no basis for dismissing the individual defendants.

Defendants also argue (at 22) that CLIA's claims should be dismissed against the County Defendants insofar as CLIA challenges the imposition of the registration fees and enforcement of the notice and disclosure requirements.   Under HRS § 237D-2.5(a), however, the Counties are vested with "all the rights and powers of the director of taxation" in connection with the enforcement of Chapter 237D.  By its terms, that includes enforcement authority regarding registration, notice, and disclosure.  The County Defendants appropriately are named for all claims.

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss should be denied.

25

DATED:    Honolulu, Hawaiʻi, October 6, 2025.

/s/ Jeffrey S. Portnoy

BRADLEY J. BONDI*                JEFFREY S. PORTNOY
BENJAMIN W. SNYDER*             TREVER K. ASAM
RONALD K. ANGUAS, JR.*          LINDSAY N. MCANEELEY

                                Attorneys for Plaintiffs
                                CRUISE LINES INTERNATIONAL
                                ASSOCIATION, INC.; HONOLULU
                                SHIP SUPPLY CO.; KAUAʻI
                                KILOHANA PARTNERS; and
                                ALOHA ANUENUE TOURS LLC

                                * Pro Hac Vice

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| CRUISE LINES INTERNATIONAL ASSOCIATION, INC.; HONOLULU SHIP SUPPLY CO.; KAUA'I KILOHANA PARTNERS; and ALOHA ANUENUE TOURS LLC, | CIVIL NO.  25-00367 KJM |
| Plaintiffs, | **CERTIFICATE OF SERVICE** |
| v. | |
| GARY S. SUGANUMA, in his capacity as Director of Taxation for the State of Hawai'i; HAWAI'I DEPARTMENT OF TAXATION; CHELSIE SAKAI, in her capacity as County Finance Director of the County of Kaua'i; COUNTY OF KAUA'I; ANDREW T. KAWANO, in his capacity as Director of the Department of Budget and Fiscal Services for the City and County of Honolulu; CITY AND COUNTY OF HONOLULU; MARCY MARTIN, in her capacity as Director of Finance for the County of Maui; COUNTY OF MAUI; DIANE NAKAGAWA, in her capacity as Director of Finance for the County of Hawai'i; and COUNTY OF HAWAI'I, | |
| Defendants. | |

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on this date, true and correct copies of the foregoing document were duly served on the following parties at their last known addresses, by the method indicated below:

KACYN H. FUJII                                    [Via CM/ECF]
MICHAEL D. DUNFORD
Deputy Attorneys General
Department of the Attorney General
State of Hawaiʻi
Hale Auhau Building
425 Queen Street
Honolulu, Hawaiʻi 96813
kacyn.h.fujii@hawaii.com
michael.d.dunford@hawaii.gov

Attorney for Defendants
GARY S. SUGANUMA, in his capacity
as Director of Taxation for the State of
Hawaiʻi and HAWAIʻI DEPARTMENT
OF TAXATION


ANDREW S. MICHAELS                               [Via CM/ECF]
Deputy County Attorney
Office of the County Attorney
County of Kauaʻi
4444 Rice Street, Suite 220
Līhuʻe, Hawaiʻi 96766
amichaels@kauai.gov

Attorney for Defendants
CHELSIE SAKAI, in her capacity as
County Finance Director of the County of
Kauaʻi and COUNTY OF KAUAʻI

DANIEL M. GLUCK                                    [Via CM/ECF]
NIKKI LOH
Deputies Corporation Counsel
Department of the Corporation Counsel
City and County of Honolulu
1001 Bishop Street, Suite 2020
Honolulu, Hawaiʻi 96813
daniel.gluck@honolulu.gov
nikki.loh@honolulu.gov

Attorneys for Defendants
ANDREW T. KAWANO, in his capacity as
Director of the Department of Budget and
Fiscal Services for the City and County of
Honolulu and CITY AND COUNTY OF
HONOLULU


KENTON S. WERK                                    [Via CM/ECF]
Deputy Corporation Counsel
Department of the Corporation Counsel
County of Maui
200 South High Street, 3rd Floor
Wailuku, Maui, Hawaiʻi 96793
kenton.werk@co.maui.his.us

Attorney for Defendants
MARCY MARTIN, in her capacity as
Director of Finance for the County of Maui
and COUNTY OF MAUI

HANNAH E. MCKEE                                        [Via CM/ECF]
STEVEN K. IDEMOTO
Deputies Corporation Counsels
LERISA L. HEROLDT
Deputy Corporation Counsel Section Chief
Office of the Corporation Counsel
County of Hawai'i
Hilo Lagoon Centre
101 Aupuni Street, Suite 325
Hilo, Hawai'i 96720
hannah.mckee@hawaiicounty.gov
steven.idemoto@hawaiicounty.gov
lerisa.heroldt@hawaiicounty.gov

Attorneys for Defendants
DIANE NAKAGAWA, in her capacity as
Director of Finance for the County of Hawai`i
and COUNTY OF HAWAI`I


DATED:    Honolulu, Hawai'i, October 6, 2025.

                              /s/ Jeffrey S. Portnoy
                              _____

BRADLEY J. BONDI*             JEFFREY S. PORTNOY
BENJAMIN W. SNYDER*           TREVER K. ASAM
RONALD K. ANGUAS, JR.*        LINDSAY N. MCANEELEY

                              Attorneys for Plaintiffs
                              CRUISE LINES INTERNATIONAL
                              ASSOCIATION, INC.; HONOLULU
                              SHIP SUPPLY CO.; KAUA'I
                              KILOHANA PARTNERS; and
                              ALOHA ANUENUE TOURS LLC

                              * Pro Hac Vice

4