STANLEY E. WOODWARD, JR.
Associate Attorney General
Department of Justice
9500 Pennsylvania Avenue
Washington, DC 20530
Telephone: (202) 514-2000
Email: Stanley.Woodward@usdoj.gov

Counsel for Plaintiff-Intervenor
THE UNITED STATES

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| CRUISE LINES INTERNATIONAL ASSOCIATION, INC., *et al.*, | |
| Plaintiffs, | |
| and | |
| UNITED STATES OF AMERICA, | Case No. 1:25-cv-00367-JAO-KJM |
| Proposed Plaintiff-Intervenor, | **MEMORANDUM IN SUPPORT OF MOTION TO INTERVENE** |
| v. | |
| GARY S. SUGANUMA, in his capacity as Director of Taxation for the State of Hawaii, *et al.*, | HEARING DATE: November 14, 2025 |
| Defendants. | |

## <u>Table of Contents</u>

Introduction and Background ................................................................1

Argument.................................................................................................3

    I.  The United States Should Be Permitted to Intervene as of Right..............3

        A.  The United States' Motion is Timely ..............................................4

        B.  The United States Has a Substantial Legal Interest in the Subject
Matter of This Case ...............................................................................6

        C.  The Disposition of this Case May Impede the United States'
Ability to Protect Its Interest ...............................................................11

        D.  The Existing Parties Cannot Protect the Interest of the United
States.....................................................................................................12

    II.  Alternatively, the United States Should Be Allowed to Intervene by
Permission.............................................................................................14

Conclusion ...........................................................................................15

## Table of Authorities

**Cases**

*Arizona v. United States*,
  567 U.S. 387 (2012)............................................................7

*Bridgeport & Jefferson Steamboat Co. v. Bridgeport Port Authority*,
  567 F.3d 79 (2d Cir. 2009) ...............................................8

*Brown v. Maryland*,
  2 U.S. (12 Wheat.) 419 (1827)..........................................8

*California ex rel. Lockyer v. United States*,
  450 F.3d 436 (9th Cir. 2006) ......................................7, 11

*Citizens for Balanced Use v. Montana Wilderness Ass'n*,
  647 F.3d 893 (9th Cir. 2011) ...................................... 12, 13

*City of Fresno v. Andrus*,
  622 F.2d 436 (9th Cir. 1980) ...........................................7

*City of Phila. v. New Jersey*,
  437 U.S. 617 (1988)...........................................................9

*Clyde Mallory Lines v. Alabama ex rel. State Docks Comm'n*,
  296 U.S. 261 (1935) ...................................................... 1, 10

*Cooley v. Bd. of Wardens of Port of Phila.*,
  53 U.S. 299 (1851)........................................................1, 9

*Ctr. for Biological Diversity v. Berg*,
  268 F.3d 810 (9th Cir. 2001) .........................................11

*Dep't of Emp. v. United States*,
  385 U.S. 355 (1966)........................................................14

*Driftless Area Land Conservancy v. Huebsch*,
  969 F.3d 742 (7th Cir. 2020) ...........................................2

*Forest Conservation Council v. United States Forest Serv.*,
  66 F.3d 1489 (9th Cir. 1995) ..................................... 5, 13

*Friends of Del Norte v. California Dep't of Transp.*,
  No. 3:18-cv-00129-JD, 2020 WL 4349811 (N.D. Cal. July 29, 2020) ................5

*Heaton v. Monogram Credit Card Bank of Ga.*,
  297 F.3d 416 (5th Cir. 2002) .................................. 2, 12, 13

iii

*Kalbers v. United States Dep't of Just.*,
   22 F.4th 816 (9th Cir. 2021) ............................................................3

*Michelin Tire Corp. v. Wages*,
   423 U.S. 276 (1976) ......................................................................9

*Nuesse v. Camp*,
   385 F.2d 694 (D.C. Cir. 1967) .......................................................7

*Polar Tankers, Inc. v. Valdez*,
   557 U.S. 1 (2009) .................................................................. 1, 10

*Sanitary Dist. of Chi. v. United States*,
   266 U.S. 405 (1925) ............................................................... 7, 15

