STANLEY E. WOODWARD, JR.
*Associate Attorney General*
ADAM R.F. GUSTAFSON
*Principal Deputy Assistant Attorney General*
BRADLEY CRAIGMYLE
*Deputy Assistant Attorney General*
ELIAS L. QUINN
*Senior Attorney*
Environment and Natural Resources Division
U.S. Department of Justice
950 Pennsylvania Ave. NW
Washington, D.C. 20530
Telephone: (202) 532-3150
Email: bradley.craigmyle@usdoj.gov

Counsel for Plaintiff-Intervenor
THE UNITED STATES OF AMERICA

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAII**

| | |
|---|---|
| CRUISE LINES INTERNATIONAL ASSOCIATION, INC., *et al.*, <br><br>　　　　Plaintiffs, <br><br>and <br><br>UNITED STATES OF AMERICA, <br><br>　　　　Plaintiff-Intervenor, <br><br>　v. <br><br>GARY S. SUGANUMA, in his capacity as Director of Taxation for the State of Hawaii, *et al.*, <br><br>　　　　Defendants. | Civil No. 1:25-cv-00367-JAO-KJM <br><br>**INTERVENOR COMPLAINT** <br><br>Judge: Hon. Jill A. Otake |

Plaintiff, the United States of America, brings this civil action for declaratory and injunctive relief, alleging as follows:

**INTRODUCTION**

1. The United States brings this action to preserve the integrity of Federal law. Although States maintain some power to raise revenue through charges and fees, they may do so only in compliance with Federal law. Hawaii has not. Instead, through its new law, Act 96, Hawaii seeks to impose a "Green Fee" tax on out-of-state cruise lines and, by extension, the out-of-state American citizens they bring to the beautiful State. Worse, Act 96 preys upon American businesses and tourists as means to raise roughly $100 million annually. Hawaii unabashedly boasts that this revenue is not for the purpose of paying for services actually provided to incoming cruise ships or their passengers, but for funding climate change initiatives in Hawaii. This scheme to extort American citizens and businesses solely to benefit Hawaii flies in the face of Federal law twice over, conflicting both with the Tonnage Clause of the U.S. Constitution and the Rivers and Harbors Appropriation Act of 1884 (the Rivers and Harbors Act or RHA). *See* U.S. Const. art. I, § 10, cl. 3; 33 U.S.C. § 5(b).

2. Act 96, set to take effect on January 1, 2026, is the first law of its kind in our Nation. Act 96 would levy a new 11% surcharge on the gross fares paid by a cruise ship's passengers, prorated by the portion of its voyage spent docked in

Hawaii's ports. Act 96 also authorizes Hawaii counties to collect additional 3% surcharges, bringing the total imposition to 14% of the prorated fares—adding up to hundreds of millions of dollars in new fees over the next decade on out-of-state cruise lines and, by extension, their American citizen customers, seeking to visit one of our Nation's most beautiful lands. But Federal law preempts both aspects of Act 96.

3. The Constitution's Tonnage Clause bars States from imposing any "charge for the privilege of entering, trading in, or lying in a port." *Polar Tankers, Inc. v. City of Valdez*, 557 U.S. 1, 8 (2009) (quoting *Clyde Mallory Lines v. Alabama ex rel. State Docks Comm'n*, 296 U.S. 261, 265–66 (1935)); *see* U.S. Const. art. I, § 10, cl. 3. Yet Act 96 does just that, imposing an impermissible charge that requires cruise ships to make enormous payments based on their "days docked at any port in the State." Act 96 § 5.1. Such blatant violation of the Tonnage Clause is reason alone to enjoin enforcement of Act 96.

4. Act 96 also violates Federal statutory limits on the fees that States may impose for the use of navigable waters. Under the Rivers and Harbors Act, Congress bars States from charging "taxes, tolls, . . . or any other impositions whatever" on vessels "operating on any navigable waters subject to the authority of the United States," subject to certain narrowly drawn exceptions. 33 U.S.C. § 5(b). Act 96 does not fit within any of section 5(b)'s exceptions, so the RHA preempts

2

its application to cruise ships, rendering enforcement impermissible under the Supremacy Clause.

