ANNE E. LOPEZ                        7609
Attorney General of Hawai'i

NATHAN S.C. CHEE                     6368
KACYN H. FUJII                       12006
MICHAEL D. DUNFORD                   10346
Deputy Attorneys General
Department of the Attorney
  General, State of Hawai'i
Hale Auhau Building
425 Queen Street
Honolulu, HI 96813
Telephone: (808) 586-1470
Email:      nathan.s.chee@hawaii.gov
            kacyn.h.fujii@hawaii.gov
            michael.d.dunford@hawaii.gov

Attorneys for Defendant
GARY S. SUGANUMA, in his capacity as
Director of Taxation for the State of Hawai'i and
HAWAI'I DEPARTMENT OF TAXATION

(see signature page for complete listing of parties per LR 10.2(b))

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| CRUISE LINES INTERNATIONAL ASSOCIATION, INC.; HONOLULU SHIP SUPPLY CO.; KAUA'I KILOHANA PARTNERS; ALOHA ANUENUE TOURS LLC, <br><br> Plaintiffs, <br><br> v. | CIVIL NO. 1:25-cv-00367-JAO-KJM <br><br> DEFENDANTS' OPPOSITION TO UNITED STATES' MOTION FOR PRELIMINARY INJUNCTION (ECF NO. 97) <br><br> JUDGE: The Hon. JILL A. OTAKE <br><br> HEARING: December 17, 2025 at 11:00 a.m. |

GARY S. SUGANUMA, in his capacity as Director of Taxation for the State of Hawaiʻi; HAWAIʻI DEPARTMENT OF TAXATION; CHELSIE SAKAI, in her capacity as County Finance Director of the County of Kauaʻi; COUNTY OF KAUAʻI; ANDREW T. KAWANO, in his capacity as Director of the Department of Budget and Fiscal Services for the City and County of Honolulu; CITY AND COUNTY OF HONOLULU; MARCY MARTIN, in her capacity as Director of Finance for the County of Maui; COUNTY OF MAUI; DIANE NAKAGAWA, in her capacity as Director of Finance for the County of Hawaiʻi; COUNTY OF HAWAIʻI,

       Defendants.

TRIAL: No date set

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ...................................................................................................1

LEGAL STANDARD............................................................................................2

ARGUMENT ........................................................................................................2

I.    The United States is unlikely to succeed on the merits. .......................................2

   A.    The Tax Injunction Act deprives this Court of jurisdiction over the United States' claims. ..............................................................................................3

     1.    The United States' claims fall squarely within the Tax Injunction Act and cannot succeed in federal court. ..................................................................3

     2.    The United States is not categorically exempt from Tax Injunction Act. .....4

     3.    The other narrow exception to the Tax Injunction Act does not apply. ......10

   B.    The United States' claims cannot succeed in federal court under the comity doctrine. ..........................................................................................................11

   C.    The transient accommodation tax does not violate the Tonnage Clause. .......12

   D.    The transient accommodation tax and registration fee are not preempted by the Rivers and Harbors Act..........................................................................14

II.   The United States has not shown that it is likely to suffer irreparable injury in the absence of preliminary relief. ..................................................................17

III.  The balance of equities and the public interest favor denying injunctive relief. ..................................................................................................................19

IV.   The United States lacks standing...............................................................19

CONCLUSION ....................................................................................................21

## TABLE OF AUTHORITIES

**Cases**

*Air Polynesia, Inc. v. Freitas*, 742 F.2d 546 (9th Cir. 1984)....................................10

*Alcan Aluminium Ltd. v. Dep't of Revenue of State of Or.*, 724 F.2d 1294 (7th Cir. 1984)................................................................................................................11

*Arkansas v. Farm Credit Servs. of Cent. Arkansas*, 520 U.S. 821 (1997) ........ passim

*Bates v. Dow Agrosciences LLC*, 544 U.S. 431 (2005)..............................................16

*California v. Grace Brethren Church*, 457 U.S. 393 (1982)............................3, 8, 10

*De Buono v. NYSA–ILA Med. and Clinical Serv. Fund,* 520 U.S. 806, 814 (1997)..14

*Dep't of Emp. v. United States*, 385 U.S. 355 (1966)..............................................5, 6

*Florida Lime & Avocado Growers, Inc. v. Paul,* 373 U.S. 132 (1963).....................14

*Lake v. Fontes*, 83 F.4th 1199 (9th Cir. 2023).........................................................20

*Levin v. Commerce Energy, Inc.*, 560 U.S. 413 (2010)............................................11

*Lil' Man in the Boat, Inc. v. City & Cnty. of San Francisco*, 5 F.4th 952 (9th Cir. 2021)................................................................................................................15

