PAUL HASTINGS
A Limited Liability Partnership

BRADLEY J. BONDI (*Pro Hac Vice*)
BENJAMIN W. SNYDER (*Pro Hac Vice*)
RONALD K. ANGUAS, JR. (*Pro Hac Vice*)
2050 M Street NW
Washington, DC 20036
Telephone: (202) 551-1701
Email: bradbondi@paulhastings.com
        bensnyder@paulhastings.com
        ronaldanguas@paulhastings.com

CADES SCHUTTE
A Limited Liability Law Partnership

JEFFREY S. PORTNOY          1211
TREVER K. ASAM              8133
LINDSAY N. MCANEELEY        8810
1000 Bishop Street, Suite 1200
Honolulu, HI 96813
Telephone: (808) 521-9200
Email: jportnoy@cades.com
        tasam@cades.com
        lmcaneeley@cades.com

Attorneys for Plaintiffs Cruise Lines
International Association, Inc.; Honolulu
Ship Supply Co.; Kaua'i Kilohana
Partners; and Aloha Anuenue Tours LLC

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| CRUISE LINES INTERNATIONAL ASSOCIATION, INC.; HONOLULU SHIP SUPPLY CO.; KAUA'I KILOHANA PARTNERS; and ALOHA ANUENUE TOURS LLC,<br><br>       Plaintiffs, | CIVIL NO. 25-00367-JAO-KJM<br><br>**PLAINTIFFS' MOTION FOR INJUNCTION PENDING APPEAL (RULING REQUESTED BY 2 P.M. ON SATURDAY, DECEMBER 27, 2025)** |

*and*

UNITED STATES OF AMERICA,

     Plaintiff-Intervenor,

  v.

GARY S. SUGANUMA, in his capacity as Director of Taxation for the State of Hawaiʻi; HAWAIʻI DEPARTMENT OF TAXATION; CHELSIE SAKAI, in her capacity as County Finance Director of the County of Kauaʻi; COUNTY OF KAUAʻI; ANDREW T. KAWANO, in his capacity as Director of the Department of Budget and Fiscal Services for the City and County of Honolulu; CITY AND COUNTY OF HONOLULU; MARCY MARTIN, in her capacity as Director of Finance for the County of Maui; COUNTY OF MAUI; DIANE NAKAGAWA, in her capacity as Director of Finance for the County of Hawaiʻi; and COUNTY OF HAWAIʻI,

     Defendants.

**CERTIFICATE OF SERVICE**

## <u>PLAINTIFFS' MOTION FOR INJUNCTION PENDING APPEAL</u>

Under Rule 8(a)(1) of the Federal Rules of Appellate Procedure, parties that intend to seek an injunction pending appeal must "ordinarily move first in the district court for" that relief before seeking it from the court of appeals.  Fed. R. App. P. 8(a)(1)(C); *see* Fed. R. Civ. P. 62(d) (authorizing district courts to grant injunctions pending appeal).  In compliance with that rule, and for all of the reasons offered in connection with Plaintiffs' motion for a preliminary injunction, Plaintiffs

respectfully request that the Court grant an injunction pending appeal in order to prevent irreparable harm to Plaintiffs and the general public while Plaintiffs' appeal progresses. *See Feldman v. Ariz. Sec'y of State's Off.*, 843 F.3d 366, 367 (9th Cir. 2016) (en banc) (explaining that the standard for an injunction pending appeal is "similar to that employed by district courts in deciding whether to grant a preliminary injunction"); *see also* ECF 28-1 (Plaintiffs' PI Brief); ECF 57 (Plaintiffs' PI Reply). In the alternative, Plaintiffs respectfully request that the Court follow the approach recently taken in similar circumstances in *NetChoice v. Bonta*, 761 F. Supp. 3d 1232 (N.D. Cal. 2025), granting a temporary injunction of up to 30 days in order to provide the Ninth Circuit with time to rule on Plaintiffs' motion for a full stay pending appeal. **Plaintiffs respectfully request that the Court rule on this motion by 2 p.m. on Saturday, December 27, 2025, to allow time for Plaintiffs to seek an injunction pending appeal in the Ninth Circuit before Act 96 takes effect on January 1, 2026, if this Court denies relief.**[*]

