No. 25-8057

## UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

CRUISE LINES INTERNATIONAL ASSOCIATION, INC.; HONOLULU SHIP SUPPLY CO.;
KAUAʻI KILOHANA PARTNERS; ALOHA ANUENUE TOURS LLC,

*Plaintiffs-Appellants*,

UNITED STATES OF AMERICA,

*Intervenor-Plaintiff*,

v.

GARY S. SUGANUMA; HAWAIʻI DEPARTMENT OF TAXATION; CHELSIE SAKAI;
COUNTY OF KAUAʻI; ANDREW T. KAWANO; CITY AND COUNTY OF HONOLULU;
MARCY MARTIN; COUNTY OF MARTIN; DIANE NAKAGAWA; COUNTY OF HAWAIʻI,

*Defendants-Appellees*.

On Appeal from the United States District Court
for the District of Hawaiʻi,
No. 1:25-cv-367-JAO-KJM (Judge Jill A. Otake)

### APPELLANTS' OPPOSED MOTION FOR
### INJUNCTION PENDING APPEAL

### EMERGENCY MOTION UNDER CIRCUIT RULE 27-3
### RELIEF REQUESTED BY DECEMBER 31, 2025

Jeffrey S. Portnoy
Trever K. Asam
Lindsay N. McAneeley
CADES SCHUTTE LLP
1000 Bishop Street, Suite 1200
Honolulu, HI 96813
(808) 521-9200

Bradley J. Bondi
Benjamin W. Snyder
Ronald K. Anguas, Jr.
PAUL HASTINGS LLP
2050 M Street, NW
Washington, DC 20036
(202) 551-1700
bensnyder@paulhastings.com

*Counsel for Plaintiffs-Appellants*

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 16. Circuit Rule 27-3 Certificate for Emergency Motion

*Instructions for this form:* *http://www.ca9.uscourts.gov/forms/form16instructions.pdf*

**9th Cir. Case Number(s)** | 25-8057

**Case Name** | Cruise Lines International Ass'n Inc., et al. v. Suganuma, et al.

I certify the following:

The relief I request in the emergency motion that accompanies this certificate is:

> an injunction pending appeal barring enforcement of the notice requirements and registration-fee requirements of Hawaii's Act 96 (2025), which are scheduled to take effect on January 1, 2026.

Relief is needed no later than *(date)*: | December 31, 2025

The following will happen if relief is not granted within the requested time:

> cruise-line members of plaintiff Cruise Lines International Ass'n Inc. will be required to engage in compelled speech in violation of the First Amendment, and will be required to pay unconstitutional registration fees that cannot be recovered once paid because of the sovereign immunity of the State of Hawaii.

I could not have filed this motion earlier because:

> The district court entered its 80-page order on December 23, 2025, and denied an injunction pending appeal on December 24, 2025.

*Feedback or questions about this form? Email us at* *forms@ca9.uscourts.gov*

I requested this relief in the district court or other lower court: ● Yes    ○ No

    If not, why not:

 

I notified 9th Circuit court staff via voicemail or email about the filing of this motion: ● Yes    ○ No

    If not, why not:

 

I have notified all counsel and any unrepresented party of the filing of this motion:

On *(date)*: December 26, 2025

By *(method)*: E-mail

Position of other parties: All Defendants-Appellees Opposed

Name and best contact information for each counsel/party notified:

Kacyn H. Fujii (kacyn.h.fujii@hawaii.gov)
Andrew Scott Michaels (amichaels@kauai.gov)
Daniel M. Gluck (daniel.gluck@honolulu.gov)
Kenton S. Werk (kenton.werk@co.maui.hi.us)
Hannah Ehrig McKee (hannah.mckee@hawaiicounty.gov)
Bradley Craigmyle (bradley.craigmyle@usdoj.gov)

I declare under penalty of perjury that the foregoing is true.

**Signature** | /s/ Benjamin W. Snyder | **Date** | December 27, 2025

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 16**    2    *Rev. 11/21/2019*

Case: 25-8057, 12/27/2025, DktEntry: 3.1, Page 3 of 32

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ...................................................................... ii

INTRODUCTION ...................................................................................... 1

BACKGROUND ........................................................................................ 5

    A.    Act 96's New Registration Requirements, Charges, And
           Compelled-Speech Obligations For Cruise-Ship Operators ................ 5

    B.    Proceedings Below ........................................................................ 7

LEGAL STANDARD ............................................................................... 13

ARGUMENT ........................................................................................... 14

I.    CLIA Is Likely To Succeed On Its Challenges To The Notice
      Requirements And Registration Fees. ............................................. 14

    A.    Act 96 Violates The Tonnage Clause ............................................. 14

    B.    Act 96 Violates The Rivers And Harbors Act. ................................ 18

II.    The Equities Favor An Injunction Pending Appeal To Prevent
       Irreparable Harm While Review of Plaintiffs' Meritorious Claims
       Proceeds. ..................................................................................... 22

CONCLUSION ........................................................................................ 24

Case: 25-8057, 12/27/2025, DktEntry: 3.1, Page 4 of 32

# TABLE OF AUTHORITIES

Page(s)

CASES

*Altria Grp., Inc. v. Good,*
    555 U.S. 70 (2008)..................................................................20

*American Beverage Ass'n v. City & Cnty. of San Francisco,*
    916 F.3d 749 (9th Cir. 2019) ......................................3, 11, 14, 22, 23

