Nos. 25-8057 and 25-8058

_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

_____

CRUISE LINES INTERNATIONAL ASSOCIATION, INC., *et al.*,

*Plaintiffs-Appellants*,

and

UNITED STATES OF AMERICA,

*Plaintiff-Intervenor/Appellant*,

v.

GARY S. SUGANUMA, *et al.*,

*Defendants-Appellees*,

Appeal from the United States District Court for the District of Hawaiʻi
No. 1:25-cv-00367-JAO-KJM (Hon. Jill A. Otake)

_____

DEFENDANTS' CONSOLIDATED OPPOSITION TO MOTIONS FOR
INJUNCTION PENDING APPEAL FILED BY PLAINTIFFS/APPELLANTS
CRUISE LINES INTERNATIONAL ASSOCIATION, INC. *et al.* AND
PLAINTIFF-INTERVENOR/APPELLANT UNITED STATES OF AMERICA

_____

ANNE E. LOPEZ        7609 (Hawaiʻi)
Attorney General of Hawaiʻi

(Counsel continued on next page)

NATHAN S.C. CHEE          6368
KACYN H. FUJII            12006
MICHAEL D. DUNFORD        10346
Deputy Attorneys General
Department of the Attorney General
State of Hawai'i
Hale Auhau Building
425 Queen Street
Honolulu, HI 96813
Telephone: (808) 586-1470
Email:      nathan.s.chee@hawaii.gov
            kacyn.h.fujii@hawaii.gov
            michael.d.dunford@hawaii.gov

Attorneys for Defendants/Appellees
GARY S. SUGANUMA, in his
capacity as Director of Taxation for
the State of Hawai'i, and HAWAI'I
DEPARTMENT OF TAXATION


DANA M.O. VIOLA           6095
Corporation Counsel
DANIEL M. GLUCK           7959
NIKKI LOH                 11448
MOANA A. YOST             7738
Deputies Corporation Counsel
1001 Bishop Street, Suite 2020
Honolulu, Hawai'i 96813
Telephone: (808) 768-5233/-5236/-5158
Email:      daniel.gluck@honolulu.gov
            nikki.loh@honolulu.gov
            moana.yost@honolulu.gov

Attorneys for Defendants/Appellees
ANDREW T. KAWANO, in his
capacity as Director of the
Department of Budget and Fiscal
Services for the City and County of
Honolulu, and CITY AND COUNTY
OF HONOLULU

HANNAH EHRIG MCKEE        11379
LERISA L. HEROLDT           7519
STEVEN K. IDEMOTO          9013
Deputies Corporation Counsel
Office of Corporation Counsel
101 Aupuni Street, #325, Hilo, HI 96720
Email: hannah.mckee@hawaiicounty.gov
       lerisa.heroldt@hawaiicounty.gov
       steven.idemoto@hawaiicounty.gov

Attorneys for Defendants/Appellees
DIANE NAKAGAWA, in her
capacity as Director of Finance for the
County of Hawai'i, and COUNTY OF
HAWAI'I

ANDREW SCOTT MICHAELS  10407
Deputy County Attorney
Office of the County Attorney
4444 Rice Street, Suite 220
Lihue, HI 96766
Email:      amichaels@kauai.gov

Attorney for Defendants/Appellees
CHELSIE SAKAI, in her capacity as
County Finance Director of the
County of Kaua'i, and COUNTY OF
KAUA'I

KENTON S. WERK        7831
Deputy Corporation Counsel
Department of the Corporation Counsel
200 S. High St., Kalana O Maui Bldg, 3rd Fl
Wailuku, HI 96793
Email:      kenton.werk@co.maui.hi.us

Attorney for Defendants/Appellees
MARCY MARTIN, in her capacity as
Director of Finance for the County of
Maui, and COUNTY OF MAUI

# TABLE OF CONTENTS

TABLE OF CONTENTS .......................................................................... i

TABLE OF AUTHORITIES ................................................................... ii

INTRODUCTION .................................................................................1

BACKGROUND...................................................................................3

LEGAL STANDARD ............................................................................5

ARGUMENT .......................................................................................6

I.      Neither CLIA nor the United States has shown a likelihood of success on the merits. ........................................................................6

      A.      The United States lacks standing. ....................................6

      B.      The Tonnage Clause claims are unlikely to succeed. ......................7

      C.      The preemption claims under the Rivers and Harbors Act are unlikely to succeed. ........................................................12

      D.      The First Amendment claim depends entirely on the constitutionality of the underlying tax and is therefore unlikely to succeed. .........................................................16

II.     Appellants have made no showing of irreparable harm. ...........................17

III.    The public interest and balance of harms favor the State. .......................19

CONCLUSION ...................................................................................21

CERTIFICATE OF COMPLIANCE.......................................................23

Case: 25-8057, 12/30/2025, DktEntry: 8.1, Page 4 of 30

## TABLE OF AUTHORITIES

**Cases**

*Abbott v. Perez*, 585 U.S. 579 (2018) ......................................................23

