No. 25-8057

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

CRUISE LINES INTERNATIONAL ASSOCIATION, INC.; HONOLULU SHIP SUPPLY CO.;
KAUAʻI KILOHANA PARTNERS; ALOHA ANUENUE TOURS LLC,

*Plaintiffs-Appellants*,

UNITED STATES OF AMERICA,

*Intervenor-Plaintiff*,

v.

GARY S. SUGANUMA; HAWAIʻI DEPARTMENT OF TAXATION; CHELSIE SAKAI; COUNTY OF KAUAʻI; ANDREW T. KAWANO; CITY AND COUNTY OF HONOLULU; MARCY MARTIN; COUNTY OF MARTIN; DIANE NAKAGAWA; COUNTY OF HAWAIʻI,

*Defendants-Appellees*.

On Appeal from the United States District Court
for the District of Hawaiʻi,
No. 1:25-cv-367-JAO-KJM (Judge Jill A. Otake)

## APPELLANTS' REPLY IN SUPPORT OF OPPOSED MOTION FOR INJUNCTION PENDING APPEAL

### EMERGENCY MOTION UNDER CIRCUIT RULE 27-3
### RELIEF REQUESTED BY DECEMBER 31, 2025

Jeffrey S. Portnoy
Trever K. Asam
Lindsay N. McAneeley
CADES SCHUTTE LLP
1000 Bishop Street, Suite 1200
Honolulu, HI 96813
(808) 521-9200

Bradley J. Bondi
Benjamin W. Snyder
Ronald K. Anguas, Jr.
PAUL HASTINGS LLP
2050 M Street, NW
Washington, DC 20036
(202) 551-1700
bensnyder@paulhastings.com

*Counsel for Plaintiffs-Appellants*

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................... ii
INTRODUCTION .....................................................................................................1
ARGUMENT .............................................................................................................3
I.     Plaintiffs Are Likely To Succeed On The Merits............................................3
     A.     Act 96 Violates The Tonnage Clause......................................................3
     B.     Act 96 Violates The Rivers And Harbors Act. ......................................6
II.    The Equities Favor An Injunction Pending Appeal. .....................................10
CONCLUSION ........................................................................................................13

## TABLE OF AUTHORITIES

Page(s)

**CASES**

*American Beverage Ass'n v. City & Cnty. of San Francisco*,
 916 F.3d 749 (9th Cir. 2019) ................................................................... 1, 11

*Baird v. Bonta*,
 81 F.4th 1036 (9th Cir. 2023) .................................................................. 11, 12

*City of Chicago v. Wendella Sightseeing, Inc.*,
 143 N.E.3d 771 (Ill. App. Ct. 2019) ............................................................... 7

*Clyde Mallory Lines v. Alabama ex rel. State Docks Comm'n*,
 296 U.S. 261 (1935) .................................................................................... 3, 4

*Knox v. Brnovich*,
 907 F.3d 1167 (9th Cir. 2018) ......................................................................... 9

*Nat'l Ass'n of Wheat Growers v. Bonta*,
 85 F.4th 1263 (9th Cir. 2023) ........................................................................ 11

*Polar Tankers, Inc. v. City of Valdez*,
 557 U.S. 1 (2009) ........................................................................................ 3, 4

*Pulsifer v. United States*,
 601 U.S. 124 (2024) ........................................................................................ 8

*Reel Hooker Sportfishing, Inc. v. State*,
 236 P.3d 1230 (Haw. Ct. App. 2010) .............................................................. 9

*Rodriguez v. Robbins*,
 715 F.3d 1127 (9th Cir. 2013) ....................................................................... 12

*Se. Alaska Conservation Council v. U.S. Army Corps of Eng'rs*,
 472 F.3d 1097 (9th Cir. 2006) ......................................................................... 3

*State v. N. Pac. Fishing, Inc.*,
 485 P.3d 1040 (Alaska 2021) ........................................................................... 9

*Tapia v. United States*,
 564 U.S. 319 (2011) ..................................................................................... 6, 8

*Wendella Sightseeing Co. v. City of Chicago*,
 226 N.E.3d 636 (Ill. App. Ct. 2023) .............................................................. 10

**CONSTITUTIONAL PROVISION**

U.S. Const. art. I, § 10, cl. 3 .................................................................................. 3

