No. 25-8058

---

UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

---

CRUISE LINES INTERNATIONAL, et al., *Plaintiffs/Appellants*,

and

UNITED STATES OF AMERICA, *Plaintiff-Intervenor/Appellant*

v.

SUGANUMA, et al., *Defendants/Appellees*.

---

Appeal from the United States District Court for the District of Hawaii
No. 1:25-cv-00367-JAO-KJM (Hon. Jill A. Otake)

---

**UNITED STATES' REPLY IN SUPPORT OF MOTION FOR INJUNCTION PENDING APPEAL**

RELIEF REQUESTED BEFORE JANUARY 1, 2026

---

STANLEY E. WOODWARD, JR.
*Associate Attorney General*
ADAM R.F. GUSTAFSON
*Principal Deputy Assistant Attorney General*
ROBERT N. STANDER
BRADLEY CRAIGMYLE
*Deputy Assistants Attorney General*
BRIAN C. TOTH
AMY E. COLLIER
*Attorneys*
Environment and Natural Resources Division
U.S. Department of Justice
950 Pennsylvania Ave. NW
Washington, D.C. 20530
(202) 532-3112
brian.toth@usdoj.gov

# TABLE OF CONTENTS[1]


TABLE OF CONTENTS .......... i

TABLE OF AUTHORITIES .......... ii

ARGUMENT .......... 1

I. The United States will likely succeed on the merits. .......... 1

A. The United States has standing to challenge Act 96. .......... 1

B. The Rivers and Harbors Act preempts Act 96. .......... 4

C. Act 96 violates the Tonnage Clause. .......... 8

II. The United States will be irreparably harmed without an injunction. .......... 10

III. The public interest and balance of harms favor an injunction. .......... 11

CONCLUSION .......... 11

CERTIFICATE OF COMPLIANCE


[1] Exhibits cited are attachments to the United States' motion. *See* U.S. Mot. vi (table).

# TABLE OF AUTHORITIES

## Cases

*Affiliated Ute Citizens v. United States*,
406 U.S. 128 (1972) .......... 4

*Alfred L. Snapp & Son, Inc. v. Puerto Rico ex rel. Barez*,
458 U.S. 592 (1982) .......... 2

*Am. Trucking Ass'ns, Inc. v. City of Los Angeles*,
559 F.3d 1046 (9th Cir. 2009) .......... 11

*Bonneville Power Admin. v. FERC*,
422 F.3d 908 (9th Cir. 2005) .......... 5

*City of Chicago Through Dep't of Fin. v. Wendella Sightseeing, Inc.*,
143 N.E.3d 771 (Ill. App. 2019) .......... 5

*Clyde Mallory Lines v. Alabama ex rel. State Docks Comm'n*,
296 U.S. 261 (1935) .......... 8

*FEC v. Cruz*,
596 U.S. 289 (2022) .......... 3-4

*Idaho Conservation League v. Bonneville Power Admin.*,
83 F.4th 1182 (9th Cir. 2023) .......... 4

*Keokuk N. Line Packet Co. v. City of Keokuk*,
95 U.S. 80 (1877) .......... 9

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992) .......... 1

*Maher Terminals, LLC v. Port Auth. of New York & New Jersey*,
805 F.3d 98 (3d Cir. 2015) .......... 9

*Massachusetts v. Mellon*,
262 U.S. 447, 486 (1923) .......... 3

*Massachusetts v. United States*,
435 U.S. 444 (1978) .......... 11

*Polar Tankers, Inc. v. City of Valdez*,
557 U.S. 1 (2009) .......... 6, 8, 9, 10

*Reel Hooker Sportfishing, Inc. v. State, Dep't of Taxation*,
236 P.3d 1230 (Haw. App. 2010) .......... 6

*Rodriguez v. Robbins*,
715 F.3d 1127 (9th Cir. 2013) .......... 11

*Sanitary Dist. of Chi. v. United States*,
266 U.S. 405 (1925) .......... 3

*Stauffer v. Brooks Bros., Inc.*,
619 F.3d 1321 (Fed. Cir. 2010) .......... 2

*Tex. Midstream Gas Servs., LLC v. City of Grand Prairie*,
608 F.3d 200 (5th Cir. 2010) .......... 10

*Trump v. Hawaii*,
585 U.S. 667 (2018) .......... 5

*United States v. Alabama*,
691 F.3d 1269 (11th Cir. 2012) .......... 10, 11

*United States v. Arizona*,
641 F.3d 339 (9th Cir. 2011),
*rev'd in part on other grounds*, 567 U.S. 387 (2012) .......... 2, 10