*Sec. Ins. Co. of Hartford & Schipporeit, Inc.*,
   69 F.3d 1377 (7th Cir. 1995) .........................................................5

*Sierra Club v. EPA*,
   995 F.2d 1478 (9th Cir. 1993) ......................................................11

*Sierra Club v. Espy*,
   18 F.3d 1202 (5th Cir. 1994) .......................................................13

*Smith v. L.A. Unified Sch. Dist.*,
   830 F.3d 843 (9th Cir. 2016) .........................................................4

*Smith v. Marsh*,
   194 F.3d 1045 (9th Cir. 1999) .......................................................6

*Smith v. Turner*,
   48 U.S. 283 (1849) ......................................................................8

*Sweet v. Cardona*,
   121 F.4th 32 (9th Cir. 2024) ..........................................................3

*The Minnesota Rate Cases*,
   230 U.S. 352 (1913) ......................................................................8

*Trbovich v. United Mine Workers of Am.*,
   404 U.S. 528 (1972) ....................................................................12

*United States ex rel. McGough v. Covington Techs. Co.*,
   967 F.2d 1391 (9th Cir. 1992) .......................................................5

*United States v. Alisal Water Corp.*,
   370 F.3d 915 (9th Cir. 2004) ................................................... 4, 10

*United States v. City of L.A.*,
   288 F.3d 391 (9th Cir. 2002) .........................................................4

iv

*United States v. Jantran, Inc.*,
   782 F.3d 1177 (10th Cir. 1967) ...................................................... 3, 10
*United States v. Oregon*,
   745 F.2d 550 (9th Cir. 1990) ...............................................................5
*W. Watersheds Project v. Haaland*,
   22 F.4th 828 (9th Cir. 2022) ..............................................................13
*Walpert v. Solar Integrated Roofing Corp.*,
   No. 24-cv-0041, 2025 WL 863474 (S.D. Cal. Mar. 19, 2025) .............................4
*Wilderness Soc'y v. United States Forest Serv.*,
   630 F.3d 1173 (9th Cir. 2011) ............................................................4

## Constitutional Provisions and Statutes

33 U.S.C. § 5(b) ...............................................................................2
U.S. Const. art. I, § 10, cl. 3 .............................................................2
U.S. Const. art. VI, para. 2 ...............................................................7

## Other Authorities

2 Joseph Story, *Commentaries on the Constitution* (1833) .......................................8
3B J. Moore, Federal Practice § 24.09–1(4) (1969) ................................................12
Erik M. Jensen, *Quirky Constitutional Provisions Matter: The Tonnage Clause,*
   *Polar Tankers, and State Taxation of Commerce*,
   18 Geo. Mason L. Rev. 669 (2011) .......................................................9
Off. of the Governor, *Historic Green Fee Launched*
   *to Combat Climate Change in Hawai'i* (June 2, 2025) ........................................1
The Federalist No. 44 (James Madison) .............................................1, 8

## Rules

Fed. R. Civ. P. 24(a)(2) .................................................................... 3, 14
Fed. R. Civ. P. 24(b)(1)(B) ..............................................................14
Fed. R. Civ. P. 24(b)(2) .................................................................14
Fed. R. Civ. P. 24(b)(3) .................................................................14

## INTRODUCTION AND BACKGROUND[1]

On May 27, 2025, Hawaii Governor Joshua B. Green signed Act 96 into law. Off. of the Governor, *Historic Green Fee Launched to Combat Climate Change in Hawai'i* (June 2, 2025), https://perma.cc/4QJR-7LGR.  Governor Green boasted Act 96 is "a groundbreaking move for climate action," "establishing the nation's first climate impact fee, known as the 'Green Fee,'" which is expected to "to generate around $100 million annually" to "fund diverse projects focusing on environmental stewardship, climate resilience and sustainable tourism." *Id.*