5. This Court must act swiftly to preserve the supremacy of Federal law, ending Hawaii's regime that openly flouts both our Nation's Constitution and Federal law for its own political gain. If Act 96 is not preempted, more States will follow suit, creating a balkanization of maritime commerce to disguise State's individualized environmental regimes.

6. Thus, this Court should declare Act 96's cruise-ship-related provisions unconstitutional and enjoin their enforcement.

## JURISDICTION AND VENUE

7. The Court has jurisdiction over this action under 28 U.S.C. §§ 1331 and 1345.

8. Venue is proper in this jurisdiction because Defendants reside within the District of Hawaii and acts forming the basis of this Complaint occurred within this district. *See* 28 U.S.C. § 1391(b).

9. The Court has the authority to provide the requested relief under 28 U.S.C. §§ 2201 and 2202, and its inherent equitable powers.

## PARTIES

10. Plaintiff, the United States of America, safeguards the supremacy of Federal laws and ensures States do not violate the United States Constitution.

11. Defendant Gary S. Suganuma is the Director of the Hawaii Department of Taxation. The Unites States sues Defendant Suganuma in his official capacity.

12. Defendant Hawaii Department of Taxation maintains the responsibility of collecting "all taxes imposed under Title 14" of Hawaii law (including surcharges imposed by Act 96), with the exception of those "collected by county treasurers." Haw. Rev. Stat. § 231-3(2).

13. Defendant County of Kauai is a county in Hawaii.

14. Defendant Chelsie Sakai is the County Finance Director for the County of Kauai. The United States sues Defendant Sakai in her official capacity.

15. Defendant City and County of Honolulu are political subdivisions of Hawaii.

16. Defendant Andrew T. Kawano is the Director of the Department of Budget and Fiscal Services for the City and County of Honolulu. The United States sues Defendant Kawano in his official capacity.

17. Defendant County of Maui is a county in Hawaii.

18. Defendant Marcy Martin is the Director of the Department of Finance for the County of Maui. The United States sues Defendant Martin in her official capacity.

19. Defendant County of Hawaii is a county in Hawaii.

20. Defendant Diane Nakagawa is the Director of the Department of Finance for the County of Hawaii. The United States sues Defendant Nakagawa in her official capacity.

## BACKGROUND

### The Tonnage Clause

21. Seeking to preserve uniformity and promote the flourishing of commerce between the States, our Framers restricted the power of States from laying a duty of tonnage without Congressional consent. Under the Tonnage Clause, "No State shall, without the Consent of Congress, lay any Duty of Tonnage." U.S. Const. art. I, § 10, cl. 3.

22. Such a restraint on the States is not arbitrary, as the Clause "fall[s] within reasonings which are either so obvious, or have been so fully developed, that they may be passed over without remark." The Federalist No. 44 (James Madison). Those "obvious" reasonings include States' taxation of vessels from other States, which would interfere with interstate and foreign commerce. *Clyde Mallory Lines*, 296 U.S. at 264–65; *see also* 2 Joseph Story, *Commentaries on the Constitution* § 1016 (1833) (explaining the "wisdom and policy in restraining the states themselves from" exercising the "power of taxation unequally" and "injuriously to the interests of each other").

23. Thus, for over a century, the Supreme Court has explained the Tonnage Clause bars States from imposing any "charge for the privilege of entering, trading in, or lying in a port." *Polar Tankers, Inc. v. City of Valdez*, 557 U.S. 1, 8 (2009) (quoting *Clyde Mallory Lines*, 296 U.S. at 265–66); *see also* Samuel Freeman Miller, *Lectures on the Constitution of the United States* 253 (1891) ("The meaning of [the Tonnage Clause], as may be gathered from the numerous decisions, . . . undoubtedly is, that vessels coming from abroad, or engaged in navigation among the States, or even if plying entirely within the boundaries of and owned by citizens of a single State, shall not be taxed, as vessels, for the privilege of navigating the inland waters of the country, or coming into any of its ports.").