*Lil' Man In The Boat, Inc. v. City & Cnty. of San Francisco*, No. 17-CV-00904-JST, 2019 WL 8263440 (N.D. Cal. Nov. 26, 2019)..................................................14, 15

*Mazurek v. Armstrong*, 520 U.S. 968 (1997)............................................................2

*McCulloch v. Maryland,* 4 Wheat. 316 (1819)..........................................................18

*Medtronic, Inc. v. Lohr*, 518 U.S. 470 (1996) ..........................................................14

*Moe v. Confederated Salish & Kootenai Tribes of Flathead Rsrv.*, 425 U.S. 463, 474 (1976)..............................................................................................................6, 7

*Polar Tankers, Inc. v. City of Valdez*, 557 U.S. 1 (2009)....................................11, 12

*Reel Hooker Sportfishing, Inc. v. State, Dep't of Tax'n*, 123 Haw. 494 (Ct. App. 2010)................................................................................................................14

*Rosewell v. LaSalle Nat'l Bank*, 450 U.S. 503, 522 (1981)...................................8, 17

*State v. N. Pac. Fishing, Inc.*, 485 P.3d 1040 (Alaska 2021) ...................................16

*United States v. Cnty. of Nassau*, 79 F. Supp. 2d 190 (E.D.N.Y. 2000) .............5, 6, 7

*Washington v. Azar*, 461 F. Supp. 3d 1016, 1021-22 (E.D. Wash. 2020)...........14, 16

*Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7 (2008)...................................2, 18

*Wyeth v. Levine*, 555 U.S. 555 (2009) .......................................................14

**Statutes**

28 U.S.C. § 1341 ....................................................................................3

33 U.S.C. § 5(b) ...................................................................................14

HRS § 237D-4.......................................................................................13

**Other Authorities**

11A C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 2948 ........2

11A C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 2948.1 ...17

148 Cong. Rec. E22143-04 (2002) .........................................................15

Act 96, Session Laws of Hawai'i.............................................................1

*Operate*, Merriam-Webster, https://www.merriam-webster.com/dictionary/operate
    (last accessed December 14, 2025 at 9:15 p.m.) ...................................15

## <u>INTRODUCTION</u>

"The power to tax is basic to the power of the State to exist." *Arkansas v. Farm Credit Servs. of Cent. Arkansas*, 520 U.S. 821, 826 (1997).

Act 96, which applies the transient accommodation tax (TAT) and the TAT registration fee to cruise ships, goes into effect on January 1, 2026.  Act 96, Session Laws of Hawaiʻi 2025.  Plaintiff-Intervenor the United States of America seeks to prevent the State of Hawaiʻi and its counties from collecting the transient accommodation tax (TAT) and TAT registration fee on cruise ships.  This relief is clearly barred by the Tax Injunction Act and comity doctrine.  Nonetheless, the United States asks this Court to be the first to hold that the United States is categorically exempt from the Tax Injunction Act.  Such a broad exemption for the United States would frustrate Congress's purposes in passing the Tax Injunction Act and threaten states' ability to manage and collect taxes, which "is basic to the power of the State to exist." *Id.*

But even if this Court agrees with the United States on jurisdiction, injunctive relief should be denied because the United States has not shown that it is likely to succeed on the merits, that it would suffer irreparable harm if injunctive relief is denied, or that an injunction would be in the public interest.

## LEGAL STANDARD

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). "[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing,* carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (quoting 11A C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 2948).

## ARGUMENT

### I.    The United States is unlikely to succeed on the merits.

The United States has not established that it is likely to succeed on the merits. The United States' claims, if successful, would impede the state's ability to collect the transient accommodation tax.  Therefore, the Tax Injunction Act and comity doctrine warrant dismissal of these claims from federal court.  But even if the Court finds that it has jurisdiction over the United States' claims, Act 96 does not violate either the Tonnage Clause or the Rivers and Harbors Act.

2

### A. The Tax Injunction Act deprives this Court of jurisdiction over the United States' claims.

The United States' claims cannot succeed because the Tax Injunction Act deprives this Court of jurisdiction over the claims.  The Tax Injunction Act applies to the United States in this case because the United States is not being subjected to state taxation.  And the other narrow exception to the Tax Injunction Act does not apply.