---

[*] While Local Rule 7.8 does not appear to require a meet and confer in the present circumstances, Plaintiffs notified Defendants and the United States by e-mail on December 23, 2025, at 4:41 p.m. HT of their intent to file this motion. The United States indicated that it agrees that Local Rule 7.8 does not apply in these circumstances; that it does not oppose Plaintiffs' motion; and that it intends to file its own motion for an injunction pending appeal. Counsel for the State Defendants indicated that the State Defendants agree that Local Rule 7.8 likely does not apply in these circumstances but that the State Defendants oppose the relief requested in this motion. As of the time of this filing, counsel for the County Defendants have not responded.

* * *

On December 23, 2025, this Court issued an order granting in part and denying in part Defendants' motion to dismiss and denying Plaintiffs' motion for a preliminary injunction. *See* Dkt. 103 (Order). As relevant here, the Order "recognizes there are serious questions as to whether Act 96's State Tax, County Surcharges, and Registration Fee violate the Tonnage Clause or are preempted by the RHA." Order 54. The Order also finds that "[i]f Act 96's charges are indeed violations of the Constitution or the [Rivers and Harbors Act (RHA)], CLIA plausibly alleges that the Notice Requirements constitute impermissible compelled speech because there is no substantial interest in compelling speech related to an unconstitutional law." Order 49. But while stating that Plaintiffs "have sufficiently alleged a violation of the Tonnage Clause" to avoid dismissal, *id.*, the Order concludes that a higher showing is required to obtain a preliminary injunction and that Plaintiffs have not made that heightened showing, *see* Order 55 & n.10. Specifically, the Order concludes that Plaintiffs "have not clearly shown that" Act 96 taxes cruise ships in a manner less favorable than land-based accommodations, and therefore are unlikely to succeed on the merits. Order 56. The Order recognizes, however, that whether Plaintiffs are likely to succeed on their Tonnage Clause claims is "an admittedly close call," and that "the Court may ultimately come to a different conclusion about Act 96 later." Order 4, 69.

Respectfully, Plaintiffs submit that the Ninth Circuit is likely to conclude that Plaintiffs are entitled to a preliminary injunction barring enforcement of Act 96 while this case proceeds, and that an injunction pending appeal is therefore warranted. *See Feldman*, 843 F.3d at 367 (discussing factors for injunction pending appeal). Without repeating all of the arguments that the Court so recently considered, Plaintiffs note that even on this Court's understanding of the Tonnage Clause, Act 96 ultimately will be held unconstitutional if Plaintiffs can demonstrate that the law taxes cruise ships in a manner that is materially less favorable than land-based accommodations. *See* Order 62. And reviewing the text of Act 96 alongside existing regulations of the Hawaiʻi Department of Taxation applicable to land-based accommodations makes unmistakably clear that the law provides for exactly such discriminatory taxation.

As the Order explains, Act 96 "calculates the taxes for cruise lines based on 'the total amount paid by a [passenger] for a cruise ship cabin on a cruise ship, inclusive of any mandatory fees imposed . . . for the use of shipboard services, facilities, meals, and onboard entertainment.'" Order 63 (quoting Act 96 § 4.1) (omission and brackets in original). That means that when a cruise-ship operator charges passengers an all-inclusive fare that includes accommodations, meals, and all of the other benefits of cruise travel, Act 96 subjects that *full* fare to taxation.