*Baird v. Bonta,*
    81 F.4th 1036 (9th Cir. 2023) ................................................14, 23, 24

*Clyde Mallory Lines v. Alabama ex rel. State Docks Comm'n,*
    296 U.S. 261 (1935). Act 96 ......................................................1, 8, 15

*Doe #1 v. Trump,*
    957 F.3d 1050 (9th Cir. 2020) ...................................................4

*E. Bay Sanctuary Covenant v. Biden,*
    993 F.3d 640 (9th Cir. 2021) .....................................................23

*EEOC v. Luce, Forward, Hamilton & Scripps,*
    345 F.3d 742 (9th Cir. 2003) .....................................................20

*Feldman v. Arizona Sec'y of State's Off.,*
    843 F.3d 366 (9th Cir. 2016) .....................................................13

*Knox v. Brnovich,*
    907 F.3d 1167 (9th Cir. 2018) ...................................................20

*Nat'l Ass'n of Wheat Growers v. Bonta,*
    85 F.4th 1263 (9th Cir. 2023) ....................................................4, 23

*Nebraska v. Biden,*
    52 F.4th 1044 (8th Cir. 2022) ....................................................4

*Polar Tankers, Inc. v. City of Valdez,*
    557 U.S. 1 (2009)....................................................9, 16, 17, 18

*Reel Hooker Sportfishing, Inc. v. State, Dep't of Tax'n,*
    236 P.3d 1230 (Haw. App. 2010) ................................................21

*Rodriguez v. Robbins,*
    715 F.3d 1127 (9th Cir. 2013) ...................................................5, 23

*Se. Alaska Conservation Council v. U.S. Army Corps of Eng'rs,*
    472 F.3d 1097 (9th Cir. 2006) ...................................................13, 23

ii

*State v. N. Pac. Fishing, Inc.*,
    485 P.3d 1040 (Alaska 2021) ...................................................................21

*Wendella Sightseeing Co. v. City of Chicago*,
    226 N.E.3d 636 (Ill. App. Ct. 2023) ...........................................3, 22

**CONSTITUTIONAL PROVISION**

U.S. Const. art. I, § 10, cl. 3 .....................................................................8, 15

**STATUTES**

28 U.S.C. § 1341 ........................................................................................11

33 U.S.C. § 5 .............................................................................1, 2, 9, 12, 19

Haw. Act 96 (2025) ...........................................................2, 5, 6, 15, 16, 21

HRS § 237D-4............................................................................................7, 15

**REGULATION**

HAR § 18-237D-1-03 ........................................................................6, 16, 17

**LEGISLATIVE MATERIAL**

148 Cong. Rec. E2143-44 (2002) .............................................................21

**OTHER AUTHORITY**

American plan (noun), Merriam-Webster Dictionary Online,
    https://www.merriam-webster.com/dictionary/American%20plan....................16

Case: 25-8057, 12/27/2025, DktEntry: 3.1, Page 6 of 32

## INTRODUCTION

Scheduled to take effect on January 1, 2026, Hawaiʻi's Act 96 (2025) will impose massive new taxes on the operators of cruise ships that dock at any port in Hawaiʻi, and also will compel them to engage in government-scripted speech to facilitate the new tax regime.  Earlier this week, the U.S. District Court for the District of Hawaiʻi found that there are "serious questions" about whether those provisions violate the Tonnage Clause of the U.S. Constitution, the First Amendment, and the Rivers and Harbors Appropriation Act of 1884 (Rivers and Harbors Act or RHA), 33 U.S.C. § 5(b).  ECF 103 at 54 (Order).  But the court nevertheless denied a pair of preliminary injunction motions filed by the federal government and a group of private plaintiffs, concluding that it was insufficiently certain of the law's unconstitutionality to grant relief.  That denial of injunctive relief was erroneous, and this Court is highly likely to reverse it on appeal.  In the interim, this Court should grant an immediate injunction pending appeal to prevent the irreparable harm that will occur if Act 96 takes effect.

Act 96's incompatibility with the U.S. Constitution and federal law is plain, which presumably explains why no other States have adopted similar laws.  Starting with the Tonnage Clause, the Supreme Court long has recognized that that provision gives Congress (not States) exclusive power to authorize "charge[s] for the privilege of entering, trading in, or lying in a port."  *Clyde Mallory Lines v. Alabama ex rel.*

1

*State Docks Comm'n*, 296 U.S. 261, 265-66 (1935). Act 96 does just that: it imposes a tax on cruise-ship operators based on "days docked at any port in the State." Act 96 § 5.1. The district court nevertheless concluded that the law is likely constitutional because its taxation of cruise ships is similar to Hawai'i's pre-existing taxation of hotels and resorts. But even assuming that a showing of non-discriminatory treatment could save the law, Hawai'i's own regulations establish that cruise ships will be treated materially worse than land-based accommodations. Under Act 96, cruise ships will be taxed on substantial categories of expenses, like included meals and beverages, that are excluded expressly from the tax paid by all-inclusive resorts on land. *See* Order 63. On any reasonable understanding of the Tonnage Clause, that discriminatory treatment renders Act 96 unconstitutional.