*Alaska Conservation Council v. U.S. Army Corps of Eng'rs.*, 472 F.3d 1097 (9th Cir. 2006) ........................................................................................5, 6

*All. for the Wild Rockies v. Pena*, 865 F.3d 1211 (9th Cir. 2017).........................23

*Arkansas v. Farm Credit Services of Cent. Ark.*, 520 U.S. 821 (1997)........ 7, 21, 22

*Baird v. Bonta*, 81 F.4th 1036 (9th Cir. 2023).........................................................21

*Bates v. Dow Agrosciences LLC*, 544 U.S. 431 (2005)...........................................17

*Clyde Mallory Lines v. State of Alabama ex rel. State Docks Comm'n*, 296 U.S. 261 (1935)........................................................................................8

*Complete Auto Transit, Inc. v. Brady*, 430 U.S. 274 (1977) ......................................4

*De Buono v. NYSA–ILA Med. and Clinical Serv. Fund*, 520 U.S. 806 (1997). 14, 18

*Feldman v. Ariz. Secretary of State's Office*, 843 F.3d 366 (9th Cir. 2016) ............5

*Florida Lime & Avocado Growers, Inc. v. Paul,* 373 U.S. 132 (1963)...................14

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167 (2000) ........................................................................................7

*Janus v. Am. Fed'n of State, Cnty., & Mun. Emps., Council 31*, 585 U.S. 878 (2018) ........................................................................................21

*Lake v. Fontes*, 83 F.4th 1199 (9th Cir. 2023)...........................................................7

*Lil' Man in the Boat, Inc. v. City & Cnty. of San Francisco*, 5 F.4th 952 (9th Cir. 2021) ........................................................................................15

*Lil' Man In The Boat, Inc. v. City & Cnty. of San Francisco*, No. 17-CV-00904-JST, 2019 WL 8263440 (N.D. Cal. Nov. 26, 2019)..................................... 15, 16

*Maryland v. King*, 567 U.S. 1301 (2012) ...............................................................23

ii

*Medtronic, Inc. v. Lohr*, 518 U.S. 470 (1996) ........................................................14

*Polar Tankers, Inc. v. City of Valdez*, 557 U.S. 1 (2009) ........................ 8, 9, 10, 13

*Reel Hooker Sportfishing, Inc. v. State, Dep't of Tax'n*, 236 P.3d 1230 (Haw. Ct. App. 2010) ...........................................................................................18

*Rosewell v. LaSalle Nat'l Bank*, 450 U.S. 503 (1981).............................................21

*S. Dakota v. Wayfair*, 585 U.S. 162 (2018) ..............................................................4

*State v. N. Pac. Fishing, Inc.*, 485 P.3d 1040 (Alaska 2021) ........................... 17, 18

*Washington v. Trump*, No. 25-807, 2025 WL 553485 (9th Cir. Feb. 19, 2025) .......2

*Whitmore v. Arkansas*, 495 U.S. 149 (1990) .............................................................7

*Wyeth v. Levine*, 555 U.S. 555 (2009) ....................................................................15

**Statutes**

28 U.S.C. § 1341 .......................................................................................................4

33 U.S.C. § 5(b) ............................................................................................. 13, 14, 15

Haw. Rev. Stat. § 237D-1 ........................................................................................10

Haw. Rev. Stat. § 237D-4 .....................................................................................9, 16

Haw. Rev. Stat. § 237D-4(a) .....................................................................................8

Haw. Rev. Stat. § 237D-4(b) ................................................................................3, 16

Haw. Rev. Stat. § 237D-4(c) ................................................................................3, 16

Haw. Rev. Stat. § 40-35 ...........................................................................................17

**Regulations**

Haw. Admin. R. § 18-237D-1-03(c) ................................................................. 10, 11

**Other Authorities**

*American plan*, Merriam-Webster, https://www.merriam-
    webster.com/dictionary/American%20plan..........................................................12

*Operate*, Merriam-Webster, https://www.merriam-webster.com/dictionary/operate
    ................................................................................................................................16

iv

## INTRODUCTION

Plaintiffs-Appellants (collectively, "CLIA"),[1] claim that there are two emergencies justifying the extraordinary relief of an injunction pending appeal. The first is that without emergency relief, CLIA's member businesses must pay a one-time registration fee of $15 to operate transient accommodations in Hawai'i. This small registration fee is required of all transient accommodation providers in the state. Having to spend $15 to file a document with a state agency, as all other transient accommodation providers must do, is not an emergency.