**STATUTES**

33 U.S.C. § 5 ................................................................................................6, 8, 9

33 U.S.C. § 2236 ...................................................................................................8

**REGULATION**

HAR § 18-237D-1-03 ............................................................................................5

**LEGISLATIVE MATERIAL**

148 Cong. Rec. E2143-44 (2002) ......................................................................2, 9

**OTHER AUTHORITIES**

operate (verb), Merriam-Webster Dictionary Online,
    https://www.merriam-webster.com/dictionary/operate .......................................7

operating (adjective), Merriam-Webster Dictionary Online,
    https://www.merriam-webster.com/dictionary/operating....................................7

## INTRODUCTION

Defendants' response makes one thing clear: If this Court determines that Act 96 likely violates the Tonnage Clause or the Rivers and Harbors Act, the Court should grant an injunction pending appeal to prevent the law from taking effect. Specifically, Defendants do not dispute that, "[i]f Act 96's charges are indeed violations of the Constitution or the RHA," then the law's compelled-speech requirement is likewise "impermissible . . . because there is no substantial interest in compelling speech related to an unconstitutional law." Order 49. Defendants likewise do not dispute that "[a] colorable First Amendment Claim is irreparable injury sufficient to merit the grant of relief." *American Beverage Ass'n v. City & Cnty. of San Francisco*, 916 F.3d 749, 758 (9th Cir. 2019) (en banc). And they appear to concede (at 18) that if this Court finds the United States likely will prevail on its challenges, then the interest in preventing the collection of tens of millions of dollars in unconstitutional charges would support entry of an injunction pending appeal on the United States' claims, too.

The only real question is whether it is likely that this Court will find Act 96 violates either the Tonnage Clause or RHA—and the answer is plainly "Yes." As to the Tonnage Clause, Defendants offer a brand-new interpretation of longstanding state regulations—never raised below—in an attempt to show that Act 96 treats cruise ships no differently than land-based accommodations. But that new

interpretation is not plausible, and even if it were, it would not change the fact that Act 96 taxes cruise-ship operators for other significant expenses that have no parallel at land-based accommodations.

Defendants' arguments as to the RHA likewise fail. They offer no colorable way to read the RHA's text that would not cover the charges here; ignore this Court's precedent holding that the presumption against preemption does not apply in the context of maritime commerce; propose atextual limitations that would render superfluous two of the RHA's three express exceptions; and rely extensively on the views of a single member of Congress without ever addressing that very member's recognition that "[g]enerally, taxes will not be allowed under this section." 148 Cong. Rec. E2144 (2002) (Rep. Young).

It is therefore highly likely that Private Plaintiffs and the United States will prevail. In the interim, the Court should preserve the status quo by enjoining Defendants from enforcing Act 96. Doing so is necessary to prevent clear violations of the constitutional rights of CLIA's members, protect the public from the immediate harms that Act 96's unconstitutional tax would cause, and avoid thorny remedial questions about what would happen if the United States ultimately prevails after Defendants have already collected tens of millions of dollars in unlawful charges from third parties.

2

# ARGUMENT

## I.  Plaintiffs Are Likely To Succeed On The Merits.

Because Act 96 plainly violates the Tonnage Clause, RHA, and First Amendment, "the plaintiff[s'] likelihood of success" weighs heavily in favor of "grant[ing] an injunction pending appeal." *Se. Alaska Conservation Council v. U.S. Army Corps of Eng'rs*, 472 F.3d 1097, 1100 (9th Cir. 2006) (quotations omitted). Defendants' contrary arguments lack merit.

### A.  Act 96 Violates The Tonnage Clause.

Plaintiffs previously explained that Act 96's registration fee and 14% tax violate the Tonnage Clause for two reasons. *See* Mot. 14-18; U.S. Mot. 13-17. Defendants fail to offer a persuasive response to either one.

*First*, as Chief Justice Roberts (joined by Justice Thomas) has recognized, the text of the Tonnage Clause requires States to obtain congressional approval for "*any* Duty of Tonnage," U.S. Const. art. I, § 10, cl. 3 (emphasis added), "regardless of how that duty compares to other commercial taxes," *Polar Tankers, Inc. v. City of Valdez*, 557 U.S. 1, 17-18 (2009) (Roberts, C.J., concurring in the judgment). Here, Act 96's registration fee and 14% tax both qualify as duties of tonnage because they impose "charge[s] for the privilege of entering, trading in, or lying in a port." *Clyde Mallory Lines v. Alabama ex rel. State Docks Comm'n*, 296 U.S. 261, 265-66

3

(1935).[1] Under the Tonnage Clause's plain text, they therefore require congressional authorization without regard to any taxes Hawai'i imposes on land-based properties.