*United States v. California*,
921 F.3d 865 (9th Cir. 2019) .......... 11

*United States v. Castillo*,
69 F.4th 648 (9th Cir. 2023) .......... 8

*United States v. Texas*,
566 F. Supp. 3d 605 (W.D. Tex. 2021) .......... 3

*Vt. Agency of Nat. Res. v. United States ex rel. Stevens*,
529 U.S. 765 (2000) .......... 2

*Wendella Sightseeing Co. v. City of Chicago*,
226 N.E.3d 636 (Ill. App.), *appeal denied*, 221 N.E.3d 333 (Ill. 2023) .......... 6

## Statutes

33 U.S.C. § 5(b) .......... 4

33 U.S.C. § 5(b)(1) .......... 5

Maritime Transportation Security Act of 2002,
Pub. L. No. 107-295, 116 Stat. 2064 .......... 11

Act 96 .......... 7

Haw. Rev. Stat. § 237D-4 .......... 8

## Regulations

Haw. Admin. R. § 18-237D-1-03(c) .......... 7, 8

## Other Authorities

Erik M. Jensen, *Quirky Constitutional Provisions Matter: The Tonnage Clause, Polar Tankers, and State Taxation of Commerce*,
18 Geo. Mason L. Rev. 669, 674-75 (2011) .......... 10

10 Oxford English Dictionary 846 (2d ed. 1989) .......... 4

Webster's Third New Int'l Dictionary 1580 (2002) .......... 5

Defendants' response does not meaningfully engage with, much less refute, our principal arguments showing that Hawaii's Act 96 imposes fees and requirements on vessels that violate the Rivers and Harbors Act ("RHA") and the Constitution's Tonnage Clause. Because the United States will likely succeed on its claims and will be irreparably harmed without immediate relief, the Court should enjoin Act 96 pending appeal. Alternatively, even the district court concluded that the United States raised serious questions on the merits, and an injunction should therefore issue because the equities tip sharply in favor of enforcing federal law.

## ARGUMENT

### I. The United States will likely succeed on the merits.

#### A. The United States has standing to challenge Act 96.

As the district court correctly held, the United States has Article III standing. Ex. 3 ("Order") at 27. To establish standing, a party must show (1) an injury to a legally protected interest that is (2) fairly traceable to the defendant's challenged conduct and (3) likely to be redressed by a favorable judicial decision. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). Defendants dispute only the existence of an injury.

The district court recognized that the Tonnage Clause and the RHA "protect a broad interest in free movement of ships and, thus, interstate commerce," and the

"Federal Government's ability to defend such a right is self-evident." Order 23. The United States "has an interest in enforcing its statutes and maintaining federal supremacy," including "over interstate maritime commerce," and thus may sue "to protect that interest." Order 27.

Defendants fail to address the district court's conclusions. Opp. 6-7. They assert that the United States does not incur "any direct monetary injury" because it is not subject to Act 96's taxes. Opp. 6. But that ignores the government's non-monetary interest in maintaining supremacy of federal law. *United States v. Arizona*, 641 F.3d 339, 366 (9th Cir. 2011) (finding irreparable harm if Arizona enforced preempted laws), *aff'd in part, rev'd in part on other grounds*, 567 U.S. 387 (2012); *see* U.S. Mot. 17, 19. The United States has cognizable "sovereign interests," in not only its power to enforce a legal code, but also in "recognition [of that code] from other sovereigns." *Alfred L. Snapp & Son, Inc. v. Puerto Rico ex rel. Barez*, 458 U.S. 592, 601 (1982). Thus, the complaint alleges an "injury to [the United States'] sovereignty arising from violation of its laws." *Vt. Agency of Nat. Res. v. United States ex rel. Stevens*, 529 U.S. 765, 771 (2000).

Defendants are incorrect that the United States' interest in upholding the supremacy of federal law is too "abstract." Opp. 7. As sovereign, the United States suffers injuries that private plaintiffs cannot. *See Stauffer v. Brooks Bros., Inc.*, 619 F.3d 1321, 1326 (Fed. Cir. 2010) ("From the government's perspective, a harm

arises from an 'injury to its sovereignty arising from violation of its laws.'" (quoting *Vt. Agency*, 529 U.S. at 771)). Here, Act 96 infringes the United States' exclusive sovereign authority to control taxing ships on federal waters. Ex. 1 (Intervenor-Complaint) ¶¶ 1, 5. And it "will disrupt [the] uniformity of vessel taxation by conditioning cruise-ship access to its ports on surcharges" "and additional registration fees." *Id.* ¶ 34.