Differential State taxation regimes like Hawaii's Act 96 are exactly what the Framers sought to avoid when they drafted the Constitution's Tonnage Clause.  The Tonnage Clause "fall[s] within reasonings which are either so obvious, or have been so fully developed, that they may be passed over without remark." The Federalist No. 44 (James Madison).  And those "obvious" reasonings no doubt include States' taxation of vessels from other States and interference with interstate and foreign commerce.  *Clyde Mallory Lines v. Alabama ex rel. State Docks Comm'n*, 296 U.S. 261, 265 (1935) (citing *Cooley v. Bd. of Wardens of Port of Phila.*, 53 U.S. 299, 314 (1851)); *see Polar Tankers, Inc. v. Valdez*, 557 U.S. 1, 8 (2009) (quoting *Clyde*

---

[1] *See Sw. Ctr. For Biological Diversity v. Berg*, 268 F.3d 810, 819 (9th Cir. 2001) ("Courts are to take all well-pleaded, nonconclusory allegations in the motion to intervene, the proposed complaint or answer in intervention, and declarations supporting the motion as true absent sham, frivolity or other objections.").

1

*Mallory Lines*, 296 U.S. at 265–66) (holding that city's tax on large vessels docking at city's ports violated the Tonnage Clause).

If the Tonnage Clause were not clear enough that "No State shall, without the Consent of Congress, lay any Duty of Tonnage," U.S. Const. art. I, § 10, cl. 3, Congress further clarified in the Rivers and Harbors Appropriations Act of 1884 (Rivers and Harbors Act or RHA) that "No taxes, tolls, operating charges, fees, or any other impositions whatever shall be levied upon or collected from any vessel or other water craft, or from its passengers or crew, by any non-Federal interest, if the vessel or water craft is operating on any navigable waters subject to the authority of the United States, or under the right to freedom of navigation on those waters," subject to exceptions that do not apply here. 33 U.S.C. § 5(b).

The United States is uniquely positioned to protect its legal and equitable interests at stake in this matter. Whereas private parties, like the existing plaintiffs here, may rightfully sue to vindicate their own economic and speech interests, the United States has "obligations . . . to the general public" to ensure compliance with the Constitution and the supremacy of Federal laws. *See Driftless Area Land Conservancy v. Huebsch*, 969 F.3d 742, 748 (7th Cir. 2020) (permitting intervention as of right and distinguishing between "private investment" and "obligations to the general public"); *Heaton v. Monogram Credit Card Bank of Ga.*, 297 F.3d 416, 485 (5th Cir. 2002) ("Government agencies . . . must represent the public interest, not

2

just the economic interests of one industry.").  This is especially true when the statute in question is the RHA.  *See United States v. Jantran, Inc.*, 782 F.3d 1177, 1178–79 (10th Cir. 1967) (explaining that a related "Rivers and Harbors Act was . . . in large part . . . designed to establish a national legal framework that would help regulate harm to the nation's waterways").

For these reasons and because the United States can show that it is entitled to intervention under Rule 24, the Court should grant this motion.

## ARGUMENT

### I.    The United States Should Be Permitted to Intervene as of Right

A court must permit intervention on timely application by anyone who "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest."  Fed. R. Civ. P. 24(a)(2).  A movant is entitled to intervene as of right when "(1) its motion is timely; (2) it has a significantly protectable interest relating to the subject of the action; (3) it is so situated that the disposition of the action may as a practical matter impair or impede its ability to protect that interest; and (4) its interest is inadequately represented by the parties to the action."  *Sweet v. Cardona*, 121 F.4th 32, 47–48 (9th Cir. 2024) (citing *Kalbers v. U.S. Dep't of Just.*, 22 F.4th 816, 822 (9th Cir. 2021)).  When evaluating these requirements, courts

"normally follow 'practical and equitable considerations,'" construing the Rule

"'broadly in favor of proposed intervenors.'" *Wilderness Soc'y v. U.S. Forest Serv.*,

630 F.3d 1173, 1179 (9th Cir. 2011) (en banc) (quoting *United States v. City of L.A.*,

288 F.3d 391, 397 (9th Cir. 2002)).

The United States meets each requirement for intervention as of right.

### A. <u>The United States' Motion is Timely</u>

The timeliness of an application for intervention is "determined by the totality

of the circumstances facing would-be intervenors, with a focus on three primary

factors: '(1) the stage of the proceeding at which an applicant seeks to intervene;

(2) the prejudice to the other parties; and (3) the reason for and length of the delay.'"