24. Put simply, our Constitution's prohibition on laying a duty of tonnage includes not only a prohibition on duties according to a vessel's tons of carrying capacity, but also "all taxes and duties regardless of their name or form, . . . which operate to impose a charge for the privilege of entering, trading in, or lying in a port." *Clyde Mallory Lines*, 296 U.S. at 265–66; *see also S.S. Co. v. Portwardens*, 73 U.S. (6 Wall.) 31, 35 (1867) (holding that the Tonnage Clause prohibits "not only a pro rata tax . . . , but any duty on the ship").

25. So although States may collect fees for actual services provided, *Polar Tankers*, 557 U.S. at 10, they cannot "tax the privilege of access by vessels to their harbors," *Clyde Mallory Lines*, 296 U.S. at 265.

6

## The Rivers and Harbors Act

26. Under the RHA, Congress prohibited non-Federal entities from imposing fees or taxes on any vessels navigating waters belonging to the United States.

27. Specifically, Congress mandated that "No taxes, tolls, operating charges, fees, or any other impositions whatever shall be levied upon or collected from any vessel or other water craft, or from its passengers or crew, by any non-Federal interest, if the vessel or water craft is operating on any navigable waters subject to the authority of the United States, or under the right to freedom of navigation on those waters " 33 U.S.C. § 5(b).

28. The only exceptions to this broad prohibition are for 1) port or harbor fees under 33 U.S.C. § 2236; 2) "reasonable fees charged on a fair and equitable basis that" "are used solely to pay the cost of a service to the vessel or water craft," "enhance the safety and efficiency of interstate and foreign commerce," and "do not impose more than a small burden on interstate or foreign commerce"; 3) or "property taxes on vessels or watercraft, other than vessels or watercraft that are primarily engaged in foreign commerce if those taxes are permissible under the United States Constitution." 33 U.S.C. § 5(b).

## Supremacy Clause and Preemption Principles

29. The Supremacy Clause of the Constitution mandates that "[t]his Constitution, and the Laws of the United States which shall be made in Pursuance

7

thereof . . . shall be the supreme Law of the Land  any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2.

30. Although, "in exercising the power of regulating their own purely internal affairs, whether of trading or police, the States may sometimes enact laws, the validity of which depends on their interfering with, and being contrary to, an act of Congress passed in pursuance of the constitution." *Gibbons v. Ogden*, 22 U.S. (9 Wheat.) 1, 209–10 (1824); *see also* The Federalist No. 33 (Alexander Hamilton) (explaining acts beyond constitutional powers are "invasions of the residuary authorities of the smaller societies," and are not given supreme effect).

31. Put simply, if a state law is contrary to an act of Congress or our Nation's Constitution, the state law must yield. *See Mut. Pharm. Co. v. Bartlett*, 570 U.S. 472, 479–480 (2013) ("[I]t has long been settled that state laws that conflict with federal laws are 'without effect.'" (quoting *Maryland v. Louisiana*, 451 U.S. 725, 746 (1981)).

### The Unconstitutional Hawaii Statute: Act 96

32. On May 27, 2025, Hawaii Governor Joshua B. Green signed Act 96 into law. Governor Green has touted Act 96 as "a groundbreaking move for climate

action" that "establish[ed] the nation's first climate impact fee, known as the 'Green Fee.'"[1]

33. The law imposes that so-called "Green Fee" on businesses that cater to out-of-state visitors and is "[e]xpected to generate around $100 million annually" to "fund diverse projects focusing on environmental stewardship, climate resilience and sustainable tourism."[2]

34. Unless Act 96 is enjoined, it will disrupt uniformity of vessel taxation by conditioning cruise-ship access to its ports on surcharges in the amounts of millions of dollars and additional registration fees.

A. Charges for the Privilege of Docketing in Hawaii Ports

35. As relevant here, Act 96 amends Chapter 237D of the Hawaii Revised Statutes to provide that, beginning on January 1, 2026, Hawaii will impose a surcharge of "eleven percent . . . on all gross rental proceeds derived from cruise fares prorated by the percentage of days docked at any port in the State in comparison to the total number of days of the voyage." Act 96 § 5.1.