### 1.  The United States' claims fall squarely within the Tax Injunction Act and cannot succeed in federal court.

The Tax Injunction Act "prohibits a federal district court . . . from issuing an injunction enjoining the collection of state taxes." *California v. Grace Brethren Church*, 457 U.S. 393, 408 (1982); 28 U.S.C. § 1341.  The United States asks this Court for exactly that: an injunction preventing Hawaiʻi from enforcing the transient accommodations tax (TAT) and the registration fee as to cruise ships.  The United States does not dispute that granting the injunction it seeks would "enjoin the collection of state taxes." *Grace Brethren Church*, 457 U.S. at 408.  Because granting the relief that the United States seeks would enjoin the collection of state taxes, the Tax Injunction applies, and the United States' claims cannot succeed in this federal forum.

3

**2. The United States is not categorically exempt from Tax Injunction Act.**

Contrary to the United States' assertions, it is not categorically exempt from the Tax Injunction Act. There is an exception to the Tax Injunction Act when "the United States sues to protect itself or its instrumentalities from state taxation," but the Supreme Court has never recognized an exception broader than that. *Arkansas*, 520 U.S. at 823-24 (citing *Dep't of Emp. v. United States*, 385 U.S. 355, 358 (1966)). The United States attempts to expand this exception to the maximum possible extent—it asks this Court to exempt the United States from the Tax Injunction Act entirely, even in cases where, as here, the United States is at no risk of being subjected to state taxation.[1]

The principal case upon which the United States relies, *Arkansas v. Farm Credit Services of Central Arkansas*, 520 U.S. 821 (1997), clearly articulated the exception involving the United States as follows: "The [Tax Injunction Act] does not constrain the power of federal courts if the United States sues to protect itself or its instrumentalities from state taxation." *Id.* at 823-24. The Supreme Court elaborated:

> Where the Government of the United States is a party, of course, the other side of the federal balance must be considered. In our constitutional system the National Government has sovereign interests

---

[1] The United States never asserts that it (or its instrumentalities) would be subject to state taxation under the challenged provisions of Act 96, nor does it assert that cruise ships have a special relationship with the United States.

of its own. The necessity to respect the authority and prerogatives of the National Government underlies the now settled rule that the Tax Injunction Act is not a constraint on federal judicial power when the United States sues *to protect itself and its instrumentalities from state taxation*.

*Id.* at 827 (emphasis added).  This qualified language is consistent with how the Supreme Court articulated the exception in the past.  *Dep't of Emp. v. United States*, 385 U.S. 355, 466-67 (1966) ("[W]e conclude, in accord with an unbroken line of authority, and convincing evidence of legislative purpose, that [the Tax Injunction Act] does not act as a restriction upon suits by the United States to protect itself and its instrumentalities from unconstitutional state exactions.").

The United States attempts to bypass the Supreme Court's articulation of this exception by instead focusing on the quote that "the Tax Injunction Act is inapplicable where the United States is a party." *Arkansas*, 520 U.S. at 829. However, this quotation ignores the full context of the discussion, which made it clear that the Supreme Court was contemplating the situation in which the United States was a party *because* it was protecting itself from state taxation.  This selective quotation cannot validly be used to broaden the exception as articulated by the Supreme Court in *Arkansas v. Farm Credit Services* and earlier cases.

The only other court to address whether the United States has a categorical exemption from the Tax Injunction Act interpreted Supreme Court precedent in the

same way. *United States v. Cnty. of Nassau*, 79 F. Supp. 2d 190, 193 (E.D.N.Y. 2000). The *Nassau* court noted that:

> [N]owhere else in the Court's opinion in *Arkansas,* nor in any other reported decision of any court, has such a broad and heretofore unspoken exception to the Tax Injunction Act been described. Indeed, in several other passages in *Arkansas,* the Court felt compelled to qualify the Government's exemption from the Act only to matters involving the Federal Government directly or through its instrumentalities.
> . . .
> The qualified language in these quotes would be unnecessary if the Government's exemption from the Tax Injunction Act were as broad as it presently argues here.

*Id.*

Other cases addressing the federal government exemption support this qualified view. As mentioned, *Nassau* appears to be the only case to address the argument that the United States is exempt from the Tax Injunction Act entirely. *Id.* at 191, 193 ("This case, which appears to be one of first impression in the federal courts, concerns the right of the Federal Government to sue in federal court to enjoin an allegedly discriminatory state property tax on ordinary citizens . . . . Remarkably, the Government alleges that Congress intended to exempt from the Tax Injunction Act's ban *any* challenge to state taxes brought by the Federal Government."). The other cases to address the federal government exemption were cases in which a state attempted to impose a tax on the United States, one of its instrumentalities, or an

6

entity bearing a special relationship to the United States.  *See, e.g.*, *Arkansas*, 520

U.S. at 821  (addressing whether production credit associations, as instrumentalities

of the United States, fell under the federal government exemption to the Tax

Injunction Act); *Dep't of Emp.*, 385 U.S. at 358 (holding that the Red Cross is an

instrumentality of the United States for purposes of the Tax Injunction Act); *Moe v.*

*Confederated Salish & Kootenai Tribes of Flathead Rsrv.*, 425 U.S. 463, 474 (1976)

(noting that the United States could have brought a challenge to the state tax on an

Indian tribe because federal legislation and treaties preempted state taxes on Indian

tribes).[2]  Here, however, the United States makes no argument that the United

States, its instrumentalities, or an entity that bears a special relationship to the

United States would be subject to state taxation under Act 96.