Department of Taxation regulations applicable to land-based accommodations, by contrast, allow all-inclusive hotels and resorts to "[e]xclude[]" from taxation the portion of their charges that are attributable to "guest amenities, including meals, beverages, telephone calls, and laundry." Haw. Admin. R. § 18-237D-1-03(c). The regulations illustrate that exclusion with an example in which "Paradise Hotel rents a room to Ms. Mainland . . . under the American Plan and charges Ms. Mainland $200." *Id.* (Example 4). (The reference to the "American plan" refers to an inclusive charge that covers the cost of both the room and three meals a day. *See* American plan (noun), Merriam-Webster Dictionary Online ("a hotel plan whereby the daily rates cover the costs of the room and three meals"), https://www.merriam-webster.com/dictionary/American%20plan.) In those circumstances, the regulations explain that "[t]o compute the transient accommodations tax, Paradise shall deduct the cost of meals from the total price charged [to] Ms. Mainland. If the cost reasonably attributed to meals is $50, then the cost of the room is $150," and the hotel would calculate the transient accommodations tax due based only on that $150. Haw. Admin. R. § 18-237D-1-03(c) (Example 4).

Taken together, Act 96 and Section 18-237D-1-03(c) leave no doubt about Hawaiʻi's discriminatory treatment of cruise ships. If a cruise-ship operator charges a $200 fare that covers accommodations and three meals worth $50 during a day in

5

which the cruise ship is docked in a Hawaiʻi port, the cruise-ship operator would owe transient accommodations tax on the full $200. *See* Act 96 § 4.1. By contrast, if a hotel located steps away on land charges the identical $200 for accommodations and three meals worth $50, the hotel would owe transient accommodations tax on only $150. *See* Haw. Admin. R. § 18-237D-1-03(c) (Example 4). On any plausible understanding, that 25% difference constitutes discriminatory treatment of cruise ships that violates the Tonnage Clause. Accordingly, even if the Ninth Circuit concludes that a showing of such discriminatory treatment is required under the Tonnage Clause, the Ninth Circuit is likely to find that such discrimination exists here and that Act 96 is therefore unconstitutional. In anticipation of that likely result, and consistent with Rule 62 of the Federal Rules of Civil Procedure and Rule 8 of the Federal Rules of Appellate Procedure, Plaintiffs respectfully request that this Court enjoin Act 96 pending a decision by the Ninth Circuit in Plaintiffs' appeal.

Plaintiffs recognize that the Court determined just yesterday that Plaintiffs have not demonstrated a likelihood of success and that the Court may be unwilling to revisit that assessment in the similar context of an injunction pending appeal. Plaintiffs therefore request, in the alternative, that the Court follow the approach recently taken by another district court in this circuit in materially similar circumstances and grant a more limited injunction—specifically, an injunction lasting "thirty (30) days" or until the Ninth Circuit "extend[s] this injunction pending

appeal or issue[s] its own," whichever is sooner. *NetChoice*, 761 F. Supp. 3d at 1236. In *NetChoice*, the court considered a challenge to novel requirements on social media companies—requirements that were scheduled to take effect on January 1, 2025. *Id.* at 1234. Although the court declined to grant a preliminary injunction, it nevertheless granted more limited relief pending appeal, explaining that "a court may issue an injunction pending appeal even when it believe[s] its analysis in denying preliminary injunctive relief is correct." *Id.* at 1235 (quotation marks omitted; brackets in original). The court found that doing so is appropriate "when the trial court is charting a new and unexplored ground by rul[ing] on an admittedly difficult legal question and when the equities of the case suggest that the status quo should be maintained." *Id.* at 1236 (quotation marks omitted; brackets in original).

Recognizing that it had faced "novel, difficult, and important" questions and that violations of the First Amendment could cause "great harm," the court found that "an injunction pending appeal is appropriate to allow the opportunity for appellate review of these weighty issues before the law goes into effect." *Id.* It therefore granted a temporary injunction of "thirty (30) days," or until the Ninth Circuit itself decided to grant an injunction pending appeal, whichever was sooner. *Id.* By granting that short injunction, the *NetChoice* court allowed the Ninth Circuit an opportunity to determine whether the law at issue there should go into effect during the appeal.