Act 96's violation of the RHA is similarly clear. The RHA prohibits States from levying "taxes, tolls, operating charges, fees, or any other impositions whatever" on vessels operating in the navigable waters of the United States, subject to certain inapplicable exceptions. 33 U.S.C. § 5(b). By its terms, that prohibition plainly preempts Act 96, which requires vessel operators to pay taxes and fees for the right to operate accommodations in the navigable waters of Hawai'i's ports. Relying heavily on legislative history and a pair of state-court decisions that construed the RHA narrowly, however, the district court held that Act 96 likely is permissible because the tax is levied upon "the income from the business offered to

the [vessel's] passengers" rather than the vessel itself.  Order 75.  That reasoning is

indefensible.  As another court recently observed in rejecting an identical argument,

allowing a State to avoid the RHA's prohibitions by framing a tax as one on the

vessel operator's revenue, as opposed to the vessel itself, "would render the statute

'rather toothless, indeed meaningless,' and thus 'contrary to the express wishes of

Congress.'"  *Wendella Sightseeing Co. v. City of Chicago*, 226 N.E.3d 636, 645 (Ill.

App. Ct. 2023).

Finally, Act 96 violates the First Amendment by requiring cruise-ship

operators to engage in government-scripted speech to facilitate administration of an

unconstitutional tax.  The district court itself recognized that "[i]f Act 96's charges

are indeed violations of the Constitution or the RHA," then the related compelled-

speech requirement would likewise be "impermissible . . . because there is no

substantial interest in compelling speech related to an unconstitutional law."  Order

49; *see American Beverage Ass'n v. City & Cnty. of San Francisco*, 916 F.3d 749,

755 (9th Cir. 2019) (en banc) (compelled disclosures in the commercial-speech

context must be "'reasonably related' to a substantial governmental interest"

(citation omitted)).  Because Act 96's tax on cruise ships violates the Tonnage

Clause and the RHA, this Court is likely to reverse the district court's denial of relief

on the First Amendment claim, too.

3

In the meantime, this Court should enjoin enforcement of Act 96's registration fees and compelled-speech requirements pending appeal.[1]  Doing so is necessary to prevent irreparable harm, "preserve[] the status quo," and permit "a meaningful decision on the merits" before Act 96 goes into effect.  *Doe #1 v. Trump*, 957 F.3d 1050, 1068, 1070 (9th Cir. 2020); *see Nebraska v. Biden*, 52 F.4th 1044, 1046 (8th Cir. 2022) (granting injunction pending appeal to "preserve the status quo"). Without relief from this Court by January 1, the members of plaintiff Cruise Lines International Association, Inc. (CLIA) will suffer "unquestionabl[e] . . . irreparable injur[ies]" from enforcement of Act 96's unconstitutional compelled speech requirements, *Nat'l Ass'n of Wheat Growers v. Bonta*, 85 F.4th 1263, 1283 (9th Cir. 2023), and the payment of registration fees that the district court acknowledged cannot be recovered later (even if ultimately held unconstitutional).  Defendants, meanwhile, "cannot suffer harm from an injunction that merely ends an unlawful

---

[1] The district court determined that it had jurisdiction to consider all of the United States' claims under the Tonnage Clause and RHA.  Order 36-39.  The court concluded that it also had jurisdiction to consider the First Amendment claims and challenges to Act 96's registration fees brought by the Private Plaintiffs (Appellants here), but that it lacked jurisdiction to consider their Tonnage Clause and RHA claims directly challenging enforcement of the tax itself.  Order 28-36, 39-47. Private Plaintiffs intend to appeal those jurisdictional dismissals, but to simplify and expedite this motion, they seek relief based only on the First Amendment claim and challenges to the registration fees regarding which the court agreed that it had jurisdiction.  The United States has indicated that it intends to move separately for an injunction pending appeal.  Together, the injunctions requested by Private Plaintiffs and the United States would bar all enforcement of Act 96 against cruise-ship operators.

practice." *Rodriguez v. Robbins*, 715 F.3d 1127, 1145 (9th Cir. 2013).  This Court

therefore should enter the injunction immediately.[2]

## BACKGROUND

### A.    Act 96's New Registration Requirements, Charges, And Compelled-Speech Obligations For Cruise-Ship Operators

Hawaiʻi's Act 96 imposes a series of novel and unconstitutional requirements

on cruise ships, scheduled to take effect on January 1, 2026.  Those requirements

include:

*Tax on Cruise Fares*:  Act 96 amended Chapter 237D of the Hawaiʻi Revised

Statutes (HRS) to add a tax of 11% "on all gross rental proceeds derived from cruise

fares prorated by the percentage of days docked at any port in the State in comparison

to the total number of days of the voyage."  Act 96 § 5.1.  The amendment also

authorized additional 3% taxes imposed at the county level in Kauaʻi, Maui,

Hawaiʻi, and Honolulu (collectively, the "Counties").  Order 6.  Cumulatively, Act

96 authorizes a 14% prorated tax for voyages docking in Hawaiʻi ports.[3]

Although framed as an amendment to Hawaiʻi's existing transient

accommodations tax, the new tax on cruise ships goes well beyond the tax that

---

[2] Private Plaintiffs notified Defendants of their intent to file this motion.  Defendants
have indicated that they oppose any injunction pending appeal.

[3] Responsibility for paying the tax rests on the "operator[s] of . . . cruise ship[s],"
Act 96 § 5.1, but Hawaiʻi officials have stated they expect "99%" of the tax to be
passed along to passengers, Order 19.