The second alleged emergency is that CLIA's members must certify compliance with the registration requirement on their ships and in their advertisements, which CLIA claims constitutes compelled speech. But that speech claim, in CLIA's own telling, rises and falls with their challenge to the transient accommodation tax, and CLIA chose not to ask this Court to consider its challenge to the tax in its emergency motion.

The United States makes abstract claims regarding its sovereign interests in support of its emergency motion, but the United States is unlikely to succeed on the merits, and, as the District Court concluded, has failed to show that a

---

[1] Plaintiffs-Appellants include Cruise Lines International Association, Inc., Honolulu Ship Supply Co., Kaua'i Kilohana Partners, and Aloha Anuenue Tours LLC. This brief uses the term "Appellants" to refer collectively to Plaintiff-Appellants and Plaintiff-Intervenor/Appellant United States.

"'patchwork' system of state laws would develop before this case reaches final judgment, let alone that such temporary 'undermining' of uniformity could not be undone."  Order (ECF No. 103) at 78.  The United States' vague claims that it will be "irreparably harmed" by Hawaii's tax law—to which it is not subject—fail to demonstrate why this matter cannot wait for briefing and merits panel consideration in the preliminary injunction appeal.

The District Court denied Appellants the injunctive relief they seek in an 80-page decision (ECF No. 103) after holding two hearings (*see* ECF Nos. 72, 101) and receiving multiple supplemental briefs (*see* ECF Nos. 76–79, 83–85).  The District Court thoroughly analyzed the *Winter* factors, concluding Appellants were not likely to succeed on the merits, had not shown a likelihood of irreparable harm, and the State of Hawaiʻi (and its counties) faced losing "potentially millions of dollars in valid tax revenue," while any taxes paid, on the other hand, could be challenged and recovered in state court proceedings if eventually found to be improper.  ECF No. 103 at 78–79.  Appellants provide this Court no reason to reach a different conclusion.  "Granting relief on an emergency basis is the exception, not the rule[,]" and "[d]eciding important substantive issues on one week's notice turns [the Court's] usual decision-making process on its head."  *Washington v. Trump*, No. 25-807, 2025 WL 553485, at *1–2 (9th Cir. Feb. 19, 2025) (Forrest, J., concurring).  Defendants-Appellees—the State of Hawaiʻi and

2

its counties (collectively, "the State")—respectfully request that the motions be denied.

## BACKGROUND

On January 1, 2026, Hawaii's Act 96 goes into effect. Act 96, as relevant to this appeal, extends Hawaii's Transient Accommodations Tax ("TAT") to cover accommodations provided on cruise ships within the State. In its emergency motion, CLIA focuses on two administrative requirements of the TAT scheme: (1) the requirement that every business in Hawai'i providing transient accommodations register and pay a one-time registration fee of $15, and (2) the requirement that those same businesses post their registration certificate and include their registration number and contact information in advertisements. Haw. Rev. Stat. § 237D-4(b), (c).

The United States' motion argues that Act 96 violates the Tonnage Clause of the United States Constitution and the Rivers and Harbors Act. The United States intervened in this case as a plaintiff, and moved for a preliminary injunction, claiming that the United States suffers irreparable harm and may seek injunctive relief in federal court any time a state acts in an unconstitutional manner. ECF No. 100 at 8-9.[2]

---

[2] Constitutional challenges to state tax laws are common and follow a well-established path: the parties subject to the tax bring challenges to the law in state courts, using state mechanisms—with final review at the United States Supreme

3

The District Court dismissed most of the private plaintiffs for lack of prudential standing.  Order (ECF No. 103) at 26.  Although the District Court determined that CLIA and the United States have standing, it largely rejected CLIA's attempt to circumvent the Tax Injunction Act.  *Id.* at 28.  Because state law provided CLIA with "plain, speedy, and efficient mechanisms" to challenge the TAT, the District Court dismissed CLIA's challenge to the TAT for lack of jurisdiction.  *Id.* at 36.  The Court proceeded to address the claims brought by the United States and CLIA's remaining claims on the merits, and denied the preliminary injunction, finding that neither plaintiff was likely to succeed on the merits.

Appellants now seek emergency injunctions from this Court.  In their motions, they do not challenge the District Court's dismissal of most of the private plaintiffs.  25-8057, Dkt. 3.1 at 10 n.4.  Nor does CLIA challenge the District Court's dismissal of its claims as to the TAT itself.  *Id.*  Instead, it seeks an injunction pending appeal only as to the registration fee and the notice requirements of Hawai'i Revised Statutes Chapter 237D.  *Id.* at 10.  The United

---

Court, if necessary.  *See generally, e.g.*, *S. Dakota v. Wayfair*, 585 U.S. 162 (2018); *Complete Auto Transit, Inc. v. Brady*, 430 U.S. 274 (1977).  This course of action, shaped in large part by the Tax Injunction Act, 28 U.S.C. § 1341, is designed to prevent undue federal court interference in the crucial area of tax collection, out of respect for the principles of state sovereignty.