Defendants never address Chief Justice Roberts' persuasive reading of the Tonnage Clause's text, instead simply quoting dicta from *Polar Tankers* about "the purpose of the Clause." Opp. 8 (citation omitted). But as even the district court acknowledged, those statements were "unnecessary" to the decision in *Polar Tankers*, which "never definitively answered" whether a non-discriminatory duty of tonnage would require congressional approval. Order 62. And given the clarity of the constitutional text, this Court would be likely to hold that even non-discriminatory duties of tonnage require congressional approval for the reasons offered by Chief Justice Roberts.

*Second*, Act 96's 14% tax on cruise ships is impermissible even under the *Polar Tankers* dicta because it does not apply "'in the same manner'" as Hawai'i's tax on land-based accommodations. *Polar Tankers*, 557 U.S. at 15 (plurality op.). As Private Plaintiffs previously explained (at 16-17), Act 96 taxes meals and beverages covered by all-inclusive cruise fares, even though "meals" and

---

[1] Defendants note (at 9) that "if a cruise ship were to enter and leave a port in Honolulu five times in one day, it would not be charged the TAT five times." But that just shows that the 14% tax is imposed based on time spent "lying in a port" rather than for "the privilege of entering" the port. *Clyde Mallory Lines*, 296 U.S. at 265-66. It still qualifies as a duty of tonnage under the Supreme Court's long-settled understanding.

4

"beverages" are expressly *excluded* when covered by all-inclusive charges at land-based hotels, HAR § 18-237D-1-03(c).  Thus, if a hotel and a cruise-ship operator each offer a $200 all-inclusive rate that covers accommodations worth $150 and meals worth $50, the hotel will be taxed on just $150 while the cruise-ship operator will be taxed on the full $200.  *See* Mot. 17; HAR § 18-237D-1-03(c) (Example 4).

Based on that express exclusion, counsel for Defendants acknowledged below that Hawaiʻi uses "a different definition [of gross rental proceeds] for the land-based accommodations" than it does for cruise ships.  12/17/2025 Hr'g Tr. 30:22-23; *see* Mot. 6.  On appeal, Defendants now argue that a hotel would *also* be taxed on the full $200 all-inclusive charge in that hypothetical unless it "gave guests the option" of paying for only a room.  Opp. 11 (emphasis omitted).  But there is a reason Defendants have never made that argument before:  It relies on an inapposite statutory provision regarding the treatment of separately imposed "resort fees," which has no application where a hotel charges a single all-inclusive rate.  *See* Opp. 10 n.4 (acknowledging that Defendants' argument blends the statutory definitions of "gross rental proceeds" and "resort fees").  Instead, Hawaiʻi's regulations provide that when a single, undifferentiated rate covers both accommodations and meals, a hotel can exclude the cost of its meals without any reference to whether the guest has the option to pay for just a room.  *See* HAR § 18-237D-1-03(c) (Example 4).  By precluding an otherwise identically situated cruise-ship operator from making the

5

same exclusion, Act 96 engages in discrimination that violates any plausible understanding of the Tonnage Clause.

Finally, even if Defendants' new position on all-inclusive hotels were correct, Act 96 would still result in impermissible discrimination because it taxes other significant cruise-ship expenses that are not taxed in connection with land-based accommodations. Private Plaintiffs established below that a substantial proportion of any cruise fare goes to the cost of transportation. *See* ECF 28-3 ¶ 17(c); ECF 28-4 ¶ 14(c). Act 96 thus taxes the cost of traveling to or within Hawaiʻi for cruise-ship passengers, whereas no similar tax is imposed on the cost of transportation for hotel guests who travel by air. In that way, too, Act 96 imposes harsher taxation on cruise ships than on hotels or resorts, again resulting in the sort of discriminatory treatment that even Defendants acknowledge the Tonnage Clause prohibits.

    **B.**    **Act 96 Violates The Rivers And Harbors Act.**

Plaintiffs also explained that Act 96 violates the RHA, which bars States from imposing "taxes, tolls, operating charges, fees, or any other impositions whatever" on "any vessel" that is "operating on any navigable waters subject to the authority of the United States." 33 U.S.C. § 5(b); *see* Mot. 18-22; U.S. Mot. 8-13. Once again, Defendants offer no persuasive response.

"[C]onsideration of [this] claim starts with the text . . . and given the clarity of th[e] provision's language, could end there as well." *Tapia v. United States*, 564

U.S. 319, 326 (2011). Act 96's 14% tax and registration fees obviously qualify as "taxes" and "fees," respectively, within the meaning of the RHA. There is likewise no doubt that cruise ships are "vessels," and that Hawaiʻi's ports sit in "navigable waters subject to the authority of the United States." And as another court interpreting the RHA recently held, the dictionary definition of the word "operating" establishes that "a vessel is 'operating' on federal waters when it is engaged in active business thereon." *City of Chicago v. Wendella Sightseeing, Inc.*, 143 N.E.3d 771, 777 (Ill. App. Ct. 2019); *see* operating (adjective), Merriam-Webster Dictionary Online ("engaged in active business"), https://www.merriam-webster.com/dictionary/operating.