Separately, the United States may sue for "injury to the general welfare." *In re Debs*, 158 U.S. 564, 584 (1895), including interference with "interstate and foreign commerce," *Sanitary Dist. of Chi. v. United States*, 266 U.S. 405, 426 (1925), and any harm to the "public at large," *United States v. Texas*, 566 F. Supp. 3d 605, 640 (W.D. Tex. 2021); *see Massachusetts v. Mellon*, 262 U.S. 447, 486 (1923) (upholding the government's assertion, as "parens patriae" on its citizens' behalf, of injuries from federal law violations). Act 96 will impose costs on cruise-ship operators and, ultimately, their customers. *See* Pls.' Mot. at 5-7, 16-17 (detailing private Plaintiffs' harms). The RHA and the Tonnage Clause prevent states from interfering with interstate commerce (through state-specific taxes) in this way. *See* U.S. Mot. 2-4, 12, 14-17.

Defendants' contention (Opp. 6) that the United States' standing depends on the success of its legal claims is incorrect. "For standing purposes, [courts] accept as valid the merits of [a challenger's] legal claims." *FEC v. Cruz*, 596 U.S. 289,

298 (2022). "That [plaintiffs'] theory may fail on the merits does not mean [plaintiffs] lack standing to raise it." *Idaho Conservation League v. BPA*, 83 F.4th 1182, 1189 (9th Cir. 2023).[2]

**B. The Rivers and Harbors Act preempts Act 96.**

Act 96's imposition of registration fees and taxes on cruise ships directly conflicts with the RHA and is thus preempted by its text. U.S. Mot. 8-13. Defendants decline to defend much of the district court's flawed analysis. Instead, they lean heavily on a sliver of legislative history (a floor statement) while ignoring the broader legislative context and case law foreclosing this gambit. Opp. 12-15.

The statute's language prohibits "taxes, tolls, operating charges, fees, or any other impositions whatever" on "any vessel … by any non-Federal interest, if the vessel … is operating on any navigable waters." 33 U.S.C. § 5(b). The repeated use of "any" —and particularly the phrase "any other impositions whatever"—evinces maximal breadth. *See Affiliated Ute Citizens v. United States*, 406 U.S. 128, 151 (1972). So, too, the use of "operating," a broader term than "driving" or many other terms of locomotion. *See* Operate, 10 Oxford English Dictionary 846 (2d ed. 1989) (to "exercise force or influence, produce an effect, act, work"); Operate,

---

[2] Traceability and redressability are satisfied, too. Harms to the United States' sovereignty and the public are traceable to Act 96's surcharge and registration fee, and a favorable judgment will likely redress those injuries.

*Webster's Third New Int'l Dictionary* 1580 (2002) ("to perform a work or labor"). Defendants incorrectly contend the prohibition applies only where a vessel is "being actively driven on" navigable waters. Opp. 14. *But see City of Chicago Through Dep't of Fin. v. Wendella Sightseeing, Inc.*, 143 N.E.3d 771, 777 (Ill. App. 2019) ("[A] vessel is 'operating' on federal waters when it is engaged in active business thereon."). If "operating" meant only "actively driv[ing]," then the statute's exception for "port or harbor fees" would be superfluous, *see* 33 U.S.C. § 5(b)(1). Although Defendants raised this lone textual argument below, the district court did not adopt it.

Defendants ultimately resort to legislative history and purpose. Opp. 13-14. But legislative history, however clear, "cannot trump the statute." *BPA v. FERC*, 422 F.3d 908, 920 (9th Cir. 2005); *see* U.S. Mot. 12. That is especially so for individual legislators' statements. *Trump v. Hawaii*, 585 U.S. 667, 692 (2018). Regardless, Defendants' cited statements are too general to demonstrate a clear intent to override the statute's text. Defendants argue that applying the statute's plain meaning would be absurdly broad, Opp. 14-15, but they do not address our argument, U.S. Mot. 10, that the statute's express exemptions (which they do not invoke) appropriately narrow the statute's application.

Next, Defendants defend the district court's reliance on assorted cases, including *Reel Hooker Sportfishing, Inc. v. State, Dep't of Tax'n*, 236 P.3d 1230,

1234 (Haw. Ct. App. 2010). But they do not address another state appellate court's criticism of that case as wrongly decided. U.S. Mot. 11; *see Wendella Sightseeing Co. v. City of Chicago*, 226 N.E.3d 636, 656 (Ill. App. 2023) (observing that *Reel Hooker*'s analysis "deviated from well-established principles of statutory interpretation"). Nor do Defendants ask this Court to adopt the multifactor test that the district court (Order 74) gleaned from these flawed cases.