*Smith v. L.A. Unified Sch. Dist.*, 830 F.3d 843, 854 (9th Cir. 2016) (quoting *United

States v. Alisal Water Corp.*, 370 F.3d 915, 921 (9th Cir. 2004)).

First, the United States is seeking to intervene at an early stage of this

proceeding.  Plaintiffs filed their complaint on August 27, 2025, ECF No. 1; no

discovery or significant proceedings have taken place; and this Court has not yet

issued any substantive rulings.  District courts routinely grant motions to intervene

in cases pending far longer when no substantive rulings have been made. *See, e.g.*,

*Walpert v. Solar Integrated Roofing Corp.*, No. 24-cv-0041, 2025 WL 863474, at

*2 (S.D. Cal. Mar. 19, 2025) (holding motion was timely filed when lawsuit had

been pending for over a year and discovery had not yet taken place); *Friends of Del*

*Norte v. Cal. Dep't of Transp.*, No. 3:18-cv-00129-JD, 2020 WL 4349811, at
*1 (N.D. Cal. July 29, 2020) (holding motion was timely filed when lawsuit had
been pending for over a year and a half because it preceded "any hearing or rulings
on substantive matters").

Second, intervention here will not prejudice the other parties. The United
States seeks to join the suit before the case has meaningfully progressed, and
Defendants' "position following intervention [would be] essentially the same as it
would have been had the government intervened earlier." *United States ex rel.
McGough v. Covington Techs. Co.*, 967 F.2d 1391, 1395 (9th Cir. 1992) (citing
*United States v. Oregon*, 745 F.2d 550, 553 (9th Cir. 1990)). At the same time, if
intervention is denied, the United States would likely file a separate action
addressing the same legal issues, creating the risk of differing judgments and
imposing duplicative burdens on the Court and Defendants. *See City of L.A.*, 288
F.3d at 398 (quoting *Forest Conservation Council v. U.S. Forest Serv.*, 66 F.3d 1489,
1496 n.8 (9th Cir. 1995), *abrogated on other grounds by Wilderness Soc'y*, 630 F.3d
at 1180) ("By allowing parties with a *practical* interest in the outcome of a particular
case to intervene, we often prevent or simplify future litigation involving related
issues. . . ."); *see also Sec. Ins. Co. of Hartford & Schipporeit, Inc.*, 69 F.3d 1377,
1381 (7th Cir. 1995) (finding intervention appropriate when "denial of intervention

would in all likelihood have created additional litigation and the possibility of conflicting results").

Third, there has been no undue delay. Upon discovering this case, the United States promptly assessed the nature and extent of the Federal interest at stake and determined that its interests would not be adequately protected by the existing parties. *See L.A. Unified Sch. Dist.*, 830 F.3d at 854 (quoting *Smith v. Marsh*, 194 F.3d 1045 (9th Cir. 1999)) ("[T]he crucial date for assessing the timeliness of a motion to intervene is when proposed intervenors should have been aware that their interests would not be adequately protected by the existing parties."). However, during the lapse in appropriations, Department of Justice attorneys were limited in the matters they could work on, including this one. As a Senate confirmed Presidential Appointee, the undersigned was not. Accordingly, the undersigned submits this motion with the expectation that given that the lapse has now ended, the Environment and Natural Resources Division will fully participate in future proceedings.

The United States' motion to intervene is therefore timely.

## B. The United States Has a Substantial Legal Interest in the Subject Matter of This Case

Because "a liberal policy in favor of intervention serves both efficient resolution of issues and broadened access to the courts," the Ninth Circuit has

interpreted Rule 24(a)(2)'s interest requirement loosely. *Wilderness Soc'y*, 630 F.3d at 1179 (quoting *City of L.A.*, 288 F.3d at 397–98). "Rule 24(a)(2) does not require a specific legal or equitable interest." *Id.* (quoting *City of Fresno v. Andrus*, 622 F.2d 436, 438 (9th Cir. 1980)). Instead, "the 'interest' test is primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process." *Id.* (quoting *Nuesse v. Camp*, 385 F.2d 694, 700 (D.C. Cir. 1967)). Thus, a prospective intervenor "has a sufficient interest for intervention purposes if it will suffer a practical impairment of its interests as a result of the pending litigation." *Id.* (quoting *California ex rel. Lockyer v. United States*, 450 F.3d 436, 441 (9th Cir. 2006)).