36. Under Act 96, the obligation to make payments rests on the "operator[s] of . . . cruise ship[s]," not individual passengers. *Id.* State officials have estimated,

---

[1] Off. of the Governor, *Historic Green Fee Launched to Combat Climate Change in Hawaiʻi* (June 2, 2025), https://perma.cc/4QJR-7LGR.

[2] *Id.*

however, that "99%" of the surcharges will be passed along to passengers in the form of higher prices.[3]

37. Act 96 also authorizes individual Hawaii counties to levy additional surcharges on cruise ships calling at Hawaii ports. Specifically, under Hawaii Revised Statutes § 237D-2.5, Hawaii counties may levy their own surcharges of up to 3% on the "gross rental proceeds" covered by Chapter 237D. By subjecting cruise ships to the payment requirements of Chapter 237D, Act 96 thus permits Hawaii counties to impose additional 3% surcharges on cruise ships, above and beyond the 11% collected by the State, for the privilege of docking at ports in those counties.

38. The counties of Hawaii, Kauai, and Maui each have imposed the maximum 3% surcharges permitted by Hawaii law. See Haw. Rev. Stat. § 237D-2.5.[4] If Act 96 is permitted to go into effect, those additional surcharges will be levied on cruise ships visiting ports in those counties beginning on January 1, 2026.

---

[3] *See* Christine Hitt, *Why Hawaii Just Got More Expensive for Visitors*, S.F. Gate (July 2, 2025), https://perma.cc/5KVB-DJE7.

[4] *See* Haw. Cnty. Code § 2-259 ("[A] three percent transient accommodations tax is established on all gross rental, gross rental proceeds, and fair market rental value considered taxable under the definitions of section 237D-1, Hawaii Revised Statutes."); Kauai Cnty. Code § 5-4.1 (same); Maui Cnty. Code § 3.47.010 (same).

39. The City and County of Honolulu has "established a 3 percent transient accommodations tax on all gross rental, gross rental proceeds, and fair market rental value that is taxable under HRS Chapter 237D on property in the city."[5] On information and belief, the City and County of Honolulu intends to assess that surcharge against cruise ships that dock in Honolulu beginning on January 1, 2026.

40. The counties of Kauai, Honolulu, Maui, and Hawaii are home to all ports routinely visited by cruise ships in the State of Hawaii. Between the 11% surcharge levied by the State and the 3% state-authorized surcharges levied by the counties, cruise-ship operators will be required to pay an effective 14% prorated portion of each passenger's gross fare for the privilege of visiting ports in Hawaii.

B. Registration and Fee Requirements

41. Act 96 imposes additional registration and registration-fee requirements on cruise-ship operators.

42. Specifically, section 237D-4 requires that entities subject to surcharges under Chapter 237D "register with the director the name and address of each place of business within the State subject to this chapter," and "make a one-time payment" of "$15 for each registration for transient accommodations consisting of six or more units." Haw. Rev. Stat. § 237D-4(a).

---

[5] Rev. Ord. Hon. § 8A-1.1.

43. To the knowledge of the United States, Hawaii provides no administrative or judicial mechanism through which a cruise-ship operator can challenge or recover registration fees after the registration fees are paid.

44. So beginning on January 1, 2026, a cruise-ship operator's cruise ships will not be permitted to lawfully dock in Hawaii unless the cruise-ship operator pays the required registration fees, ultimately funding Hawaii's "green" climate change initiatives.

C. <u>Filing Requirements</u>

45. Act 96 will require cruise-ship operators to make payments to the Department of Taxation on a monthly basis. See Haw. Rev. Stat. § 237D-6. Cruise-ship operators also will be required to make monthly payments directed to each of the four counties that have imposed additional 3% surcharge under Chapter 237D.[6] Act 96 thus will require up to five separate payments and associated filings for each month that a cruise-ship operator's vessels visit Hawaii.