---

[2] It is not clear why the United States believes that the most "natural reading" of *Moe* is that the "Tax Injunction Act does not apply to a suit that seeks to vindicate the Federal Government's interest."  The most sensible reading of *Moe* is that there is a special relationship between the United States and Indian tribes, whose sovereignty was federally recognized by statute and treaty.  *Moe*, 425 U.S. at 474; *Moses v. Kinnear,* 490 F.2d 21, 24-25 (9th Cir. 1973) ("[T]he instrumentality doctrine has also been held applicable where the Government sues on behalf of a private party in order to protect and enforce its policies *with respect to those in whom the United States has a special interest*." (emphasis added)).

 *Nassau* correctly dismissed a similar argument, noting that "Footnote 13 in *Moe* reveals that the Court's basis for finding jurisdiction to challenge the tax was not the finding that "federal policies" were involved, but the fact that federal law and treaties involving Indian affairs affirmatively pre-empted the challenged tax." *Nassau*, 79 F. Supp. 2d at 194.

The United States argues that *Nassau* erred by not considering Congress's intent to bind the United States when passing the Tax Injunction Act and by not adequately considering the interests of the United States more generally. But the United States fails to acknowledge that Congress's intent in passing the Tax Injunction Act was "first and foremost . . . to limit drastically federal district court jurisdiction to interfere with so important a local concern as the collection of taxes." *Arkansas*, 520 U.S. at 826; *Grace Brethren Church*, 457 U.S. at 417. The Supreme Court in *Arkansas v. Farm Credit Services* explained Congress's purpose in detail:

> The federal balance is well served when the several States define and elaborate their own laws through their own courts and administrative processes and without undue interference from the Federal Judiciary. The States' interest in the integrity of their own processes is of particular moment respecting questions of state taxation. In our constitutional system, the power of the State to tax is a concurrent power. "That the power of taxation is one of vital importance; that it is retained by the States; that it is not abridged by the grant of a similar power to the government of the Union; that it is to be concurrently exercised by the two governments: are truths which have never been denied." *McCulloch v. Maryland,* 4 Wheat. 316, 425, 4 L.Ed. 579 (1819). The power to tax is basic to the power of the State to exist. *Wisconsin v. J.C. Penney Co.,* 311 U.S. 435, 444, 61 S.Ct. 246, 249–250, 85 L.Ed. 267 (1940); *Rosewell, supra,* at 522, 101 S.Ct., at 1233–1234.

*Arkansas*, 520 U.S. at 826. On another occasion, the Supreme Court observed that the "imperative need of a State to administer its own fiscal operations" "was the principal motivating force behind the [Tax Injunction] Act." *Rosewell v. LaSalle*

*Nat'l Bank*, 450 U.S. 503, 522 (1981).  Congress recognized that a state's ability to tax is fundamental to its ability to exist and therefore passed the Tax Injunction Act to ensure that states are protected from undue federal interference in matters of state taxation.  *Grace Brethren Church*, 457 U.S. at 413 (recognizing the need to be "faithful to the congressional intent 'to limit drastically' federal[] interference with state tax systems").  *Nassau*, in rejecting the view that the United States is categorically exempt from the Tax Injunction Act, acted consistently with Congress's intent and Supreme Court precedent on the Tax Injunction Act.[3]

Not only would a rule exempting the United States from the Tax Injunction Act be inconsistent with Congress's intent, but it would establish dangerous precedent for potentially all state tax matters in this country.  Such a broad exemption would permit the United States to seek a federal court injunction on potentially any matter involving state taxation by simply alleging that the state tax is unconstitutional.  This Court should decline to expand the federal government exemption to cases where the United States and its instrumentalities are not subject to taxation, as is the case here.

---

[3] The United States also argues that *Nassau* erred by not considering the Anti-Injunction Act, 28 U.S.C. § 2283.  But no court has ever said that consideration of the Anti-Injunction Act is a necessary part of the analysis.  And there is no indication that the parties raised the Anti-Injunction Act argument before the *Nassau* court, so *Nassau* could not have erred in failing to consider it if it was never raised.