At a minimum, a similarly limited injunction is appropriate here. As in *NetChoice*, this Court also has grappled with novel and important constitutional and federal-law questions related to a new state statute. Although the Court has disagreed with Plaintiffs (in part) as to how to resolve issues regarding Act 96, this case, too, involves potentially serious irreparable harms if the Ninth Circuit holds differently as to Plaintiffs' Tonnage Clause, Rivers and Harbors Act, and First Amendment claims. *See* ECF 28-1 at 22–23 (describing irreparable harms). As in *NetChoice*, the Court thus has good grounds to permit the Ninth Circuit an opportunity to decide whether Act 96 should take effect pending appeal. If this Court declines to grant a full injunction pending appeal, the Court should therefore grant a limited injunction lasting 30 days or until the Ninth Circuit resolves Plaintiffs' forthcoming request for an injunction pending appeal, whichever is sooner.

In order to allow adequate time for consideration by the Ninth Circuit (if necessary) before Act 96 takes effect on January 1, 2026, Plaintiffs respectfully request that this Court enter a decision on Plaintiffs' motion by 2 p.m. on December 27, 2025.

//

//

//

//

//

DATED:  Honolulu, Hawaiʻi, December 24, 2025.

/s/ Jeffrey S. Portnoy

| | |
|---|---|
| BRADLEY J. BONDI* | JEFFREY S. PORTNOY |
| BENJAMIN W. SNYDER* | TREVER K. ASAM |
| RONALD K. ANGUAS, JR.* | LINDSAY N. MCANEELEY |

Attorneys for Plaintiffs
CRUISE LINES INTERNATIONAL
ASSOCIATION, INC.; HONOLULU
SHIP SUPPLY CO.; KAUAʻI
KILOHANA PARTNERS; and
ALOHA ANUENUE TOURS LLC

* *Pro Hac Vice*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| CRUISE LINES INTERNATIONAL ASSOCIATION, INC.; HONOLULU SHIP SUPPLY CO.; KAUAʻI KILOHANA PARTNERS; and ALOHA ANUENUE TOURS LLC,<br><br>    Plaintiffs,<br><br>    v.<br><br>GARY S. SUGANUMA, in his capacity as Director of Taxation for the State of Hawaiʻi; HAWAIʻI DEPARTMENT OF TAXATION; CHELSIE SAKAI, in her capacity as County Finance Director of the County of Kauaʻi; COUNTY OF KAUAʻI; ANDREW T. KAWANO, in his capacity as Director of the Department of Budget and Fiscal Services for the City and County of Honolulu; CITY AND COUNTY OF HONOLULU; MARCY MARTIN, in her capacity as Director of Finance for the County of Maui; COUNTY OF MAUI; DIANE NAKAGAWA, in her capacity as Director of Finance for the County of Hawaiʻi; and COUNTY OF HAWAIʻI,<br><br>    Defendants. | CIVIL NO. 25-00367-JAO-KJM<br><br>**CERTIFICATE OF SERVICE** |

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this date, true and correct copies of the foregoing document were duly served via CM/ECF on all counsel of record.

DATED:  Honolulu, Hawai'i, December 24, 2025.


BRADLEY J. BONDI*
BENJAMIN W. SNYDER*
RONALD K. ANGUAS, JR.*

/s/ Jeffrey S. Portnoy
JEFFREY S. PORTNOY
TREVER K. ASAM
LINDSAY N. MCANEELEY

Attorneys for Plaintiffs
CRUISE LINES INTERNATIONAL
ASSOCIATION, INC.; HONOLULU
SHIP SUPPLY CO.; KAUA'I
KILOHANA PARTNERS; and
ALOHA ANUENUE TOURS LLC

* *Pro Hac Vice*