Hawaiʻi imposes on land-based accommodations. Act 96 defines "[c]ruise fare" to "mean[] the total amount paid . . . for a cruise ship cabin on a cruise ship, inclusive of any mandatory fees imposed . . . for the use of shipboard services, facilities, meals, and onboard entertainment." Act 96 § 4.1. That expansive definition broadens Act 96 to capture significantly more than the value of a passenger's cabin, because "[m]uch of the value of a cruise fare relates to additional products and experiences included in that fare," including the entertainment, meals, and transportation services that Act 96 explicitly covers. ECF 28-3 (Oates Decl.) ¶ 17.

By contrast, Hawaiʻi specifically authorizes all-inclusive hotels and resorts on land to exclude from their tax base "[c]harges for guest amenities," such as "meals" and "beverages." Hawaiʻi Administrative Rules (HAR) § 18-237D-1-03(c)(3). Regulations promulgated by the Hawaiʻi Department of Taxation include an "example" illustrating that exclusion for land-based accommodations:

> Example 4. Paradise Hotel rents a room to Ms. Mainland on January 1, 1999, under the American Plan and charges Ms. Mainland $200. To compute the transient accommodations tax, Paradise shall deduct the cost of meals from the total price charged Ms. Mainland. If the cost reasonably attributed to meals is $50, then the cost of the room is $150.

*Id.* During a hearing in the district court, counsel for the Department of Taxation therefore acknowledged that Hawaiʻi uses "a different definition [of gross rental proceeds for] the land-based accommodations" than it does for cruise ships. 12/17/2025 Hr'g Tr. at 30:22-23.

***Registration Fees & Registration Requirements***: Act 96 also subjects cruise-ship operators to a requirement that, as "a condition precedent to engaging or continuing in the business of furnishing transient accommodations," they "register with the [Director of the Hawai'i Department of Taxation] the name and address of each [covered] place of business" and "make a one-time payment" of "$15 for each registration for transient accommodations consisting of six or more units." HRS § 237D-4(a)(2).

***Compelled-Speech Requirements***:    Finally, Act 96 compels cruise-ship operators to engage in speech in two contexts. *First*, cruise-ship operators must "conspicuously display[]" information about their registration on each of their ships. HRS  § 237D-4(b).    *Second*, cruise lines must include "[t]he registration identification number or an electronic link to the registration identification number" in "[a]ny advertisement, including an online advertisement," for cruises that dock in Hawai'i.  HRS § 237D-4(c).

### B.    Proceedings Below

1.    Following Hawai'i's adoption of Act 96, Appellants—CLIA (an industry group representing cruise lines) and three Hawai'i businesses that depend heavily on cruise traffic—filed suit against the state and county officials and agencies charged with enforcing Act 96's provisions.  *See* ECF 1 (Complaint). Appellants alleged that Act 96 violates the U.S. Constitution's Tonnage Clause, the

7

First Amendment, and the RHA.  *See generally id.*  The United States subsequently

intervened as a plaintiff to pursue its interests in ensuring compliance with the

Constitution and the supremacy of federal laws.  *See* ECF 69-1 (motion to intervene);

ECF 90 (granting intervention).[4]

Private Plaintiffs and the United States (together, Plaintiffs) both moved for

preliminary injunctions on multiple grounds.  First, they contended that Act 96

violates the Tonnage Clause, which provides that "[n]o State shall, without the

Consent of Congress, lay any Duty of Tonnage."  U.S. Const. art. I, § 10, cl. 3.

Plaintiffs explained that the Supreme Court has held that the Clause's requirement

of congressional approval "embrace[s] all taxes and duties regardless of their name

or form . . . which operate to impose a charge for the privilege of entering, trading

in, or lying in a port."  *Clyde Mallory*, 296 U.S. at 265-66.  And Plaintiffs further

observed that the Tonnage Clause violation is particularly clear because Act 96

would subject cruise ships to harsher taxes than all-inclusive resorts and hotels,

thereby failing to treat cruise ships in "*the same manner*" as land-based property,

*Polar Tankers, Inc. v. City of Valdez*, 557 U.S. 1, 11-12 (2009) (plurality op.).

Second, Plaintiffs argued that Act 96's taxes and registration fees also violate

the Rivers and Harbors Act, which provides that "[n]o taxes, tolls, operating charges,

---

[4] The United States explained that its intervention was delayed by the recent lapse
in appropriated funds.  *See* ECF 69-1 at 6.

fees, or any other impositions whatever shall be levied upon or collected from any vessel or other water craft, or from its passengers or crew, by any non-Federal interest, if the vessel or water craft is operating on any navigable waters subject to the authority of the United States," subject to certain narrow exceptions. 33 U.S.C. § 5(b). Because Act 96 imposes taxes and fees on vessels for operating accommodations in any Hawai'i port, and does not come within any of the RHA's exceptions, Plaintiffs argued that it is clearly preempted.

Finally, CLIA asserted a First Amendment challenge to Act 96's compelled-speech provisions, explaining that because the underlying tax is unconstitutional, Hawai'i has no substantial interest in requiring CLIA's cruise-line members to engage in government-mandated speech to facilitate its enforcement.