4

States challenges the TAT and the registration fee, but not the notice requirements.

Dkt. 4.1 at 1.

## LEGAL STANDARD

"The standard for evaluating an injunction pending appeal is similar to that employed by district courts in deciding whether to grant a preliminary injunction." *Feldman v. Ariz. Secretary of State's Office*, 843 F.3d 366, 367 (9th Cir. 2016). "In deciding whether to grant an injunction pending appeal, the court balances the plaintiff's likelihood of success against the relative hardship to the parties." *Se. Alaska Conservation Council v. U.S. Army Corps of Eng'rs.*, 472 F.3d 1097, 1100 (9th Cir. 2006) (internal quotation marks omitted). Under the "traditional test," the moving party must show "(1) a strong likelihood of success on the merits, (2) the possibility of irreparable injury to the plaintiff if preliminary relief is not granted, (3) a balance of hardships favoring the plaintiff, and (4) advancement of the public interest (in certain cases)." *Id.* (internal quotation marks omitted). Under the "alternative test[,]" the moving party must show "either a combination of probable success on the merits and the possibility of irreparable injury or that serious questions are raised and the balance of hardships tips sharply in his favor." *Id.* (citation modified).

# ARGUMENT

I. **Neither CLIA nor the United States has shown a likelihood of success on the merits.**

    A. *The United States lacks standing.*

As a threshold matter, the United States, as a non-taxpayer, lacks standing to challenge a state tax to which it and its instrumentalities are not subject. The United States has not been injured; there is neither concrete nor imminent harm. The United States would not be subject to any direct monetary injury caused by the tax or the registration fee. And the United States' concern about creating an incentive for a "patchwork" system of laws is not a cognizable harm—it is a feature of federalism that states may enact their own laws independent of the federal government's laws. *See Arkansas v. Farm Credit Services of Cent. Ark.*, 520 U.S. 821, 826 (1997) ("The federal balance is well served when the several States define and elaborate their own laws through their own courts and administrative processes . . . . The States' interest in the integrity of their own processes is of particular moment respecting questions of state taxation.").

The only other possibility for the United States' alleged harm is its assertion that Act 96 violates federal law. But the United States has failed to show that this mere assertion is sufficient to support Article III standing. *Whitmore v. Arkansas*, 495 U.S. 149, 155–56 (1990) (providing that the plaintiff bears the burden of establishing standing); *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC),*

6

*Inc.*, 528 U.S. 167, 180–81 (2000) (providing that a plaintiff, to demonstrate

standing, must show that "it has suffered an injury in fact that is . . . concrete and

particularized and . . . actual or imminent"); *Lake v. Fontes*, 83 F.4th 1199, 1203

(9th Cir. 2023) ("[A] concrete injury must be real, and an imminent one must be

certainly impending.  An abstract, theoretical concern will not do." (citation

modified)).  Because the United States has no actual injury, it lacks standing.[3]

### B.  The Tonnage Clause claims are unlikely to succeed.

The District Court correctly concluded that the Tonnage Clause claims are

unlikely to succeed on the merits.  Order (ECF No. 103) at 54–69.  The Tonnage

Clause provides that "[n]o State shall, without the Consent of Congress, lay any

Duty of Tonnage."  U.S. Const. art. I, § 10, cl. 3.  As the Framers understood it, a

"Duty of Tonnage" narrowly referred to "'a duty' imposed upon a ship" based on

its "carrying capacity."  *Polar Tankers, Inc. v. City of Valdez*, 557 U.S. 1, 6 (2009).

By design, the Tonnage Clause supplements the Import-Export Clause:  "If the

states had been left free to tax the privilege of access by vessels to their harbors,"

then "the prohibition against duties on imports and exports could have been

nullified by taxing the vessels transporting the merchandise."  *Clyde Mallory Lines*

---

[3] While a prospective intervenor could potentially "piggyback" on the other
plaintiffs' standing, that general principle does not help the United States here: the
private Plaintiffs in the instant case cannot maintain this action (because of the Tax
Injunction Act and because the private Plaintiffs themselves lack standing), such
that there is nothing for the United States to "piggyback" on.

7

*v. State of Alabama ex rel. State Docks Comm'n*, 296 U.S. 261, 265 (1935).  The

Clause additionally "reflect[s] an effort to diminish a State's ability to obtain

certain geographical vessel-related tax advantages" when a vessel "transports

goods between States and foreign nations or . . . between the States."  *Polar*

*Tankers*, 557 U.S. at 7.