Defendants dispute almost none of that. Their only argument for why the RHA's statutory text would not cover the circumstances here is that the words "operating on" should be understood to mean "actively driven on," such that a vessel is not "operating on" navigable waters when it is stopped. Opp. 14 & n.7 (citing operate (verb), Merriam-Webster Dictionary Online ("to drive a vehicle"), https://www.merriam-webster.com/dictionary/operate). But while a vessel certainly is "operating" when moving, it does not follow that *only* moving vessels can be "operating." As the *Wendella* court recognized, the ordinary meaning of "operating" also covers carrying on a business in place. 143 N.E.3d at 777. In fact, the second sentence of Defendants' own brief acknowledges that Act 96 will apply to CLIA's

7

members to the extent that they "*operate* transient accommodations in Hawai'i." Opp. 1 (emphasis added). Defendants thus cannot dispute that Act 96 imposes a tax on cruise ships while they are "operating" in the waters of Hawai'i's ports under the ordinary meaning of that term.

Reading the RHA to protect only moving vessels would also render superfluous two of the RHA's three express exceptions. The first exception authorizes the imposition of port or harbor dues to pay for completed construction projects in limited circumstances. *See* 33 U.S.C. § 5(b)(1) (citing 33 U.S.C. § 2236). The second authorizes "reasonable fees charged on a fair and equitable basis" when "used solely to pay the cost of a service to the vessel or water craft." 33 U.S.C. § 5(b)(2). There would be no need for those exceptions if the RHA did not otherwise prohibit the imposition of fees and taxes on vessels docked in port. And because Defendants' reading would make two of the RHA's three subsections unnecessary, "the canon against surplusage applies with special force," precluding that reading even if it were otherwise linguistically plausible. *Pulsifer v. United States*, 601 U.S. 124, 143 (2024).

Given the clarity of the RHA's text, this Court need not reach Defendants' other arguments. *See Tapia*, 564 U.S. at 326. But those arguments are badly flawed, too. *First*, Defendants rely heavily (at 12, 14-15) on a presumption against preemption. But as Private Plaintiffs explained (at 19), "there is no presumption

8

against preemption when the State regulates in an area such as 'national and international maritime commerce.'" *Knox v. Brnovich*, 907 F.3d 1167, 1174 (9th Cir. 2018) (citation omitted).  Defendants have no response.

*Second*, Defendants invoke legislative history in which one member of Congress indicated particular concern about municipalities imposing "taxes or fees on vessels even where the vessel is not calling on, or landing, in the local community." Opp. 13 (citation omitted).  But Private Plaintiffs pointed out (at 20) that not even that member understood the RHA's text to be limited to that narrow scenario, instead acknowledging that "[g]enerally, taxes will not be allowed under this section" and that localities could impose charges only "under extremely limited circumstances" set out expressly.  148 Cong. Rec. E2143-44 (2002) (Rep. Young).  Again, Defendants have no response.

Third, defendants cite the same two state-court decisions on which the district court relied, invoking them for the proposition that "taxes for non-vessel purposes f[a]ll outside the plain text of" the RHA.  Opp. 15 (citing *Reel Hooker Sportfishing, Inc. v. State*, 236 P.3d 1230, 1234 (Haw. Ct. App. 2010); *State v. N. Pac. Fishing, Inc.*, 485 P.3d 1040, 1058 (Alaska 2021)).  But the plain text of the RHA covers "any . . . impositions whatever" on vessels operating in navigable waters of the United States.  33 U.S.C. § 5(b).  It contains no exception for taxes imposed "for non-vessel purposes," whatever that means.  A more recent decision therefore

9

recognized that to the extent *Reel Hooker* and *North Pacific Fishing* adopted that atextual exception, they were "wrongly decided." *Wendella Sightseeing Co. v. City of Chicago*, 226 N.E.3d 636, 655 (Ill. App. Ct. 2023). Once again, no response.[2]

\* \* \*

For all those reasons, this Court likely will hold that Act 96 violates the Tonnage Clause and RHA. And Defendants do not dispute that "[i]f Act 96's charges are indeed violations of the Constitution or the RHA," then the law's compelled-speech requirement is likewise "impermissible . . . because there is no substantial interest in compelling speech related to an unconstitutional law." Order 49. Together, CLIA and the United States thus likely will succeed on challenges to Act 96's 14% tax, registration fees, and compelled-speech requirement.