Defendants likewise fail to respond to our argument (U.S. Mot. 13) that the court should not have relied on the statute's incorporation of Tonnage Clause case law as adopting the antidiscrimination discussion from *Polar Tankers, Inc. v. City of Valdez*, 557 U.S. 1 (2009), given the Supreme Court decided that case seven years *after* that statute was enacted in 2002.

Defendants assert that the statute does not discriminate against vessels vis-à-vis land-based accommodations. Opp. 8-12. But the district court wrongly imposed an antidiscrimination mandate found nowhere in the statute's text. U.S. Mot. 11-13. Regardless, Act 96's requirements cannot be fairly characterized as "functionally identical" to state taxation of land-based accommodations, nor can the differences be dismissed as merely "semantic." Opp. 10. Act 96 taxes vessels based on a calculation that includes mandatory fees for meals and other onboard expenses, whereas land-based businesses are exempt from taxation on such charges. U.S. Mot. 16; *compare* Act 96 § 4.1 *with* Haw. Admin. R. § 18-237D-1-

03(c). Defendants seemed to agree before the district court. *See* Ex. 2 (transcript) at 30 (noting the definition of gross rental proceeds for cruise ships "would be a different definition than [for] the land-based accommodations"). And the court itself acknowledged "the facial difference in tax calculation method." Ex. 4 (ECF-108) at 6.

As the private Plaintiffs highlighted, an example from Hawaii's regulations illustrates this difference: it says a hotel should deduct meal costs from an all-inclusive fare when computing its tax liability. Pls.' Mot. 16-17 (citing Haw. Admin. R. § 18-237D-1-03(c), Example 4). Defendants claim the meal costs in that example are excludable because they are actually optional, not mandatory, since the hypothetical hotel "necessarily" gave customers the option of an all-inclusive package. Opp. 11-12. But nowhere does the example suggest the meal costs were excludable because the hotel offered an all-inclusive fare as one option for customers. Nor does the regulation's text support Defendants' newfound reading. Rather, it excludes meals from "gross rental proceeds" without mentioning whether they are required or optional for guests. Haw. Admin. R. § 18-237D-1-03(c). It states, "Excluded from gross rental or gross rental proceeds *are* the following: … Charges for guest amenities, including meals, beverages, telephone calls, and laundry." *Id.* (emphasis added). Defendants' hypothesis about how the regulations should be interpreted—raised for the first time on appeal—is unpersuasive. *Cf.*

*United States v. Castillo*, 69 F.4th 648, 658 (9th Cir. 2023) (giving no deference to agency's atextual interpretation of regulations).

**C. Act 96 violates the Tonnage Clause.**

Act 96's registration fee and surcharge also violate the Tonnage Clause because they constitute "charge[s] for the privilege of entering, trading in, or lying in a port." *Clyde Mallory Lines v. Alabama ex rel. State Docks Comm'n*, 296 U.S. 261, 265-66 (1935). Defendants adopt the *Polar Tankers* plurality's reading of the Clause as incorporating a discrimination requirement. Opp. 8-9. But the Chief Justice's opinion is the correct reading of the Clause, which applies broadly and is not limited solely to charges that discriminate against ships. U.S. Mot. 14-16. In any event, Defendants' arguments that Act 96's taxes are discriminatory are wrong.

First, without disputing that cruise ships cannot lawfully dock at Hawaii ports unless they pay the registration fees (which are determined based on the number of units of accommodation), Haw. Rev. Stat. § 237D-4, Defendants contend that the fee is merely a "condition precedent" to offering transient accommodations, not to docking, Opp. 8-9. But the tax in *Polar Tankers* could have been described the same way—as a condition precedent to operating a boat of a certain length carrying a certain value of cargo, not a condition to docking at a port. *See Polar Tankers*, 557 U.S. at 5. The Supreme Court has rejected attempts to

"evade the [Tonnage] Clause" by relabeling fees imposed for the privilege of entering or lying in ports. *Id.* at 8; *see also Maher Terminals, LLC v. Port Auth. of New York & New Jersey*, 805 F.3d 98, 107 (3d Cir. 2015) ("The Clause even prohibits flat taxes on a ship—those that do not vary according to tonnage—if they are for the privilege of entering a port."