The United States has a strong interest in ensuring the primacy of Federal law. *See* U.S. Const. art. VI, para. 2 ("This Constitution, and the Laws of the United States . . . shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding."). A State invasion of a regulatory domain constitutionally reserved for the Federal Government, presents a strong legal interest in defending the preemptive scope of Federal law. *See Arizona v. United States*, 567 U.S. 387 (2012) (emphasizing that adherence to the preemptive effect of Federal law is essential to maintaining the Federal Government's control over enforcement); *see*

7

*also Sanitary Dist. of Chi. v. United States*, 266 U.S. 405 (1925) (recognizing the Federal Government's interest in enforcing constitutional provisions).

Here, Act 96 violates the Tonnage Clause and the Rivers and Harbors Act, threatening the delicate balance of Federal and State power that the Framers enshrined in the Constitution. *See Bridgeport & Jefferson Steamboat Co. v. Bridgeport Port Authority*, 567 F.3d 79, 88 (2d Cir. 2009) (holding passenger fee violated Tonnage Clause). Like the Commerce Clause, the Tonnage Clause reflects the Founder's desire to protect federal control over commerce. *See Brown v. Maryland*, 2 U.S. (12 Wheat.) 419, 439 (1827) (noting that the Founders decided, "the interest of all would be best promoted by placing that whole subject under the control of Congress," and observing that to proceed otherwise would risk, "the power [being] so exercised as to disturb that equality among the States"). The Federal interest in maintaining uniformity in vessel taxation across all States was deemed so obvious as to warrant little debate. *See The Minnesota Rate Cases*, 230 U.S. 352, 399 (1913) (recognizing Congress's "exclusive power" over "those subjects" of interstate commerce "which require a general system or uniformity of regulation"); *see also* The Federalist No. 44 (James Madison) (explaining that the Tonnage Clause "fall[s] within reasonings which are either so obvious, or have been so fully developed, that they may be passed over without remark"); 2 Joseph Story, *Commentaries on the Constitution* § 1013 (1833) (explaining the "wisdom and

policy in restraining the states themselves from" exercising the "power of taxation unequally" and "injuriously to the interests of each other"). But, to state the obvious, one goal was to ensure the uniformity of regulation by guarding against discriminatory or conflicting State regulations, thus knitting together and protecting the Nation as a whole. *Cooley v. Bd. of Wardens of Port of Phila.*, 53 U.S. (12 How.) 299, 319 (1851) (holding the Commerce Clause permits Congress to legislate in fields "imperatively demanding a single uniform rule, operating equally on the commerce of the United States in every port"); *see Michelin Tire Corp. v. Wages*, 423 U.S. 276, 285 (1976) ("[H]armony among the States might be disturbed unless seaboard States, with their crucial ports of entry, were prohibited from levying taxes on citizens of other States by taxing goods merely flowing through their ports to the other States not situated as favorably geographically."); *City of Phila. v. New Jersey*, 437 U.S. 617, 624 (1988) ("[W]here simple economic protectionism is effected by state legislation, a virtually *per se* rule of invalidity has been erected."). "[A]s powerful as market forces can be, the Founders were unwilling to rely only on the laws of economics to protect against abusive state taxation" like that embodied by Act 96. Erik M. Jensen, *Quirky Constitutional Provisions Matter: The Tonnage Clause, Polar Tankers, and State Taxation of Commerce*, 18 Geo. Mason L. Rev. 669, 689–90 (2011).