46. Along with those monthly payments and filings, Act 96 also will require cruise-ship operators to make annual filings and payments. Specifically, the Hawaii Department of Taxation and the four relevant counties each require entities subject to Chapter 237D file annual reconciliation returns summarizing periodic tax

---

[6] *See* Haw. Cnty. Code §§ 2-261(b)–(c); Kauai Cnty. Code § 5-4.6(a); Maui Cnty. Code § 3.47.060; Rev. Ord. Hon. § 8A-1.6.

liabilities and payments for the prior taxable year and making any remaining payments due.⁷

## CLAIMS FOR RELIEF
## COUNT ONE – VIOLATION OF THE TONNAGE CLAUSE

47. The United States hereby incorporates paragraphs 1–46 of the Complaint as if fully stated herein.

48. The U.S. Constitution's Tonnage Clause bars States from imposing "any Duty of Tonnage" without Congressional consent. U.S. Const. art. I, § 10, cl. 3.

49. Our Framers adopted the Tonnage Clause to "diminish a State's ability to obtain certain geographical vessel-related tax advantages," *Polar Tankers, Inc.*, 557 U.S. at 7, by "tax[ing] the privilege of access by vessels to their harbors," *Clyde Mallory Lines*, 296 U.S. at 265.

50. Act 96 does just that in two ways.

51. First, Act 96 requires cruise-ship operators to pay registration fees "as a condition precedent to engaging or continuing in the business of furnishing transient accommodations," which includes furnishing passage aboard a cruise ship that docks in a Hawaii port. Haw. Rev. Stat. § 237D-4(a). Without paying a registration fee, therefore, cruise ships cannot legally dock in any Hawaii port. Thus, the registration fees constitute an impermissible duty of tonnage owed for

---

⁷ *See* Haw. Rev. Stat. § 237D-7; Haw. Cnty. Code § 2-262; Kauai Cnty. Code § 5-4.7; Maui Cnty. Code § 3.47.070; Rev. Ord. Hon. § 8A-1.7.

13

the privilege of entering or lying in any Hawaii port. *See Clyde Mallory Lines*, 296 U.S. at 265–66; *S.S. Co.*, 73 U.S. (6 Wall.) at 34–35 (holding that a $5 fee imposed on all ships arriving at the port of New Orleans was an impermissible duty of tonnage).

52. Second, the authorized surcharges on cruise-ship fares imposed by Hawaii and its individual counties are calculated based on "the percentage of days" that a ship is "docked at any port in the State in comparison to the total number of days of the voyage." Haw. Rev. Stat. § 237D-2(a). Thus, those surcharges constitute impermissible fees for lying in a Hawaii port. *See Clyde Mallory Lines*, 296 U.S. at 266.

53. Neither the registration fees nor the surcharges imposed under Act 96 bear any relationship to legitimate maritime services provided by the State of Hawaii or Hawaii ports.

54. Cruise ships already pay numerous other charges and fees for maritime services when visiting Hawaii ports. Under longstanding regulations promulgated by the Hawaii Department of Transportation, cruise ships already pay daily dockage fees. *See* Haw. Code R. § 19-44-20. Cruise ships also already pay substantial fees for services such as the provision of clean water, stevedoring, tugboat services, and port security. *See, e.g.*, Haw. Code R. §§ 19-44-23, 19-44-35.

55. In contrast to the abovementioned preexisting payments for specific maritime services, Hawaii boasts the surcharges imposed by Act 96 will be used to pay for "green" projects that otherwise would be funded out of general state and county tax revenues.

56. Specifically, under amendments passed as section 2 of Act 96, the Governor's annual budget request is required to propose projects through which the additional revenue obtained from the "assessment of the transient accommodations tax on gross rental proceeds derived from cruise fares" can be used for purposes such as to "restore . . . native forests," perform "flood mitigation," and support "beach improvement, nourishment, and maintenance projects." Act 96 § 2.

57. That Act 96 raises revenue for unrelated "green" purposes, rather than for providing maritime services to vessels, underscores that Act 96 violates the Tonnage Clause.