**3.  The other narrow exception to the Tax Injunction Act does not apply.**

The Ninth Circuit has already held that Hawaiʻi law provides a "plain, speedy, and efficient" remedy for taxpayers to bring their claims in state court.[4]  *Air Polynesia, Inc. v. Freitas*, 742 F.2d 546, 546 (9th Cir. 1984).  The United States does not challenge this holding, nor does it dispute that taxpayers have a plain, speedy, and efficient remedy in Hawaiʻi's courts.

Instead, the United States argues that it has no remedy in state court by virtue of not being subject to the tax.  (ECF No. 97-1, PageID.736 ("The United States . . . is not subject to the tax and would never be able to request a refund or appeal an assessment.")).  But it is not, and cannot be, a requirement of the Tax Injunction Act that even *non*-taxpayers must have a state remedy.  If this Court were to allow any non-taxpayer to fall under this exception simply by virtue of being a non-taxpayer, it would ignore the Supreme Court's mandate that the exception be construed narrowly and contravene Congress's intent in passing the Tax Injunction Act. *Grace Brethren Church*, 457 U.S. at 413 ("In order to accommodate these concerns and be faithful to the congressional intent 'to limit drastically' federal-court interference with state tax systems, we must construe narrowly the 'plain, speedy

---

[4] The Ninth Circuit determined that taxpayers have the opportunity in Hawaiʻi Tax Appeal Court for "a full and fair hearing" on "all questions of fact and all questions of law, including constitutional questions."  *Air Polynesia, Inc. v. Freitas*, 742 F.2d 546, 548 (9th Cir. 1984) (quoting HRS § 232-11).  And any non-tax-related issues can be heard in state circuit court.

and efficient' exception to the Tax Injunction Act."). Such a rule would allow any non-taxpayer to seek injunctive relief to prevent collection of a state tax. To conclude, none of the exceptions to the Tax Injunction Act apply, so the Tax Injunction Act deprives this Court of jurisdiction over the United States' claims.

## B. The United States' claims cannot succeed in federal court under the comity doctrine.

The comity doctrine, which "restrains federal courts from entertaining claims for relief that risk disrupting state tax administration," *Levin v. Commerce Energy, Inc.*, 560 U.S. 413, 413 (2010), applies for all the same reasons that the Tax Injunction Act applies.

Although the United States argues that it is exempt from the Tax Injunction Act, it makes no argument that it is exempt from the principle of comity. Indeed, "[c]omity's constraint has particular force when lower federal courts are asked to pass on the constitutionality of state taxation of commercial activity." *Id.* Granting relief to the United States would affect the collection of state taxes, so the comity doctrine has "particular force" here, *id.* at 413, and this Court should use its "discretion [to] restrain from interfering" in this state tax matter, *Alcan Aluminium Ltd. v. Dep't of Revenue of State of Or.*, 724 F.2d 1294, 1297 (7th Cir. 1984).

**C. The transient accommodation tax does not violate the Tonnage Clause.**

Even if the Court finds jurisdiction over this case notwithstanding the Tax

Injunction Act and the comity doctrine, the United States' Tonnage Clause claim is

unlikely to succeed on the merits.  The Tonnage Clause "forbids all charges . . .

impose[d] for the privilege of entering, trading in, or lying in a port," *Polar Tankers,*

*Inc. v. City of Valdez*, 557 U.S. 1, 9 (2009) (internal quotation marks omitted), but

the TAT is not a charge for any vessel-related functions like entering a port.  The

TAT is a tax on proceeds from operating short-term accommodations, regardless of

whether those accommodations are in a hotel, a rental apartment, or on a cruise ship.

*Id.* at 12 (stating that the Tonnage Clause does not apply when vessels are taxed "in

the same manner" as other property in the state).  And vessels that do not offer

short-term accommodations to passengers would not be subject to the TAT or

registration fee at all, which supports that these are charges for operating transient

accommodations, not charges for vessel-related functions like entering a port.

The United States argues that a cruise ship's non-compliance with the TAT

and the registration fees means that the cruise ship cannot lawfully dock in Hawaiʻi.

Under this logic, a cruise company could argue that *any* tax or fee is a violation of

the Tonnage Clause.  An equivalent scenario would be if a cruise company declared

its intent to not pay Hawaiʻi's general excise tax (GET) and then argued that it

cannot lawfully dock without complying with the GET requirements.  As the United

States Supreme Court has made clear, "nothing in the history of the adoption of the Clause, the purpose of the Clause, or this Court's interpretation of the Clause suggests that it operates as a ban on *any and all* taxes which fall on vessels that use a State's port, harbor, or other waterways." *Id.* at 9. "Such a radical proposition would transform the Tonnage Clause from one that protects vessels, and their owners, from discrimination by seaboard States, to one that gives vessels preferential treatment vis-à-vis all other property, and its owners, in a seaboard State." *Id.* Moreover, the text of HRS § 237D-4 makes it clear that the registration fee is "a condition precedent to engaging or continuing in the business of furnishing transient accommodations," not to docking in the state. HRS § 237D-4.