Private Plaintiffs also filed declarations establishing that Act 96 will cause irreparable harm once it goes into effect. CLIA's members observed that the law's compelled-speech requirements would cause serious First Amendment harms, including because "conspicuous" state-mandated advertising disclosures would result in "less space on those advertisements to promote [a cruise line's] own message." *E.g.*, ECF 28-3 ¶ 41. Declarations by the cruise lines and local Hawai'i businesses also explained that by increasing the cost of cruises to Hawai'i and reducing passenger demand for those cruises, Act 96 will cause business losses that cannot be recovered after final judgment because of Hawai'i's sovereign immunity.

9

*See*, *e.g.*, ECF 79-1 ¶¶ 8-9 (indicating that 2026 bookings were down 30% compared to 2025 after one cruise-ship operator began including Act 96's 14% tax).

2.    On December 23, 2025, the district court entered an order denying both preliminary injunction motions and dismissing some of Private Plaintiffs' claims (not at issue in this motion) on jurisdictional grounds.  Order 1-80.[5]

As relevant here, the district court found that it had jurisdiction to hear: (i) CLIA's First Amendment challenge to the compelled-speech requirements; (ii) CLIA's Tonnage Clause and RHA challenges to the registration fees; and (iii) the United States' Tonnage Clause and RHA challenges to both the 14% tax and the registration fees.  Order 36-47.  Because Hawaiʻi offers no clear mechanism for obtaining judicial review of those claims in state court, the court rejected Defendants' arguments that it should refuse to exercise jurisdiction over them under the Tax Injunction Act, 28 U.S.C. § 1341, or principles of comity.  Order 40-41.

Turning to the merits, the district court stated that it viewed the case as a "close call" and "recognize[d] there are serious questions as to whether Act 96's State Tax, County Surcharges, and Registration Fee violate the Tonnage Clause or are preempted by the RHA."  Order 54, 69.  The court also agreed that "[i]f Act 96's

---

[5] As noted above, *see* n.1, *supra*, this motion seeks relief only as to claims that the district court addressed on the merits after concluding that it had jurisdiction to consider them.  In the interest of brevity and expedition, this motion therefore does not describe the court's jurisdictional determinations as to the other claims, though Private Plaintiffs intend to address those claims in their opening brief.

charges are indeed violations of the Constitution or the RHA, CLIA plausibly alleges that the Notice Requirements constitute impermissible compelled speech because there is no substantial interest in compelling speech related to an unconstitutional law." Order 49 (citing *American Beverage Ass'n*, 916 F.3d at 756).[6] And the court declined to dismiss any of those challenges under Rule 12(b)(6), acknowledging that it might ultimately hold that the relevant provisions of Act 96 are unconstitutional or preempted. *See* Order 4-5, 47-53.

The district court concluded, however, that Plaintiffs had not established a sufficient likelihood of success on the merits to warrant entry of a preliminary injunction. *See* Order 53-76. On the Tonnage Clause claims, the court understood dictum in *Polar Tankers*—along with a related plurality opinion there—to suggest a focus on whether the challenged charges on a vessel are comparable to charges imposed on land-based property. Order 62. And while the court acknowledged "differences in how [Hawaiʻi's] tax is calculated for cruises vs. land-based accommodations," it held that it was not "persuade[d] . . . at this early stage that the differential treatment functions as per se discrimination." *Id.*

---

[6] The district court elsewhere commented that CLIA's First Amendment claim "derives entirely from CLIA's Tonnage Clause challenge." Order 41. But CLIA consistently maintained—as the court's statement above reflects—that if Act 96 violated the RHA, the Supremacy Clause would render enforcement of Act 96 unconstitutional without regard to the Tonnage Clause challenge, providing an independent basis for CLIA's First Amendment claim. *See* ECF 56 at 24 n.5.

11

On the RHA claims, the district court concluded that reading the statute literally to prohibit all non-federal "impositions whatever" on any "vessel . . . operating on any navigable waters subject to the authority of the United States," 33 U.S.C. § 5(b), would "lead to absurd results and prevent any taxes whatsoever (e.g., general business or sales taxes) on any boat that ever spent time in one of Hawaii's ports." Order 71. The court instead held that the RHA contains an implicit exception for "generally applicable" taxes based "on the income from the business offered to the passengers" rather than on the passengers themselves. Order 75. In support of that implicit exception, the court pointed to the "general presumption that Congress does not intend to preempt state law," Order 70, as well as one legislator's statement that adoption of the RHA was intended to "address[] the current problem" of local jurisdictions taxing vessels that were "merely transiting or making innocent passage through navigable waters" bordering the locality, Order 73 (citation and emphasis omitted).

Having concluded that the Tonnage Clause and RHA claims are not sufficiently likely to succeed, the district court found that the First Amendment challenge based on those claims is also unlikely to succeed. Order 76. Similarly, while acknowledging that Plaintiffs likely could establish irreparable harm if they showed that Act 96 is unconstitutional, the court concluded that its doubts about the merits of the constitutional claims meant that Plaintiffs had not "demonstrate[d] a

*likelihood* of irreparable harm." *Id.* The court therefore denied the preliminary injunction motions. Order 79.

3.      On December 24, 2025, Plaintiffs filed motions for injunctions pending appeal. ECF 106, 107. The district court denied those motions the same day. ECF 108.