The Tonnage Clause thus "protects vessels, and their owners, from

discrimination by seaboard States."  *Id.* at 9.  To do so, it bars "charge[s] for the

privilege of entering, trading in, or lying in a port."  *Id.*  But "nothing in the history

of the adoption of the Clause, the purpose of the Clause, or th[e Supreme] Court's

interpretation of the Clause suggests that it operates as a ban on *any and all* taxes

which fall on vessels that use a State's port, harbor, or other waterways."  *Id.*  Nor

does it "give[] vessels preferential treatment vis-à-vis all other property."  *Id.*

Act 96's extension of the registration fee to cruise ships comports with these

principles.  The $15 fee is a one-time payment that applies equally to every

provider of transient accommodation rentals with six or more units, be it a motel,

hotel, resort, or Airbnb.  Haw. Rev. Stat. § 237D-4(a).  As even CLIA admits, "the

registration fees charged to cruise-ship operators are identical to those charged to

hotels."  Dkt. 3.1 at 22 n.7; *see also* Order (ECF No. 103) at 68 (describing the

registration fee as a "model" for a "perfectly evenhanded tax[]").  It is thus

unrelated to "the privilege of entering, trading in, or lying in a port."  *Polar*

*Tankers*, 557 U.S. at 9.  Indeed, the statutory text makes clear that the registration fee is a "condition precedent" to "furnishing transient accommodations," not to docking in Hawaiʻi ports.   Haw. Rev. Stat. § 237D-4.

The TAT similarly comports with the Tonnage Clause.  The TAT applies to the proceeds from operating short-term accommodations.  It applies to all operators of short-term accommodations in the state, regardless of whether those accommodations are in a hotel, in a rental apartment, or on a cruise ship.  It does not apply to ships that enter, trade in, or lay in a port without offering transient accommodations.  Put simply, the TAT is not a charge for a vessel-related function, and it therefore is also unrelated to "the privilege of entering, trading in, or lying in a port."  *Polar Tankers*, 557 U.S. at 9.

The fact that the TAT is prorated based on the number of days in port does not mean that it is a tax on the privilege of using the port.  For example, if a cruise ship were to enter and leave a port in Honolulu five times in one day, it would not be charged the TAT five times.  This provision of Act 96 simply reflects the reality that a state cannot tax outside of its borders, and it ensures that Hawaiʻi does not tax transient accommodations that are provided outside of the state.

Any minor differences in the application of the TAT are semantic.  Act 96 imposes the TAT on the "total amount paid by a transient for a cruise ship cabin."  Act 96 § 4.1.  That includes "any mandatory fees . . . for the use of shipboard

9

services, facilities, meals, and onboard entertainment." *Id.* It does not include "optional charges for shipboard services, meals, excursions, and onboard entertainment beyond the mandatory fee amount." *Id.*

The TAT applies to land-based accommodations in a functionally identical way. The TAT is assessed against the "compensation [received] for the furnishing of transient accommodations." Haw. Rev. Stat. § 237D-1. That includes "any mandatory charge or surcharge . . . for the use of the transient accommodation's property, services, or amenities." *Id.*[4] It does not include other additional charges, like "[c]harges for guest amenities, including meals, beverages, telephone calls, and laundry." Haw. Admin. R. § 18-237D-1-03(c).

According to CLIA and the United States, these semantic differences somehow mean that Act 96 discriminates against ships. Not so. Both cruise ships and other transient accommodation providers must pay the TAT on the compensation received for the accommodation itself. Both must also pay the TAT for any mandatory fees or charges. And *neither* cruise ships *nor* other transient accommodations need to pay the TAT for additional, optional charges.

---

[4] Specifically, § 237D-1 defines "gross rental proceeds" as including "resort fees." Haw. Rev. Stat. § 237D-1. And that same section defines "resort fees" as "any mandatory charge or surcharge imposed by an operator, owner, or representative thereof to a transient for the use of the transient accommodation's property, services, or amenities." *Id.*

10

CLIA focuses its argument on a single example in the regulations.  25-8057, Dkt. 3.1 at 12, 22–23.  In that example, a hotel that rents a room "under the American Plan"—which is a type of hotel rate that covers the cost of the room and three meals[5]—can, for purposes of calculating the TAT, deduct the cost of the meals from the total price charged.  *See* Haw. Admin. R. § 18-237D-1-03(c) (Example 4).  So if the hotel charged $200, and the reasonable cost of the meals was $50, its tax liability would be assessed against $150.  *See id.*  According to CLIA, a cruise ship that has an all-inclusive package could not do the same.

That is incorrect.  For both cruise ships and other transient accommodation providers, the TAT is assessed against the compensation received for the accommodation itself *and* any "mandatory" charges.  If a hotel exclusively rented rooms under the American Plan, then the cost for the meals would be a mandatory charge, included in the TAT assessment.  But if a hotel gave guests the *option* of an American Plan package—as the hypothetical hotel in the regulation's example necessarily does—then the meal cost would be optional and excludable from the TAT calculation.  So too for a cruise ship: if the only rate is an all-inclusive one, then the cost for meals and other amenities are mandatory, and the entire amount paid is subject to the TAT.  But if a cruise ship lets guests rent only a room with

---

[5] *American plan*, Merriam-Webster, https://www.merriam-webster.com/dictionary/American%20plan (last visited Dec. 29, 2025).