## II.     The Equities Favor An Injunction Pending Appeal.

Although Defendants downplay the irreparable harm that will occur if Act 96 goes into effect, they do not dispute that an injunction pending appeal is warranted if this Court concludes that CLIA and the United States are likely to prevail on the merits. *See* p.1, *supra*.

Nor could they. As to CLIA's challenge to the compelled-speech requirement, this Court has recognized that the "deprivation of 'First Amendment

---

[2] Notably, Defendants make no serious attempt to defend the district court's views that the RHA contains an implicit discrimination requirement and that taxes based on revenue are somehow exempted.

freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.'" *Nat'l Ass'n of Wheat Growers v. Bonta*, 85 F.4th 1263, 1283 (9th Cir. 2023). While Defendants claim (at 17) that this case somehow does not implicate what they call "the real risk of compelled speech," CLIA's members explained below that they object to being required to engage in speech that "may cause [their] customers and potential customers to believe that [they] accept[] the legitimacy of Act 96's new burdens on cruise ships," ECF 28-3 ¶ 40; *see* ECF 28-4 ¶ 35 (similar). Moreover, "[f]orcing [a cruise-ship operator] to include registration-related information in its advertisements means [it] will have less space on those advertisements to promote [its] own message." ECF 28-4 ¶ 36. Those First Amendment harms constitute "irreparable injury sufficient to merit the grant of relief." *American Beverage Ass'n*, 916 F.3d at 758.

    CLIA's members also will suffer irreparable harm if they are forced to pay the registration fees, because Hawai'i provides no clear mechanism to recover those fees once paid. Defendants insist (at 17) that such a mechanism does exist, but they simply ignore the district court's findings otherwise, *see* Order 45-46. And while Defendants emphasize that the registration fees are relatively small, paying unconstitutional fees would still cause irreparable harm if they cannot be recovered later. *See Baird v. Bonta*, 81 F.4th 1036, 1042 (9th Cir. 2023) ("'[W]hen an alleged

11

deprivation of a constitutional right is involved, . . . most courts hold that no further showing of irreparable injury is necessary.'" (citation omitted)).

The United States has established irreparable harm, too. *See* U.S. Mot. 17-19. Defendants' contrary argument rests on their assertion that the United States is not "likely to prevail on the merits," Opp. 18 (quoting *Baird*, 81 F.4th at 1040), but that assertion is incorrect for all of the reasons discussed above. And granting injunctive relief on the United States' claims is particularly important because it will avoid difficult remedial questions that could arise if the United States prevails after Defendants have already collected millions of dollars in unconstitutional taxes and fees from third parties.

Finally, the balance of harms and public interest also support entry of an injunction pending appeal, because Defendants "cannot suffer harm from an injunction that merely ends an unlawful practice." *Rodriguez v. Robbins*, 715 F.3d 1127, 1145 (9th Cir. 2013).

## CONCLUSION

The Court should enjoin Defendants from enforcing Act 96 against cruise-ship operators during the pendency of this appeal.

Dated:  December 31, 2025

Jeffrey S. Portnoy
Trever K. Asam
Lindsay N. McAneeley
CADES SCHUTTE LLP
1000 Bishop Street, Suite 1200
Honolulu, HI  96813
(808) 521-9200

Respectfully submitted,

*/s/ Benjamin W. Snyder*
Bradley J. Bondi
Benjamin W. Snyder
Ronald K. Anguas, Jr.
PAUL HASTINGS LLP
2050 M Street, NW
Washington, DC  20036
(202) 551-1700
bensnyder@paulhastings.com

*Counsel for Plaintiffs-Appellants*

## CERTIFICATE OF COMPLIANCE

This reply complies with the type-volume limitation of Federal Rule of Appellate Procedure 27(d)(2) and Circuit Rule 32-3 because it contains 2,780 words, excluding the parts exempted by Federal Rule of Appellate Procedure 32(f).

This reply also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5) and (6) because it was prepared in a proportionally spaced typeface using Microsoft Word with 14-point, Times New Roman font.

*/s/ Benjamin W. Snyder*
Benjamin W. Snyder

# CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of Court for the United States Court of Appeals for the Ninth Circuit by using the appellate ACMS system on December 31, 2025. I certify that all participants in the case are registered ACMS users and that service will be accomplished by the appellate ACMS system.

*/s/ Benjamin W. Snyder*
Benjamin W. Snyder