Act 96's surcharge fails for the same reason. Defendants argue that the surcharge is "unrelated" to the privilege of lying in port because it "applies to all operators of short-term accommodations," while not applying to ships that do not offer transient accommodations. Opp. 9. But the surcharge plainly applies when a cruise ship docks at a Hawaii port and is calculated in part based on the number of days that ship lies in a Hawaii port. U.S. Mot. 14-15. It is thus a charge for the privilege of lying in a port. *See Keokuk N. Line Packet Co. v. City of Keokuk*, 95 U.S. 80, 84 (1877) (holding that Tonnage Clause bars taxes for the privilege of "remaining in" a port if unrelated to services provided).

Nor does it matter that the registration fee and surcharge do not apply to *all* ships. The tax in *Polar Tankers* violated the Clause even though it applied only to large ships with minimum cargo values, 557 U.S. at 8-11, and was "applicable primarily to" oil tankers, *see* Erik M. Jensen, *Quirky Constitutional Provisions Matter: The Tonnage Clause, Polar Tankers, and State Taxation of Commerce*, 18 Geo. Mason L. Rev. 669, 674-75 (2011).

## II. The United States will be irreparably harmed without an injunction.

Act 96 will irreparably harm the United States by violating federal constitutional and statutory law. *See Tex. Midstream Gas Servs., LLC v. City of Grand Prairie*, 608 F.3d 200, 206 (5th Cir. 2010) ("If a statute is expressly preempted, a finding with regard to likelihood of success fulfills the remaining [preliminary injunction] requirements.").

Defendants do not dispute that the United States will suffer irreparable harm if states enforce preempted statutes. *See Arizona*, 641 F.3d at 366; *United States v. Alabama*, 691 F.3d 1269, 1301 (11th Cir. 2012) ("The United States suffers injury when its valid laws in a domain of federal authority are undermined by impermissible state regulations."). Instead, Defendants merely reassert that the United States will not succeed on the merits and that it cannot be harmed by a "patchwork" of state taxation regimes. Opp. 18.

As discussed above (pp. 4-9), however, Act 96 will violate the Constitution and federal law. While states may "develop and operate their own taxation systems" in some contexts, Opp. 18, both Congress and the Framers have expressly found it against the national interest for states to impose their own duties on vessels for the privilege of entering or lying in a port or to operate on navigable waters. *See Polar Tankers*, 557 U.S. at 7; Maritime Transportation Security Act of 2002, Pub. L. No. 107-295, § 101, 116 Stat. 2064.

## III. The public interest and balance of harms favor an injunction.

The equities tip sharply in favor of the United States. Defendants do not substantively engage with the harms to the United States or the public interest if federal law is followed. Opp. 19-20. And Hawaii has no interest in violating federal law by attempting to enforce its preempted, unconstitutional tax. *Rodriguez v. Robbins*, 715 F.3d 1127, 1145 (9th Cir. 2013). Rather, "preventing a violation of the Supremacy Clause serves the public interest." *United States v. California*, 921 F.3d 865, 893-94 (9th Cir. 2019); *see also Alabama*, 691 F.3d at 1301 ("[W]e discern no harm from the state's nonenforcement of invalid legislation."). The national interest favors effectuating federal statutes and the Constitution. *See Massachusetts v. United States*, 435 U.S. 444, 462 (1978) (provisions like the Tonnage Clause "exist to protect constitutionally valued activity from the undue and perhaps destructive interference that could result from certain taxing measures"); *California*, 921 F.3d at 893-94; *Am. Trucking Ass'ns, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1059-60 (9th Cir. 2009).

## CONCLUSION

The Court should enjoin Act 96 pending appeal.

Respectfully submitted,

STANLEY E. WOODWARD, JR.
*Associate Attorney General*

ADAM R.F. GUSTAFSON

*Principal Deputy Assistant Attorney General*

ROBERT N. STANDER
BRADLEY CRAIGMYLE
*Deputy Assistants Attorney General*

*s/ Brian C. Toth*
BRIAN C. TOTH
AMY E. COLLIER
*Attorneys*
Environment and Natural Resources Division
U.S. Department of Justice
950 Pennsylvania Ave. NW
Washington, D.C. 20530
(202) 532-3112
brian.toth@usdoj.gov

*Attorneys for Plaintiff-Intervenor/Appellant United States of America*

90-5-1-1-13292
December 31, 2025

**CERTIFICATE OF COMPLIANCE**

1. This motion complies with the type-volume limit in Federal Rule of Appellate Procedure 27(d)(2) because it contains 2,567 words.

2. This document complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14-point Times New Roman font.

*s/ Brian C. Toth*
BRIAN C. TOTH

Attorney for Plaintiff-Intervenor/Appellant
United States of America