Moreover, Act 96 embodies the Founders' fear that States would sacrifice their own economic interests for some other purpose. Indeed, nearly 100 years ago, the Supreme Court recognized the necessity of the Tonnage Clause in ensuring the effectiveness of the Import-Export Clause: "If the states had been left free to tax the privilege of access by vessels to their harbors the prohibition against duties on imports and exports could have been nullified by taxing the vessels transporting the merchandise." *Clyde Mallory Lines v. Alabama ex rel. State Docks Commission*, 296 U.S. 261, 265 (1935); *see also Polar Tankers*, 557 U.S. at 7 (holding the purpose of the Tonnage Clause is to ensure States could not nullify the prohibition against duties on imports and exports or obtain geographical vessel-related tax advantages).

Similarly, Congress enacted the RHA to "establish a national legal framework that would help regulate harm to the nation's waterways," *United States v. Jantran, Inc.*, 782 F.3d 1177, 1178–79 (10th Cir. 1967) (discussing the related RHA of 1899), and Act 96 impedes that framework. The RHA exists precisely to prevent the taxation scheme Hawaii has adopted by ensuring that vessel taxation adheres to uniform, federally established rules. *Jantran, Inc.*, 782 F.3d at 1178–79. The United States thus has a legal and equitable interest in defending that uniformity, preventing the balkanization of maritime taxation.

Finally, the United States' interest is neither "generalized" nor "undifferentiated." *See United States v. Alisal Water Corp.*, 370 F.3d 915, 920

(9th Cir. 2004) (holding that the movant's interest in the prospective collectability of a debt was too generalized and undifferentiated to justify intervention). Instead, the United States would assert the specific, legally cognizable interests of the Federal sovereign tasked with enforcing constitutional limits on State power, ensuring the coherent operation of a comprehensive regulatory scheme throughout our Nation. No other entity possesses those unique constitutional and statutory responsibilities.

### C. The Disposition of this Case May Impede the United States' Ability to Protect Its Interest

To show entitlement to intervention as of right, a movant must demonstrate that it is "so situated that the disposition of the action may as a practical matter impair or impede its ability to protect that interest." *Lockyer*, 450 F.3d at 440 (quoting *Sierra Club v. EPA*, 995 F.2d 1478, 1481 (9th Cir. 1993)). And when an intervenor has a "significant protectable interest," there is "little difficulty concluding that the disposition of [the] case may, as a practical matter, affect it*." Id.* at 442 (quoting *Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 822 (9th Cir. 2001)). This is because the Ninth Circuit "follow[s] the guidance of Rule 24 advisory committee notes that state 'if an absentee would be substantially affected in a practical sense by the determination made in an action, he should, as a general rule, be entitled to intervene.'" *Id.* (quoting *Berg*, 268 F.3d at 822).

11

Here, a judgment for Defendants could result in binding precedent that would impair the United States's interests in multiple respects. Upholding Act 96 would endorse Hawaii's enforcement of a taxation law that conflicts with the Tonnage Clause and RHA. Such a judgment would harm the United States' sovereign interest in ensuring States' compliance with the Constitution, the supremacy of Federal law, and the uniform application of a Federal statutory scheme. *Heaton*, 297 F.3d at 423–24. Moreover, a judgment in favor of Act 96 may embolden other States to enact similar taxes, further undermining Federal maritime policy, and spurring more costly litigation at taxpayers' expense.

### D. <u>The Existing Parties Cannot Protect the Interest of the United States</u>

The final requirement for intervention as of right is a showing that the "existing parties may not adequately represent the applicant's interest." *Citizens for Balanced Use v. Montana Wilderness Ass'n*, 647 F.3d 893, 898 (9th Cir. 2011). This requirement "is satisfied if the applicant shows that representation of his interest 'may be' inadequate[,] and the burden of making that showing should be treated as minimal." *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n. 10 (1972) (quoting 3B J. Moore, Federal Practice § 24.09–1(4) (1969)); *see also Citizens for Balanced Use*, 647 F.3d at 900 ("We stress that intervention of right does not require an absolute certainty that a party's interest will be impaired or that existing parties will not adequately represent its interests."). In evaluating whether an applicant can

12

demonstrate representational inadequacy, courts consider whether (1) "the interest of a present party is such that it will undoubtedly make all of a proposed intervenor's arguments"; (2) "the present party is capable and willing to make such arguments"; and (3) "a proposed intervenor would offer any necessary elements to the proceeding that other parties would neglect." *W. Watersheds Project v. Haaland*, 22 F.4th 828, 840–41 (9th Cir. 2022) (quoting *Citizens for Balanced Use*, 647 F.3d at 898).