58. Accordingly, Act 96 is unconstitutional. The United States is thus entitled to declaratory judgment that Act 96 violates the Tonnage Clause and is therefore invalid, as well as an injunction prohibiting Defendants and their successors, agents, and employees, from enforcing Act 96.

# COUNT TWO – VIOLATION OF THE SUPREMACY CLAUSE (PREEMPTION BY THE RIVERS AND HARBORS ACT)

59. The United States hereby incorporates paragraphs 1–46 of the Complaint as if fully stated herein.

60. Act 96's registration fees and surcharges conflict with and are thus preempted by the RHA.

61. The RHA bars non-Federal entities from imposing fees or taxes on any vessels navigating waters belonging to the United States.

62. Hawaii's ports are part of the navigable waters subject to the authority of the United States. *See, e.g.*, *The Daniel Ball*, 77 U.S. 557, 564 (1870) (defining "navigable waters" as waters "accessible from a State other than those in which they lie"); *Gilman v. Philadelphia*, 70 U.S. (3 Wall.) 713, 724–25 (1866) (same); 33 C.F.R. § 329.4 ("Navigable waters of the United States are those waters that are subject to the ebb and flow of the tide and/or are presently used, or have been used in the past, or may be susceptible for use to transport interstate or foreign commerce.").

63. Act 96 imposes mandatory registration fees on any cruise ship that wishes to dock in any Hawaii port, constituting a "fee" collected from a vessel under § 5(b).

64. And Act 96's surcharges on cruise fares each constitute "taxes, tolls, operating charges, fees, or . . . other impositions" "levied upon or collected from any vessel or other water craft." 33 U.S.C. § 5(b).

65. Neither the registration fees nor surcharges imposed by Act 96 fall within one of RHA's exceptions.

66. Neither the registration fees nor surcharges qualify as dues under 33 U.S.C. § 2236 to fund a harbor navigation construction project.

67. Neither the registration fees nor surcharges are "used solely to pay the cost of a service to the vessel or water craft" as Act 96 specifically states such revenue will be used to fund "green" initiatives such as beach improvement, nourishment, flood mitigation, and restoring forests.

68. And neither of Act 96's registration fees nor surcharges constitute property taxes. *See* 33 U.S.C. §§ 5(b)(1)–(3).

69. Accordingly, Act 96 expressly conflicts with section 5(b). The United States is entitled to declaratory judgment that Act 96 is preempted by Federal law, as well as an injunction prohibiting Defendants and their successors, agents, and employees, from enforcing Act 96.

# PRAYER FOR RELIEF

WHEREFORE, the United States respectfully requests that this Court grant the following relief:

1. Enter a judgment declaring:

   - Act 96's 11% and 3% surcharges on cruise fares violate the Tonnage Clause of the United States Constitution;

   - Act 96's registration-fee requirement violates the Tonnage Clause of the United States Constitution;

   - Act 96's 11% and 3% surcharges on cruise fares violate the Rivers and Harbors Act; and

   - Act 96's registration-fee requirement violates the Rivers and Harbors Act.

2. Issue a permanent injunction enjoining Defendants, as well as all officers, agents, and employees subject to their supervision or direction, from enforcing the above requirements of Act 96 against cruise-ship operators.

3. Award any other relief that the Court deems just and proper.

[SIGNATURE BLOCK ON NEXT PAGE]

DATED: December 5, 2025         Respectfully submitted,

STANLEY E. WOODWARD, JR.
*Associate Attorney General*

ADAM R.F. GUSTAFSON
*Principal Deputy Assistant Attorney General*

/s/ *Bradley Craigmyle*
BRADLEY CRAIGMYLE
*Deputy Assistant Attorney General*
ELIAS L. QUINN
*Senior Counsel*
Environment and Natural Resources Division
U.S. Department of Justice
950 Pennsylvania Ave. NW
Washington, D.C. 20530
Telephone: (202) 532-3150
Email: Bradley.Craigmyle@usdoj.gov

*Counsel for Plaintiff-Intervenor
United States of America*