The fact that the tax is prorated based on the number of days in port also does not mean that it is a tax on the privilege of using the port. For example, if a cruise ship were to enter and leave a port in Honolulu five times in one day, it would not be charged the registration fee and TAT five times. And the registration is due only once and does not depend at all on the number of entries or the duration of the vessel's stay in a Hawaiʻi port. This provision of Act 96 simply reflects the reality that a state cannot tax outside of its borders and ensures that Hawaiʻi does not tax the portion of voyages that take place outside of the state.

Because the TAT and the registration fee are unrelated to "the privilege of entering, trading in, or lying in a port," there is no violation of the Tonnage Clause, and this claim is unlikely to succeed on the merits.

### D. The transient accommodation tax and registration fee are not preempted by the Rivers and Harbors Act.

The federal preemption claim is also unlikely to succeed because the United States cannot show that Congress, in passing the Rivers and Harbors Act (RHA), intended to preempt the TAT and registration fee.

"[T]he preemption of state laws represents 'a serious intrusion into state sovereignty.'" *Washington v. Azar*, 461 F. Supp. 3d 1016, 1021-22 (E.D. Wash. 2020) (quoting *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 488 (1996)). Therefore, the burden of establishing preemption rests with the United States, "the party who is seeking the benefit of it." *Reel Hooker Sportfishing, Inc. v. State, Dep't of Tax'n*, 123 Haw. 494, 497 (Ct. App. 2010) (citing *De Buono v. NYSA–ILA Med. and Clinical Serv. Fund,* 520 U.S. 806 (1997)). The United States "must therefore 'bear the considerable burden of overcoming the starting presumption that Congress does not intend to supplant state law.'" *Id.* (quoting *De Buono*, 520 U.S. at 814). "[P]reemption is disfavored unless the 'nature of the regulated subject matter permits no other conclusion' or 'Congress has unmistakably so ordained.'" *Id.* (quoting *Florida Lime & Avocado Growers, Inc. v. Paul,* 373 U.S. 132, 142 (1963)).

14

The RHA provides that "No taxes, tolls, operating charges, fees, . . . shall be levied upon or collected from any vessel or other water craft, or from its passengers or crew, by any non-Federal interest, if the vessel or water craft is operating on any navigable waters subject to the authority of the United States." 33 U.S.C. § 5(b).

Congress's purpose is the "ultimate touchstone in every preemption case," *Azar*, 461 F. Supp. 3d at 1021 (citing *Wyeth v. Levine*, 555 U.S. 555, 566 (2009)). The legislative history of 33 U.S.C. § 5(b) makes it clear that its purpose was "to prohibit fees and taxes on a vessel simply because that vessel sails through a given jurisdiction.'" *Lil' Man In The Boat, Inc. v. City & Cnty. of San Francisco*, No. 17-CV-00904-JST, 2019 WL 8263440, at *8 (N.D. Cal. Nov. 26, 2019), *aff'd on alternative grounds*, 5 F.4th 952 (9th Cir. 2021) (quoting H.R. Rep. No. 108-334, at 180 (2002) (Conf. Rep.)).[5] "[A] sponsor of the bill codified at 33 U.S.C. § 5(b) explained that the legislation addresses the problem 'of local jurisdictions seeking to impose taxes and fees on vessels merely transitioning or making innocent passage through navigable waters subject to the authority of the United States that are adjacent to the taxing community.'" *Id.* (quoting 148 Cong. Rec. E22143-04 (2002)). "In particular, the legislation aims to prevent 'instances in which local

---

[5] The Ninth Circuit did not need to reach the lower court's analysis because it held that the RHA granted no private right of action, so the private plaintiff lacked the ability to bring a RHA claim. *Lil' Man in the Boat, Inc. v. City & Cnty. of San Francisco*, 5 F.4th 952, 955 (9th Cir. 2021).

communities [ ] seek[ ] to impose taxes or fees on vessels even where the vessel is not calling on, or landing, in the local community. These are cases where no passengers are disembarking . . . and where the vessels are not stopping for the purpose of receiving any other service offered by the port.'" *Id.* (quoting 148 Cong. Rec. E22143-04 (2002)).