## LEGAL STANDARD

"In deciding whether to grant an injunction pending appeal," the Court "balances the plaintiff's likelihood of success against the relative hardship to the parties," *Se. Alaska Conservation Council v. U.S. Army Corps of Eng'rs*, 472 F.3d 1097, 1100 (9th Cir. 2006) (quotations omitted), and considers factors "similar to th[ose] employed by district courts in deciding whether to grant a preliminary injunction," *Feldman v. Arizona Sec'y of State's Off.*, 843 F.3d 366, 367 (9th Cir. 2016) (en banc). Those factors are "whether a movant has established that (1) he is likely to succeed on the merits of his claim, (2) he is likely to suffer irreparable harm absent the preliminary injunction, (3) the balance of equities tips in his favor, and (4) a preliminary injunction is in the public interest." *Baird v. Bonta*, 81 F.4th 1036, 1040 (9th Cir. 2023).

13

## ARGUMENT

## I.    CLIA Is Likely To Succeed On Its Challenges To The Notice Requirements And Registration Fees.

CLIA is highly likely to succeed on appeal.  As the district court recognized (and Defendants did not dispute), CLIA's First Amendment claim is "inextricably intertwined with" the merits of the Tonnage Clause and RHA challenges to Act 96's 14% tax.  Order 42.  "If Act 96's charges are indeed violations of the Constitution or the RHA," then "the Notice Requirements constitute impermissible compelled speech because there is no substantial interest in compelling speech related to an unconstitutional law."  Order 49 (citing *American Beverage Ass'n v. City & Cnty. of San Francisco*, 916 F.3d 749, 756 (9th Cir. 2019) (en banc)).  And for the reasons that follow, the Tonnage Clause and RHA each independently bars Defendants from imposing taxes and registration fees for the privilege of operating in Hawaiʻi ports. This Court therefore is very likely to reverse the district court's denial of a preliminary injunction.

### A.    Act 96 Violates The Tonnage Clause.

The Supreme Court has held that the "prohibition against tonnage duties . . . embrace[s] all taxes and duties regardless of their name or form, and even though not measured by the tonnage of the vessel, which operate to impose a charge for the privilege of entering, trading in, or lying in a port."  *Clyde Mallory Lines v. Alabama ex rel. State Docks Comm'n*, 296 U.S. 261, 265-66 (1935).    That settled

14

understanding of tonnage duties easily covers Act 96, which imposes two separate charges for the privilege of lying in port:  (1) a registration fee that must be paid "as a condition precedent to engaging or continuing in the business of furnishing transient accommodations" in any Hawai'i port, HRS § 237D-4(a); and (2) the 14% tax calculated based on a cruise ship's "days docked at any port in the State," Act 96 § 5.1.

The district court nevertheless concluded that Act 96 is likely constitutional because it resembles taxes that Hawai'i imposes on land-based hotels and resorts. Order 69.  That conclusion was deeply flawed.  As an initial matter, the text of the Tonnage Clause bars States from "lay[ing] *any* Duty of Tonnage" without Congress's permission.  U.S. Const. art. I, § 10, cl. 3 (emphasis added).  Where, as here, a tax fits the historical definition of a tonnage duty set out above, "that should be the end of the matter," "regardless of how that duty compares to other commercial taxes."  *Polar Tankers*, 557 U.S. at 17-18 (2009) (Roberts, C.J., joined by Thomas, J., concurring in the judgment).

The district court held otherwise based on dicta in *Polar Tankers* suggesting that the Tonnage Clause might permit "'taxation' of vessels 'as property *in the same manner* as other personal property owned by citizens of the State.'"  *Id.* at 12 (plurality op.) (citation omitted); *see id.* at 9 (majority op.) (similar); Order 59-62. But even if that dicta were correct (or binding), it is inapplicable to the 14% tax here

15

because that tax plainly does not apply to cruise ships "in the same manner" as it does to land-based accommodations.[7]

As explained above, *see* pp. 5-6, *supra*, Act 96 requires cruise-ship operators to pay the 14% tax on the value of not only onboard accommodations, but also everything else encompassed in an all-inclusive cruise fare—expressly covering "shipboard services, facilities, meals, and onboard entertainment."  Act 96 § 4.1. With respect to all-inclusive (or "American plan") hotels and resorts on land, by contrast, Hawaiʻi "[e]xclude[s]" from taxation the portion of the overall charge attributable to "guest amenities," which specifically include "meals" and "beverages."   HAR § 18-237D-1-03(c); *see* American plan (noun), Merriam-Webster Dictionary Online ("a hotel plan whereby the daily rates cover the costs of the   room   and   three   meals"),   https://www.merriam-webster.com/dictionary/ American%20plan.   An illustrative example in the regulations recognizes that excluding those "amenities" can reduce the tax owed substantially, hypothesizing that removing the value of meals alone could lower a hotel's tax by 25%.  *See* HAR § 18-237D-1-03(c) (Example 4).  Act 96 thus results in significantly higher taxes for cruise ships than for hotels and resorts.

---

[7] Unlike the 14% tax, the registration fees charged to cruise-ship operators are identical to those charged to hotels.  Order 67-68.  Even if that were enough to preserve the registration fees under the Tonnage Clause, *but see Polar Tankers*, 557 U.S. at 17-18 (Roberts, C.J., concurring in the judgment), the registration fees would still be unlawful under the RHA for reasons discussed below.