11

the *option* of adding additional amenities, then any payment received for those additional benefits would be excludable from the TAT.

In sum, there is no differential treatment. Quite the contrary: as the District Court recognized, exempting cruise ships from the registration fee or the TAT would give cruise ships "preferential treatment" over their "land-bound competitors." Order (ECF No. 103) at 66. But "[t]he Tonnage Clause cannot be read to give vessels such 'preferential treatment.'" *Polar Tankers*, 557 U.S. at 9. Neither CLIA nor the United States have shown a likelihood of success on their Tonnage Clause claims.

### C. The preemption claims under the Rivers and Harbors Act are unlikely to succeed.

The preemption of state laws represents "a serious intrusion into state sovereignty." *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 488 (1996). As a result, the "considerable burden of overcoming the starting presumption that Congress does not intend to supplant state law" rests with Appellants. *De Buono v. NYSA–ILA Med. and Clinical Serv. Fund*, 520 U.S. 806, 814 (1997) (internal quotation marks omitted). Preemption is disfavored unless the "nature of the regulated subject matter permits no other conclusion" or "Congress has unmistakably so ordained." *Florida Lime & Avocado Growers, Inc. v. Paul,* 373 U.S. 132, 142 (1963).

The RHA provides that "[n]o taxes, tolls, operating charges, fees, . . . shall be levied upon or collected from any vessel or other water craft, or from its

12

passengers or crew, by any non-Federal interest, if the vessel or water craft is

operating on any navigable waters subject to the authority of the United States."

33 U.S.C. § 5(b)

Congress's purpose is the "ultimate touchstone in every pre-emption case."

*Wyeth v. Levine*, 555 U.S. 555, 565 (2009) (quoting *Medtronic, Inc.*, 518 U.S. at

485). And the purpose of 33 U.S.C. § 5(b) was "to prohibit fees and taxes on a

vessel simply because that vessel sails through a given jurisdiction.'" *Lil' Man In*

*The Boat, Inc. v. City & Cnty. of San Francisco*, No. 17-CV-00904-JST, 2019 WL

8263440, at *8 (N.D. Cal. Nov. 26, 2019), *aff'd on alternative grounds*, 5 F.4th

952 (9th Cir. 2021) (quoting H.R. Rep. No. 108-334, at 180 (2002)).[6] "[A] sponsor

of the bill codified at 33 U.S.C. § 5(b) explained that the legislation addresses the

problem 'of local jurisdictions seeking to impose taxes and fees on vessels merely

transitioning or making innocent passage through navigable waters subject to the

authority of the United States that are adjacent to the taxing community.'" *Id.*

(quoting 148 Cong. Rec. E22143-04 (2002)). "In particular, the legislation aims to

prevent 'instances in which local communities [ ] seek[ ] to impose taxes or fees on

vessels even where the vessel is not calling on, or landing, in the local community.

---

[6] The Ninth Circuit did not need to reach the lower court's analysis because it held
that the RHA granted no private right of action, so the private plaintiff lacked the
ability to bring an RHA claim. *Lil' Man in the Boat, Inc. v. City & Cnty. of San
Francisco*, 5 F.4th 952, 955 (9th Cir. 2021).

These are cases where no passengers are disembarking . . . and where the vessels are not stopping for the purpose of receiving any other service offered by the port.'" *Id.* (quoting 148 Cong. Rec. E22143-04 (2002)).

The text of 33 U.S.C. § 5(b) makes clear Congress's purpose—to prevent the taxation of vessels simply passing through but not availing themselves of any resources of a state. By its plain language, 33 U.S.C. § 5(b) disallows taxes and fees if the vessel is "operat*ing* on"—that is, being actively driven on[7]—the navigable waters of the United States. Because the TAT is assessed only when a cruise ship is docked in the state—and not "merely transiting adjacent waters without landing or benefitting from any local services," *State v. N. Pac. Fishing, Inc.*, 485 P.3d 1040, 1058 (Alaska 2021)—the United States cannot show that 33 U.S.C. § 5(b) preempts the TAT. Similarly, the registration fee is not imposed on any cruise ship "merely transiting adjacent waters," and it is also not preempted by 33 U.S.C. § 5(b). *See Bates v. Dow Agrosciences LLC*, 544 U.S. 431, 449 (2005) (observing that, when presented with two "plausible" readings of a statute, courts "have a duty to accept the reading that disfavors pre-emption"). Plaintiffs' expansive interpretation of the RHA would lead to the absurd result of nearly all state taxes on vessels—including things like sales taxes or Hawaiʻi's General

---

[7] *See Operate*, Merriam-Webster, https://www.merriam-webster.com/dictionary/operate (last accessed December 29, 2025).