Plaintiffs do not and cannot make all of the United States' arguments. Plaintiffs are private entities, with interests grounded in economic and individual free-speech rights. *See* ECF No. 28-1 at 22–24 (citing reduction in demand, surcharges, and loss of revenue as potential harms); *id.* at 4 (discussing deprivation of First Amendment freedoms as irreparable harm). In contrast, the United States' interests are rooted in its "obligations . . . to the general public" through its role in enforcing compliance with the Constitution, maintaining the supremacy of Federal law, and administrating and enforcing the RHA's prohibition on State taxation of vessels on navigable waters. *See Forest Conservation Council*, 66 F.3d at 1499 (quoting *Sierra Club v. Espy*, 18 F.3d 1202, 1208 (5th Cir. 1994)) ("[T]he government must present the broad public interest, not just the economic concerns of the timber industry."); *Heaton*, 297 F.3d at 425 ("Government agencies . . . must represent the public interest, not just the economic interests of one industry.").

Furthermore, Defendants argue that Plaintiffs may not assert their Tonnage Clause and RHA claims. *See* ECF No. 53 at 4–9 (arguing the Tax Injunction Act bars Plaintiffs' claims); *id.* at 11–18 (arguing Plaintiffs lack standing). Whether or not the Court finds those arguments meritorious, the very fact that Defendants raise them confirms that the United States' protectable interests are not adequately represented by the present parties. *See Dep't of Emp. v. United States*, 385 U.S. 355, 358 (1966) ("[W]e conclude, in accord with an unbroken line of authority, and convincing evidence of legislative purpose, that § 1341 does not act as a restriction upon suits by the United States to protect itself and its instrumentalities from unconstitutional state exactions." (citations omitted)).

## II.    Alternatively, the United States Should Be Allowed to Intervene by Permission

The Court may also grant the United States leave to permissively intervene. Permissive intervention is allowed on timely motion by a government officer or agency where "a party's claim . . . is based on: (A) a statute . . . administered by the officer or agency; or (B) any regulation . . . issued or made under the statute." Fed. R. Civ. P. 24(b)(2). The Court may likewise permit intervention by anyone who has "a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). And "[i]n exercising its discretion," the court

"must consider whether intervention will unduly delay or prejudice the adjudication of the original parties' rights."  Fed. R. Civ. P. 24(b)(3).

The same substantial interests that give the United States a right to intervene in this case under Rule 24(a)(2) support permissive intervention under Rule 24(b). First, the United States' Motion to Intervene is timely for the reasons detailed in Section I(A), *supra*.  Second, if required to file a separate action to protect the United States' interests, *see* Section I(D), *supra*, the United States would assert, at a minimum, that Act 96 violates the Tonnage Clause and RHA.  *See* United States' Proposed Intervenor Complaint.  These assertions would require the Court to resolve questions of fact and law in common with questions raised by the existing parties. Third, as discussed in Section I(B), *supra*, the Attorney General "by virtue of [her] office may bring [a] proceeding" to "remove obstruction to interstate and foreign commerce."  *See Sanitary Dist. of Chi.*, 266 U.S. at 425–26.  Finally, because this case is at an early stage in which discovery has not yet commenced and no dispositive order has yet been issued, the United States' intervention will not cause undue delay or prejudice.

## **CONCLUSION**

For the foregoing reasons, the United States respectfully requests that the Court grant the United States' Motion to Intervene.

[SIGNATURE BLOCK ON NEXT PAGE]

15

DATED: November 13, 2025          Respectfully submitted,

_/s/ Stanley E. Woodward, Jr._
STANLEY E. WOODWARD, JR.
Associate Attorney General
U.S. Department of Justice
950 Pennsylvania Avenue NW
Washington, DC 20530

*Counsel for Plaintiff-Intervenor*
*United States of America*