Congress's purpose of preventing the taxation of vessels simply passing through but not availing themselves of any resources of a state is consistent with the text of 33 U.S.C. § 5(b), which disallows taxes and fees if the vessel is "operat*ing on*"—that is, being actively driven on[6]—the navigable waters of the United States. Because the TAT is assessed only when a cruise ship is docked in the state—and not "merely transiting adjacent waters without landing or benefitting from any local services," *State v. N. Pac. Fishing, Inc.*, 485 P.3d 1040, 1058 (Alaska 2021)—the United States cannot show that 33 U.S.C. § 5(b) preempts the TAT.  Similarly, the registration fee is not imposed on any cruise ship "merely transiting adjacent waters," and also is not preempted by 33 U.S.C. § 5(b).  *Azar*, 461 F. Supp. 3d at 1022 ("[W]hen courts are confronted with two plausible interpretations of a statute, they 'have a duty to accept the reading that disfavors preemption.'" (quoting *Bates v. Dow Agrosciences LLC*, 544 U.S. 431, 449 (2005))).

---

[6] *Operate*, Merriam-Webster, https://www.merriam-webster.com/dictionary/operate (last accessed December 14, 2025 at 9:15 p.m.).

16

In addition, 33 U.S.C. § 5(b) does not preempt the TAT and registration fee

because these charges are not imposed on any vessel-related function of the cruise

ship—they are imposed on the proceeds from the transient accommodations located

onboard the cruise ships.  *N. Pac. Fishing, Inc.*, 485 P.3d at 1056-58 (stating that 33

U.S.C. § 5(b) "does not prohibit taxes on things other than vessels, passengers, and

crews.").  In conclusion, the United States cannot meet its burden of showing that 33

U.S.C. § 5(b) preempts the TAT or registration fee.

## II.    The United States has not shown that it is likely to suffer irreparable injury in the absence of preliminary relief.

The United States has not satisfied "the single most important prerequisite for

the issuance of a preliminary injunction"—"a demonstration that if it is not granted

the applicant is likely to suffer irreparable harm before a decision on the merits can

be rendered."  11A C. Wright, A. Miller, & M. Kane, Federal Practice and

Procedure § 2948.1.

While it is true that the irreparable harm factor is "usually" satisfied when a

plaintiff "shows he is likely to prevail on the merits," *Baird v. Bonta*, 81 F.4th 1036,

1040 (9th Cir. 2023), the United States has not shown that it is likely to succeed on

the merits.  Even assuming this Court has jurisdiction over the claims in this case,

the TAT and registration fee are constitutional, and the United States would not be

harmed by a constitutional state tax. And there is clearly no risk of any direct

monetary harm, as the United States is not subject to the TAT or registration fee.

The United States' concern about creating an incentive for a "patchwork"

system of laws is also not a cognizable harm—it was Congress's intent in passing

the Tax Injunction Act to protect the states' ability to develop their own taxation

systems so that they may effectively "administer [their] own fiscal operations."

*Rosewell*, 450 U.S. at 522; *Arkansas*, 520 U.S. at 926 ("The federal balance is well

served when the several States define and elaborate their own laws through their

own courts and administrative processes . . . . The States' interest in the integrity of

their own processes is of particular moment respecting questions of state taxation.").

In other words, this "patchwork" system is a feature of our system of government

and exactly what federalism is meant to achieve. *Arkansas*, 520 U.S. at 826 ("That

the power of taxation is one of vital importance; that it is retained by the States; that

it is not abridged by the grant of a similar power to the government of the Union;

that it is to be concurrently exercised by the two governments: are truths which have

never been denied." (quoting *McCulloch v. Maryland,* 4 Wheat. 316 (1819))). The

United States has failed to meet its burden of demonstrating irreparable harm.

### III.    The balance of equities and the public interest favor denying injunctive relief.

The United States also does not establish that "the balance of equities tips in [its] favor," nor does it show that "an injunction is in the public interest." *Winter*, 555 U.S. at 20.  Granting an injunction would interfere with state tax enforcement of the TAT and registration fee for cruise ships.  And, if this Court holds that the United States is exempt from the Tax Injunction Act entirely, the ability of states across this country to maintain their own taxation systems would be threatened.[7]

The public interest also supports denying injunctive relief.  Granting an injunction would establish a rule giving preferential treatment to cruise operators over land-based accommodation providers.  It would exempt cruise operators from paying their fair share of the TAT, thereby reducing the funds to be used for the benefit of the people of Hawaiʻi.  The balance of the equities and the public interest support denying injunctive relief.