The district court failed to grapple meaningfully with those differences. It stated that it "views the method of tax calculation for cruise lines as at least similar to that for land-based accommodations" and asserted that "any difference stems from distinctions between how those businesses typically charge." Order 69. But as the provisions just discussed show, that is incorrect: If a hotel and cruise ship each charged $200 for an all-inclusive package that includes accommodations worth $150 and three meals worth $50, the hotel would pay a 14% tax on just $150, while the cruise-ship operator would pay the 14% tax on the full $200. *See* HAR § 18-237D-1-03(c) (Example 4). That differential treatment is fatal to Act 96. Even under the broadest version of the *Polar Tankers* dicta, a "tax on ships escapes the scope of the Tonnage Clause *only when* that tax is imposed upon ships '*in the same manner*' as it is imposed on other forms of property." 557 U.S. at 15 (plurality op.) (emphases added). Because Act 96's 14% tax on cruise ships plainly does not satisfy that requirement, it is unconstitutional.

The district court worried that enjoining enforcement of Act 96 against cruise-ship operators would give them "preferential treatment over land-based businesses offering short-term accommodations." Order 69. But the same argument could have been made in *Polar Tankers*. There, the defendant government pointed to other taxes applicable to land-based property that it contended were similar to the tax imposed on oil tankers. *See* 557 U.S. at 12-14 (plurality op.). In a sense, striking

17

down the tax on oil tankers while leaving those other taxes in place gave the tankers preferential treatment, because they were freed from taxation while the other property was not.  But any concern about preferential treatment did not stop the Supreme Court from enforcing the Tonnage Clause against the unconstitutional tax on vessels there, *see id.* at 16 (majority op.), and it should not have stopped the district court from doing so here, either.

### B.    Act 96 Violates The Rivers And Harbors Act.

Act 96's charges on cruise ships also violate the RHA.  There, Congress provided that "[n]o taxes, tolls, operating charges, fees, or any other impositions whatever shall be levied upon or collected from any vessel or other water craft, or from its passengers or crew, by any non-Federal interest, if the vessel or water craft is operating on any navigable waters subject to the authority of the United States." 33 U.S.C. § 5(b).  By its plain terms, that statutory prohibition clearly covers the registration fees and 14% tax that Act 96 levies on cruise ships for the privilege of operating accommodations in the navigable waters of any Hawai'i port.  *See* U.S. Mot. for Preliminary Injunction 10 (ECF 97-1) (explaining that "Hawaii's ports are part of the navigable waters subject to the authority of the United States" and that both the 14% "surcharge and the registration fee" are therefore covered by the RHA). And while the RHA contains three express exceptions, *see* 33 U.S.C. § 5(b)(1)-(3), Defendants never suggested that any of them apply to Act 96, *see* Order 71 n.12.

The district court should therefore have enforced the RHA's broad "no . . . impositions whatever" language and found Act 96 preempted.

Rather than follow that path, though, the district court declared that applying the statute's text as written "would lead to absurd results" such as barring application of "general business or sales taxes" to vessels. Order 71. The court therefore turned to the general presumption against preemption; a statement by a single legislator during debates on the RHA; and a pair of state-court decisions barely mentioned by the parties. *See* Order 70-76. From those materials, the court reasoned that Act 96 is likely permissible under the RHA because it imposes a generally applicable tax "based on the income from the business offered to the passengers . . . rather than an explicit charge for the passenger herself." Order 75.

That analysis was wrong at every turn. To start, "there is no presumption against preemption when the State regulates in an area such as 'national and international maritime commerce.'" *Knox v. Brnovich*, 907 F.3d 1167, 1174 (9th Cir. 2018) (citation omitted). Reliance on such a presumption here therefore was misguided. Moreover, courts employ the presumption only "when the text of a pre-emption clause is susceptible of more than one plausible reading." *Altria Grp., Inc. v. Good*, 555 U.S. 70, 77 (2008). Because neither the district court nor Defendants identified any plausible reading of the RHA's text that would not cover Act 96's charges, the presumption would not save Act 96 even if it did apply in this context.

19

The district court's resort to legislative history was inappropriate for the same reason. *See*, *e.g.*, *EEOC v. Luce, Forward, Hamilton & Scripps*, 345 F.3d 742, 753 (9th Cir. 2003) (en banc). But in any event, the legislative history supports, rather than undermines, the RHA's preemptive effect. The court emphasized a single member's statement that the "problem" motivating adoption of the RHA was "local jurisdictions seeking to impose taxes and fees on vessels merely transiting or making innocent passage through navigable waters subject to the authority of the United States." Order 73 (citation and emphasis omitted). But even that single member did not believe that the RHA's effect would be limited to that narrow set of taxes; on the contrary, he recognized that because of the broad language Congress used, "[g]enerally, taxes will not be allowed under this section," with non-federal interests permitted to "impose taxes or fees only under an existing exception under the Water Resources Development Act or under extremely limited circumstances in which reasonable fees can be charged on a fair and equitable basis for the cost of service actually rendered to the vessel." 148 Cong. Rec. E2143-44 (2002) (Rep. Young). That discussion thus demonstrates that the prohibition on most local taxes that the district court dismissed as an "absurd result[]" to be avoided at all costs, Order 71, was in fact exactly what members of Congress anticipated from the RHA's broadly worded text.