Excise Tax—being a violation of the RHA.

In addition, 33 U.S.C. § 5(b) does not preempt the TAT and registration fee because these charges are not imposed on any vessel-related function of the cruise ship—they are imposed on the proceeds from the transient accommodations located onboard the cruise ships. As the District Court recognized, the reasoning in *Reel Hooker Fishing* and *North Pacific Fishing* is persuasive. Both of these cases examined whether a tax constitutes a fee on a vessel or its passengers. And both concluded that taxes for non-vessel purposes fell outside the plain text of 33 U.S.C. § 5(b). *See Reel Hooker Sportfishing, Inc. v. State, Dep't of Tax'n*, 236 P.3d 1230, 1234 (Haw. Ct. App. 2010) (concluding that the "plain language of 33 U.S.C. § 5(b)" does not "address the business revenue or gross income generated by a business that operates the vessel"); *N. Pac. Fishing, Inc.*, 485 P.3d at 1056–58 (stating that § 5(b) "does not prohibit taxes on things other than vessels, passengers, and crews"). The District Court was therefore correct in concluding that the TAT and the $15 registration fee are not taxes or fees imposed on a vessel or its passengers—these requirements apply to all providers of transient accommodations.

Appellants have not met their "considerable burden" of showing that Act 96 is preempted. *De Buono*, 520 U.S. at 814 (1997). They have therefore failed to demonstrate that their RHA preemption claims are likely to succeed.

### D. The First Amendment claim depends entirely on the constitutionality of the underlying tax and is therefore unlikely to succeed.

CLIA is the only party in this appeal that brought a First Amendment claim. CLIA's First Amendment claim challenges the provisions of Hawai'i Revised Statutes § 237D-4 that (1) require a transient accommodation provider to post its valid certificate of registration for the TAT (§ 237D-4(b)); and (2) require any advertisement to include the TAT registration number and local contact information (§ 237D-4(c)). 25-8057, Dkt. 3.1 at 9.[8] CLIA argues that because the underlying TAT is unconstitutional, these notice requirements amount to compelled speech forcing CLIA to endorse an unconstitutional tax scheme.

This is a backdoor attempt for CLIA to have this Court review its challenge to the merits of the TAT, which it did not ask to be enjoined in this emergency motion. Even assuming this is a cognizable First Amendment claim, CLIA has conceded on multiple occasions that this claim depends entirely on the constitutionality of the underlying tax. CLIA's claim challenging the constitutionality of the TAT itself was correctly dismissed under the Tax Injunction Act and must be decided in state court. And, as discussed above, neither CLIA nor the United States has not shown that it is likely to succeed on the

---

[8] These requirements are not directly imposed by Act 96—they are existing features of Hawaii's TAT statute. Therefore, cruise ships become subject to these requirements by virtue of the Act defining them as providers of transient accommodations.

16

Tonnage Clause and RHA claims.  Because the First Amendment claim rests entirely on the constitutionality of other provisions of Act 96, this claim is therefore unlikely to succeed.

## II.    Appellants have made no showing of irreparable harm.

CLIA seeks to enjoin *only* the imposition of the $15 registration fee and the notice requirements, not the imposition of the TAT tax itself.  That CLIA's members would be subject to the TAT, then, is irrelevant to the irreparable harm analysis.  And CLIA fails to identify irreparable harm stemming from the two provisions that it challenges.

Paying a registration fee—again, of *only $15*—causes no irreparable harm. Contrary to CLIA's suggestions, Hawai'i provides a clear path for CLIA (or its members, or any other business) to challenge the collection of that $15 fee.  *See* Haw. Rev. Stat. § 40-35 (providing that "[a]ny disputed portion of moneys representing a claim in favor of the State may be paid under protest . . . .").  On its First Amendment claim, CLIA solely links its harms to the question of success on the merits.  25-8057 Dkt. 3.1 at 28.  Yet as the District Court correctly concluded, Act 96 is unlikely to violate the First Amendment.  *See supra* at 16-17.  Moreover, in its motion, CLIA does not even suggest that its members have been "coerced into betraying their convictions"—the real risk of compelled speech.  *Janus v. Am. Fed'n of State, Cnty., & Mun. Emps., Council 31*, 585 U.S. 878, 893 (2018).