### IV.    The United States lacks standing.

Finally, there is a question of whether the United States, as a non-taxpayer, even has standing to challenge a state tax to which it and its instrumentalities are not

---

[7] As explained above, if exempted entirely from the Tax Injunction Act, the United States could seek injunctive relief against any state tax by claiming that the tax violates the Constitution.

subject.  The United States has not been injured; there is neither concrete nor

imminent harm.  The United States certainly would not be subject to any direct

monetary injury caused by the tax or the registration fee.  And, as mentioned, the

United States' concern about creating an incentive for a "patchwork" system of laws

is also not a cognizable harm—it is a feature of federalism that states may enact

their own laws independent from the federal government's laws.  *Arkansas*, 520

U.S. at 926 ("The federal balance is well served when the several States define and

elaborate their own laws through their own courts and administrative processes . . . .

The States' interest in the integrity of their own processes is of particular moment

respecting questions of state taxation.").

    The only other possibility for the United States' alleged harm is its own

assertion that Act 96 violates federal law.  But the United States has failed to show

that this mere assertion is sufficient to support Article III standing.  *Whitmore v.

Arkansas*, 495 U.S. 149, 155-56 (1990) (providing that the plaintiff bears the burden

of establishing standing); *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC),

Inc.*, 528 U.S. 167, 180-81 (2000) (providing that a plaintiff, to demonstrate

standing, must show that "it has suffered an injury in fact that is . . . concrete and

particularized and . . . actual or imminent"); *Lake v. Fontes*, 83 F.4th 1199, 1203

(9th Cir. 2023) ("[A] concrete injury must be real, and an imminent one must be

certainly impending.  An abstract, theoretical concern will not do." (cleaned up)).

If the United States had filed a new separate lawsuit instead of intervening, the case would have been dismissed for lack of standing.  While a prospective intervenor may "piggyback" on the other plaintiffs' standing, that general principle does not help the United States here: the private Plaintiffs in the instant case cannot maintain this action (because of the Tax Injunction Act and because the private Plaintiffs themselves lack standing), such that there is nothing for the United States to "piggyback" on.

## **CONCLUSION**

Defendants respectfully request that this Court deny the United States' motion for preliminary injunction.

DATED:    Honolulu, Hawaiʻi, December 15, 2025.

*/s/ Kacyn H. Fujii*
KACYN H. FUJII
MICHAEL D. DUNFORD
NATHAN S. C. CHEE
Deputy Attorneys General

Attorneys for Defendants
GARY S. SUGANUMA, in his capacity as Director of Taxation for the State of Hawaiʻi and
HAWAIʻI DEPARTMENT OF TAXATION

*/s/ Andrew Scott Michaels*
ANDREW SCOTT MICHAELS
Deputy County Attorney

Attorney for Defendants
CHELSIE SAKAI, in her capacity as County
Finance Director of the County of Kaua'i
and
COUNTY OF KAUA'I

DANA M.O. VIOLA
Corporation Counsel

By: */s/ Daniel M. Gluck*
DANIEL M. GLUCK
NIKKI Y. LOH
Deputies Corporation Counsel

Attorneys for Defendants
ANDREW T. KAWANO, in his capacity as
Director of the Department of Budget and
Fiscal Services for the City and County of
Honolulu
and
CITY AND COUNTY OF HONOLULU

*/s/ Kenton S. Werk*
KENTON S. WERK
Deputy Corporation Counsel

Attorney for Defendants
MARCY MARTIN, in her capacity as
Director of Finance for the County of Maui
and
COUNTY OF MAUI

*/s/ Hannah Ehrig McKee*
HANNAH EHRIG MCKEE
LERISA L. HEROLDT
STEVEN K. IDEMOTO
Deputies Corporation Counsel

Attorneys for Defendants

22

DIANE NAKAGAWA, in her capacity as
Director of Finance for the County of Hawaiʻi
and
COUNTY OF HAWAIʻI

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| CRUISE LINES INTERNATIONAL ASSOCIATION, INC.; HONOLULU SHIP SUPPLY CO.; KAUA'I KILOHANA PARTNERS; and ALOHA ANUENUE TOURS, LLC,<br><br>                    Plaintiffs,<br><br>      vs.<br><br>GARY S. SUGANUMA, in his capacity as Director of Taxation for the State of Hawai'i; et. al.,<br><br>                    Defendants. | CIVIL NO. 1:25-cv-00367-JAO-KJM<br><br>CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.4(e) |

CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.4(e)

I hereby certify under Local Rule 7.4(e) this document contains 5,621 words.

DATED:   Honolulu, Hawai'i, December 15, 2025.

*/s/ Kacyn H. Fujii*
KACYN H. FUJII
MICHAEL D. DUNFORD
NATHAN S. C. CHEE
Deputy Attorneys General

Attorneys for Defendants
GARY S. SUGANUMA, in his capacity as Director of Taxation for the State of Hawai'i and
HAWAI'I DEPARTMENT OF TAXATION

1