Finally, the district court also erred in its reliance on a pair of state-court decisions that the parties barely cited (*see Reel Hooker Sportfishing, Inc. v. State, Dep't of Tax'n*, 236 P.3d 1230, 1235-36 (Haw. App. 2010)) or did not cite at all (*State v. N. Pac. Fishing, Inc.*, 485 P.3d 1040 (Alaska 2021)). Those decisions are both distinguishable, in that neither involved a law like Act 96 that imposed charges specifically for the privilege of being "docked at any port in the State." Act 96 § 5.1. And more fundamentally, those decisions suffer from the same flaws already discussed in connection with the court's decision here: Failure to give effect to the statutory text, undue (and inaccurate) focus on the legislative history, and elevation of judicial policy concerns over the law that Congress actually adopted. For those reasons, a recent decision in Illinois concluded that "*Reel Hooker* . . . was wrongly decided" and declined to follow *North Pacific Fishing* because it "engaged in the same impermissible analysis as . . . *Reel Hooker*," focusing on "the comments of a single congressperson" rather than the actual statutory text. *Wendella Sightseeing Co.*, 226 N.E.3d at 655, 657. To the extent that the district court was looking for guidance, it should have relied on the *Wendella* court's extended decision holding that the RHA's statutory text barred application of a generally applicable amusement tax to river-boat tours, *see id.* at 646-59, rather than the legislative-history-focused decisions in *Reel Hooker* and *North Pacific Fishing*. Doing so would have confirmed that the RHA also preempts Act 96 in the similar circumstances here.

21

* * *

For all of those reasons, this Court is very likely to conclude that Act 96's 14% tax and registration fees violate federal law, and that for First Amendment purposes Hawai'i therefore has no substantial interest in compelling CLIA's members to engage in government-scripted speech to facilitate enforcement of the tax. *See* Order 49; *American Beverage Ass'n*, 916 F.3d at 755.

## II. The Equities Favor An Injunction Pending Appeal To Prevent Irreparable Harm While Review of Plaintiffs' Meritorious Claims Proceeds.

Once this Court corrects the district court's view of the merits, it is clear that the equities and balance of harms overwhelmingly favor a limited injunction preventing Act 96's compelled-speech requirements and registration fees from taking effect during this appeal. *See Se. Alaska Conservation Council*, 472 F.3d at 1100.

Absent an injunction against Act 96's compelled-speech requirements, CLIA's members will suffer First Amendment harms for months. The "deprivation of 'First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.'" *Wheat Growers*, 85 F.4th at 1283; *see American Beverage Ass'n*, 916 F.3d at 758 (recognizing that "[a] colorable First Amendment Claim is irreparable injury sufficient to merit the grant of relief"). And enforcement of the registration-fee provision would likewise result in irreparable harm, because

Hawai'i provides no clear mechanism for recovering those fees once paid, *see* Order 45-46, and sovereign immunity would prevent CLIA's members from recovering them in federal court, *see E. Bay Sanctuary Covenant v. Biden*, 993 F.3d 640, 677 (9th Cir. 2021) (holding that monetary losses that cannot be recovered because of sovereign immunity are irreparable).

Defendants, by contrast, have no cognizable interest in immediate enforcement of Act 96. Government defendants "cannot suffer harm from an injunction that merely ends an unlawful practice," *Rodriguez v. Robbins*, 715 F.3d 1127, 1145 (9th Cir. 2013), and "[i]t is always in the public interest to prevent the violation of a party's constitutional rights," *Baird*, 81 F.4th 1042. For that reason, this Court's "caselaw clearly favors granting preliminary injunctions to a plaintiff . . . who is likely to succeed on the merits of his [constitutional] claim." *Id.*

This Court should preserve the status quo and allow itself time to consider the important issues raised by Act 96. Plaintiffs' motion for an injunction pending appeal should be granted.

## CONCLUSION

Plaintiffs respectfully request that this Court enjoin Defendants from enforcing Act 96's registration fees and compelled speech requirements against cruise-ship operators during the pendency of this appeal.


Dated:  December 27, 2025                    Respectfully submitted,

                                            */s/ Benjamin W. Snyder*
Jeffrey S. Portnoy                          Bradley J. Bondi
Trever K. Asam                              Benjamin W. Snyder
Lindsay N. McAneeley                        Ronald K. Anguas, Jr.
CADES SCHUTTE LLP                           PAUL HASTINGS LLP
1000 Bishop Street, Suite 1200              2050 M Street, NW
Honolulu, HI  96813                         Washington, DC  20036
(808) 521-9200                              (202) 551-1700
                                            bensnyder@paulhastings.com

*Counsel for Plaintiffs-Appellants*

## CERTIFICATE OF COMPLIANCE

This motion complies with the type-volume limitation of Federal Rule of Appellate Procedure 27(d)(2) and Circuit Rule 32-3 because it contains 5,595 words, excluding the parts exempted by Federal Rule of Appellate Procedure 32(f).

This motion also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5) and (6) because it was prepared in a proportionally spaced typeface using Microsoft Word with 14-point, Times New Roman font.

*/s/ Benjamin W. Snyder*
Benjamin W. Snyder

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing motion with the Clerk of Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on December 27, 2025.  I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Pursuant to Circuit Rule 27-3, all counsel of record were also served by email, and a copy of the motion was sent by email to the Court's emergency motions unit.

*/s/ Benjamin W. Snyder*
Benjamin W. Snyder