17

The United States also does not show irreparable harm.  Although this factor
is "usually" satisfied when a plaintiff "shows he is likely to prevail on the merits,"
*Baird v. Bonta*, 81 F.4th 1036, 1040 (9th Cir. 2023), the United States has made no
such showing.  Nor does the United States' concern about creating a patchwork
system of laws suffice.  ECF 97-1 at 18, 25.  Congress, in passing the Tax
Injunction Act, intended to protect states' ability to develop and operate their own
taxation systems, and effectively "administer [their] own fiscal operations."
*Rosewell v. LaSalle Nat'l Bank*, 450 U.S. 503, 522 (1981); *see also Arkansas*, 520
U.S. at 826 ("The federal balance is well served when the several States define and
elaborate their own laws through their own courts and administrative processes. . . .
The States' interest in the integrity of their own processes is of particular moment
respecting questions of state taxation.").  Simply put, in this context, a
"patchwork" is a feature of federalism, not a bug.  *Arkansas*, 520 U.S. at 826
("That the power of taxation is one of vital importance; that it is retained by the
States; that it is not abridged by the grant of a similar power to the government of
the Union; that it is to be concurrently exercised by the two governments: are
truths which have never been denied." (quoting *McCulloch v. Maryland,* 4 Wheat.
316 (1819))).  And, as the District Court noted, it is unlikely that any such
legislative patchwork would develop before the case reaches conclusion.  Order
(ECF No. 103) at 78.  It is even more unlikely that such a patchwork would

18

develop during the period in between the law going into effect and the resolution of this preliminary injunction appeal.

## III.    The public interest and balance of harms favor the State.

Nor can Appellants show that the public interest and balance of harms favor injunctive relief here.  Both CLIA and the United States note that the District Court found that there are "serious questions" going to the merits.  25-8057 Dkt. 3.1 at 7; Dkt. 4.1 at 16.  But "[u]nder the 'sliding scale' variant of the *Winter* standard, if a plaintiff can only show that there are serious questions going to the merits—a lesser showing than likelihood of success on the merits—then a preliminary injunction may still issue if the balance of hardships tips *sharply* in the plaintiff's favor, and the other two *Winter* factors are satisfied." *All. for the Wild Rockies v. Pena*, 865 F.3d 1211, 1217 (9th Cir. 2017) (citation modified).  Appellants make no such showing here.

The State, on the other hand, would suffer clear harm from an injunction pending appeal.  "Any time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers) (alteration and citation omitted); *see also Abbott v. Perez*, 585 U.S. 579, 602 n.17 (2018) ("[T]he inability to enforce its duly enacted plans clearly inflicts irreparable harm on the State.").  Moreover, as the District Court recognized, enjoining Act 96

19

might cost Hawai'i and its counties millions of dollars in valid tax revenues.  Order

(ECF No. 103) at 78.  The balance of the equities and public interest support

denying the extraordinary remedy of emergency relief here.  They certainly do not

"sharply" favor either CLIA or the United States.

20

## CONCLUSION

For the foregoing reasons, the Court should deny both motions for injunction
pending appeal.

Dated: December 30, 2025      Respectfully Submitted,

                              /s/ *Daniel M. Gluck*

Dana M. O. Viola
Corporation Counsel;
Daniel M. Gluck
Nikki Loh
Moana A. Yost
Deputies Corporation Counsel

*Counsel for*
Andrew T. Kawano, in his capacity as
Director of the Department of Budget and
Fiscal Services for the City and County of
Honolulu, and the City and County of
Honolulu

Anne E. Lopez
Attorney General of Hawaiʻi;
Nathan S.C. Chee
Kacyn H. Fujii
Michael D. Dunford
Deputy Attorneys General

*Counsel for*
Gary S. Suganuma, in his capacity as
Director of Taxation for the State of
Hawaiʻi, and Hawaiʻi Department of
Taxation

Hannah Ehrig McKee
Lerisa L. Heroldt
Steven K. Idemoto
Deputies Corporation Counsel

*Counsel for*
Diane Nakagawa, in her capacity as Director
of Finance for the County of Hawaiʻi, and
County of Hawaiʻi

Andrew Scott Michaels
Deputy County Attorney

*Counsel for*
Chelsie Sakai, in her capacity as County
Finance Director of the County of Kauaʻi,
and County of Kauaʻi

Kenton S.Werk
Deputy Corporation Counsel

*Counsel for*
Marcy Martin, in her capacity as Director of
Finance for the County of Maui, and County
of Maui

22

## CERTIFICATE OF COMPLIANCE

This motion complies with the type-volume limitation of Federal Rule of Appellate Procedure 27(d)(2) because it contains 4786 words, excluding the parts exempted by Federal Rule of Appellate Procedure 32(f).

This motion also complies with the typeface and type-style requirements of Federal Rules of Appellate Procedure 32(a)(5) and (6) because it was prepared in a proportionally spaced typeface using Microsoft Word with 14-point, Times New Roman font.

*/s/ Daniel M. Gluck*
Daniel M. Gluck